# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOSEPH HILTON DIERKS, <br><br> Defendant. | No. 17-CR-2065-LRR <br><br> **REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO DISMISS** |

## I.   INTRODUCTION

The matter now before the Court is defendant's motion to dismiss the indictment. (Doc. 13). The grand jury charged defendant in a three-count indictment with transmitting threatening communications in violation of Title 18, United States Code, Section 875(c). The charges involve so-called "tweets" that defendant allegedly sent to United States Senator Joni Ernst. Defendant argues that the tweets do not express a true threat and otherwise constitute protected speech under the First Amendment to the United States Constitution. The Honorable Linda R. Reade, United States District Court Judge, referred this motion to me for a Report and Recommendation. I did not hold an evidentiary hearing because neither party asked for one and because resolution of this motion turns on what appears within the four corners of the indictment. For the reasons that follow, I respectfully recommend the Court **deny** defendant's motion to dismiss.

## II. BACKGROUND

On September 14, 2017, the grand jury returned a three-count indictment, charging defendant with sending three tweets to Senator Ernst, alleging that the tweets were sent for the purpose of issuing a threat to injury another person, and with knowledge that the communication would be viewed by another person as a threat, in violation of Title 18, United States Code, Section 875(c). (Doc. 2). Section 875(c) of Title 18 of the United States Code provides: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." The indictment alleges that "[o]n or about August 16, 2017, in the Northern District of Iowa, and elsewhere, defendant . . . did knowingly transmit in interstate commerce a communication, for the purpose of issuing a threat to injure another person, and with knowledge that the communication would be viewed by another person as a threat. Specifically, defendant sent from his Twitter account, @JosephDierks, the following threatening Twitter posts to Senator [Joni K.] Ernst at her Twitter accounts, @SenJoniErnst and @JoniErnst." (Doc. 2 ¶ 6). The three tweets, all sent on August 16, 2017, were:

    Count 1:    u r sn army bitch and I'll @USMC u tf up :)(:

    Count 2:    I'll f u up seriously in my sleep

    Count 3    I'll beat ur ass in front of ur widow I promise that

(Doc. 2).

Defendant filed the instant Motion to Dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3), which provides that a party must raise by pretrial motion certain claims "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." FED. R. CRIM. P. 12(b)(3). Subsection (B)(v)

includes claims that the indictment was defective for "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v).

### III. STANDARD OF REVIEW

"A motion is capable of pretrial determination 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." *United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). "The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." FED. R. CRIM. P. 12(d). "Good cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that 'fall[ ] within the province of the ultimate finder of fact.'" *Turner*, 842 F.3d at 605 (quoting *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994)). Courts may not make factual findings in ruling on a pretrial motion "when an issue is 'inevitably bound up with evidence about the alleged offense itself.'" *Id.* (quoting *United States v. Grimmett*, 150 F.3d 958, 962 (8th Cir. 1998)).

In considering a motion to dismiss an indictment under Federal Rule of Criminal Procedure 12(b), the court looks at whether the indictment itself "contains a facially sufficient allegation of materiality," and does not consider sufficiency of the evidence. *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001); *see also United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) ("It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury."). As this Court has previously pointed out, Rule 12(b) is not akin to a motion for summary judgment in civil cases. *United States v. Goodale*, No. 12-CR-3011-LRR, 2012 WL 2159229, at *1 (N.D. Iowa June 13, 2012) (citing *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995)). *See also United States v. Agriprocessors, Inc.*, No. 08-CR-1324-LRR, 2009 WL 2255728, at *4 (N.D. Iowa July 27, 2009) ("the

3

sufficiency of the indictment must be determined from the words of the indictment, and the Court is not free to consider evidence not appearing on the fact of the indictment."). "The government is entitled to marshal and present its evidence at trial," and a court "cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be." *Ferro*, 252 F.3d at 968 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)). Therefore, in reviewing the sufficiency of an indictment, the court must assume the Government's allegations to be true. *United States v. Steffen*, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012).

## IV. ANALYSIS

### A. Whether the Indictment Adequately Alleges a Crime

The Federal Rules of Criminal Procedure offer little instruction with regard to the sufficiency of an indictment's statement of the offense charged. Rule 7 simply states that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." FED. R. CRIM. P. 7(c)(1). To state the essential elements of the offense, "[a]n indictment need not use the specific words of the statute, so long as by fair implication it alleges an offense recognized by law." *United States v. Villarreal*, 707 F.3d 942, 957 (8th Cir. 2013) (internal quotation marks omitted). Only when an essential element is omitted in substance will an indictment be rendered fatally insufficient. *United States v. Boykin*, 794 F.3d 939, 944 (8th Cir. 2015). The aim of this rule is to ensure that an indictment "fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Carter*, 270 F.3d 731, 736 (8th Cir. 2001).

Defendant is charged with three counts of transmitting threatening communications in interstate commerce in violation of Title 18, United States Code, Section 875(c).

Subsection (c) provides, in relevant part, that "[w]hoever transmits in interstate . . . commerce any communication containing . . . any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875. Notably, the statute does not provide an express mens rea element with regard to the threatening nature of an offending communication. The United States Supreme Court recently clarified that Section 875(c) includes an implicit mental state requirement. *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015). Although the Supreme Court did not resolve the minimum mens rea to support a conviction under Section 875(c), it stated that the requirement "is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." (*Id.*). Thus, as tailored to the facts of this case, the elements essential for proving an offense under the statute are: (1) transmission of a communication in interstate commerce; (2) the existence therein of a threat to injure the person of another; and (3) the defendant's possession of either the purpose to issue a threat or the knowledge that the communication would be viewed as a threat. *See United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013) (listing the elements of Section 875(c) prior to *Elonis*).

Paragraph 6 of the indictment plainly alleges the first and third elements of the offense when it states that defendant "did knowingly transmit in interstate commerce a communication, for the purpose of issuing a threat to injure another person, and with knowledge that the communication would be viewed by another person as a threat." (Doc. 2 ¶6). This language is drawn directly from the statute and *Elonis*. With regard to Section 875(c)'s second element, the indictment does not parrot the statutory requirement that the interstate communication "contain[] [a] treat to . . . injure the person of another." Instead, it appears to fold this element into the mens rea language proposed by *Elonis*. Whether or not this construction renders the indictment deficient need not be analyzed, because the second sentence of Paragraph 6 specifies that defendant sent

5

"threatening Twitter posts." (Doc. 2 ¶ 6). This language, read in conjunction with the preceding allegations of defendant's intent to threaten injury upon another person and his knowledge that the Tweets would be viewed as a threat, are sufficient to plead the element that the alleged communication contain a threat. *See Boykin*, 794 F.3d at 945 (stating that 'considered in combination with the other allegations in the indictment as a whole, [it may be] adequate under the circumstances to have charged the defendant with the offense for which he was convicted.'). I find the indictment to successfully allege an offense under Section 875(c).

Defendant's position, however, is that the facts alleged by the government are insufficient to prove the indicted offense. Defendant argues that his statements were not true threats. He argues that the tweet that is the subject of Count 1 of the indictment, "u r sn army bitch and I'll @USMC u tf up :)(:" "could not be fairly interpreted as a true threat" and "appears to be nothing more than an impolite reference to Senator Ernst's service in the United States Army, and Mr. Dierks' poorly articulated belief that the United States Marine Corps is a superior branch of this country's armed forces." (Doc. 13-1, at 3). Defendant argues the fact that he "has absolutely no history with the Marine Corps belies that there is anything 'true' about this Tweet." (*Id*.). Defendant goes on to argue that the Marine Corps' reputation for discipline, patriotism, and courage makes it "clear" that defendant "sought to bring the ideals of the Marine Corps to Senator Ernst's attention. (*Id*.). Defendant argues that the tweet that is the subject of Count 2 of the indictment, "I'll f u up seriously in my sleep," cannot constitute a threat because it asserts conduct in a dream state. (Doc. 13-1, at 3-4). Defendant argues that even if it is interpreted as a boast (e.g., I'm so tough I could beat you up in my sleep), it "implies neither immediacy nor absence of equivocation." (Doc. 13-1, at 4). Defendant argues that the tweet that is the subject of Count 3 of the indictment, "I'll beat ur ass in front of ur widow I promise that," is "conditional" and cannot constitute a threat because of the

6

"physical impossibility to carry out this 'threat' unless the victim were already deceased and the defendant assaulted the victim's corpse in front of the surviving spouse." (*Id.*). In summary, defendant argues that all three of his tweets "were a crude method of seeking attention." (*Id.*).

These arguments are unavailing. As defendant himself concedes, whether a statement constitutes a threat is a question generally to be decided by the trier of fact. *United States v. Clemens*, 738 F.3d 1, 13 (1st Cir. 2013); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013); *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982). This principle rings especially true where a defendant alleges an alternative, non-threatening interpretation to the statement or statements for which he is indicted. *Clemens*, 738 F.3d at 13 (holding that whether emails construed by a defendant as "generalized fantasy," "sarcastic," and "cartoonish and hyperbolic" amounted to threats was a question best left for the jury). Defendant's argument relies on many alleged facts that are not contained in the allegations on the face of the indictment. Nothing in the indictment indicates, for instance, whether Senator Ernst served in the United States Army, or whether defendant has ties to the Marines, what the reputation is of the Marine Corps, or what defendant subjectively intended to convey.[1] Moreover, part of defendant's argument conflates the question of whether the communication constitutes a "true threat" with whether the statement contains true facts. Defendant is also asking this Court to make factual conclusions, which is the providence of the jury, not the Court. Determining whether statements constitute a true threat require the factfinder to look at the statements from the point of view of the recipient and analyze the context in which they were spoken; the speaker's subjective intent is not relevant. *See United States v.*

---

[1] The introduction in defendant's brief contains other references to facts not contained in the indictment itself (i.e., references to other tweets and an interview of defendant by law enforcement agents). (Doc. 13-1, at 1).

*Mabie*, 663 F.3d 322, 333 (8th Cir. 2011) (stating that the objective test for determining whether a communication is a true threat does not consider the subjective intent of the speaker).

Defendant cites *United States v. Merrill*, 746 F.2d 458, 463 (9th Cir. 1984), for the proposition that, in some cases, whether communications constitute threats "may be so clear that [the issue] can be resolved as a matter of law." (Doc. 13-1, at 5). This rule has not been observed in this jurisdiction and was not even applied in *Merrill*, where the court found that the question of whether a defendant's letters to the President were intended as threats was properly resolved by the trier of fact. *Merrill*, 746 F.2d at 463. Granted, it is not entirely unprecedented for a court to conclude as a matter of law whether a statement is a threat. *See, e.g.*, *Watts v. United States*, 394 U.S. 705, 708 (1969) (holding that statements were not true threats insofar as they were "expressly conditional"). But such findings are rarely made prior to trial and never in a circumstance where the nature of the statement is equivocal.

If defendant wishes to argue that the facts of this case are insufficient to show his Tweets were threats, he may make that argument in a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. *Ferro*, 252 F.3d at 968. But it is not one which can be resolved in advance of trial. SEE FED. R. CRIM. P. 12(b)(3) (stating that a motion to dismiss an indictment for failure to state an offense may be raised only "if . . . the motion can be determined without a trial on the merits"). Therefore, I recommend the District Court deny defendant's motion to dismiss the indictment on this ground.

### B. *Whether the Indictment Violates the First Amendment*

The First Amendment protects freedom of speech, meaning "that government has no power to restrict expression because of its message, its ideas, its subject matter, or its contents." *United States v. Alvarez*, 567 U.S. 709, 716 (2012) (quotation omitted). Nevertheless, "[t]here are certain well-defined and narrowly limited classes of speech,

the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571–72 (1942). "True threats" are among the "discrete categories of content-based restrictions on speech" permitted under the First Amendment. *United States v. Williams*, 690 F.3d 1056, 1061 (8th Cir. 2012). Speech that constitutes a true threat is not afforded First Amendment protection. *Virginia v. Black*, 538 U.S. 343, 358-59 (2003).

Defendant argues that the indictment violates the First Amendment because his statements did not unequivocally constitute true threats. Defendant argues that his statements could reflect only impolite criticism of the senator, or reflect only threats that are impossible of execution. Defendant argues that, "[a]s such, it is an absolute example of constitutionally protected free speech, and the Court should grant the Defendant's motion to Dismiss" the indictment.

It is generally improper "to determine grave constitutional questions upon a demurrer to a complaint, or upon an equivalent motion, if there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer." *Borden's Farm Prod. Co. v. Baldwin*, 293 U.S. 194, 213 (1934) (Stone, J. and Cardozo, J. concurring). However, this Court has occasionally entertained constitutional challenges presented on motions to dismiss an indictment. *See, e.g.*, *United States v. Ramos*, No. CR15-4058-LTS, 2016 WL 1117510, at *1 (N.D. Iowa Mar. 22, 2016) ("An indictment is defective . . . if it alleges a violation of a statute that is unconstitutional.").

In this case, however, defendant argues that the Court should dismiss the indictment because it is unconstitutional as applied. His claim that his tweets constituted free speech and not a threat, however, is a fact question. A jury may conclude that defendant's statements did not constitute a threat. A jury could also conclude that calling the senator a "bitch," and stating that he intended to "f her up" and "beat" her, constituted true threats. The indictment properly alleges as much. If a jury so finds,

after being properly instructed, then the statements fall under the true-threat exception to First Amendment protections and his conviction would be constitutional. In *United States v. Parker*, 871 F.3d 590, 604-05 (8th Cir. 2017), the Eighth Circuit Court of Appeals affirmed a district court's denial of a motion to dismiss on First Amendment grounds, finding instead that it was a matter for a properly instructed jury to determine. Therefore, I find it would be improper to dismiss the indictment in this case based on defendant's First Amendment argument.

## V. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** defendant's motion to dismiss. (Doc. 13).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 27th day of October, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa