1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA,  )
                             )
      Plaintiff,         )
                             )
vs.                     )   No. CR 17-2065
                             )
JOSEPH HILTON DIERKS,    )
                             )
      Defendant.        )

APPEARANCES:

TIMOTHY LAWRENCE VAVRICEK, ESQ., Assistant
United States Attorney, United States Attorney's
Office, 111 Seventh Avenue SE, Cedar Rapids,
Iowa 52401, on behalf of the Plaintiff.

CHRISTOPHER J. NATHAN, ESQ., Assistant Federal
Public Defender, Federal Public Defender's Office,
222 Third Avenue SE, Suite 290, Cedar Rapids,
Iowa 52401-1542, on behalf of the Defendant.

FINAL PRETRIAL CONFERENCE AND JURY SELECTION
HELD BEFORE THE HONORABLE C. J. WILLIAMS,

taken at the Federal Courthouse, 111 Seventh Avenue SE,
Cedar Rapids, Iowa, on the 20th day of November, 2017,
commencing at 8:05 a.m., reported by Kay C. Carr,
Certified Shorthand Reporter in and for the State of
Iowa.

Kay C. Carr
Certified Shorthand Reporter
Registered Professional Reporter
Cedar Rapids, Iowa

**2**

1    THE COURT:  The matter now before the Court
2  is United States of America versus Joseph Dierks,
3  Case No. 17-CR-2065.  This matter comes on for a
4  conference in preparation for jury selection this
5  morning.  The United States is represented by Assistant
6  United States Attorney Tim Vavricek.  The defendant is
7  personally present and represented by Assistant Federal
8  Public Defender Chris Nathan.
9    First thing I want to talk about this
10 morning is the defendant's consent to proceed before a
11 magistrate judge for purposes of jury selection.
12 Mr. Dierks, you understand that you have a right to have
13 a district court judge preside over jury selection this
14 morning.  Do you understand that?
15    DEFENDANT DIERKS:  Yes, sir.
16    THE COURT:  It's my understanding that you
17 consent to have me preside over this hearing this morn
18 -- or the jury selection this morning so that
19 Judge Reade can be trying another case this morning; is
20 that true?
21    DEFENDANT DIERKS:  Yes, Your Honor.
22    THE COURT:  Very good.  And I do note at
23 Document No. 15 at the court's file is a written consent
24 to have a magistrate judge preside over jury selection
25 this morning.

**3**

1    So let's talk about jury selection a little
2  bit.  I think both counsel have been through jury
3  selection with me before, but just so we're clear, we
4  will preseat 29 people in the box and in front of the
5  box, and then when I come in, the questioning will be
6  focused on those 29 people.  I explain the court system,
7  the jury selection process.  I introduce people in the
8  courtroom and then I'll conduct voir dire.  Then when
9  I'm done, I'll turn it over to counsel.  Each counsel
10 has 45 minutes to conduct voir dire.
11    I want to talk about two things during that
12 process.  First, I tend to introduce everybody in front
13 of me and the court security officers.  And Mr. Nathan
14 before in another case, I mentioned to you that I have
15 at request of the defense introduced the U.S. Marshals
16 and explained that they are deputy marshals who are in
17 the courtroom whenever a judge is in the courtroom.  The
18 other way of dealing with it is not to address their
19 presence at all, and I think it's completely up to the
20 defense on how you would like me to proceed on that, so
21 I will take your lead on this.
22    MR. NATHAN:  I feel the same way,
23 Your Honor.  I would rather the Court not address their
24 presence.
25    THE COURT:  Very good.  Then I will not

**4**

1  address their presence at all.
2    The other thing is during the parties' jury
3  selection -- their voir dire I mean, if they have a
4  motion to strike for cause, they need to make it before
5  they sit down at the end of their voir dire.  If you
6  would like to take it up outside the presence of the
7  jury at sidebar, just let me know that you have
8  something you would like to address with the judge at
9  sidebar.  We'll have a sidebar conversation regarding
10 striking prospective jurors for cause.
11    I will talk about hardship excuses, and when
12 I do hardship excuses, I will listen to the parties' --
13 or to the prospective juror's hardship excuse and then
14 I'll rule on it.  I will not entertain argument by
15 counsel on that issue.
16    Based on what I was looking at, it looks
17 like this case is still supposed to be a day to a
18 day-and-a-half to try.  Is that your best estimate,
19 Mr. Vavricek?
20    MR. VAVRICEK:  Yes.  And we received an
21 order on a motion in limine that I think is going to
22 shorten that.
23    THE COURT:  So how long do you anticipate --
24 what should I tell the jury today?
25    MR. VAVRICEK:  I think we get it done in a

**5**

1  day -- we get it to the jury that day.  I think that's
2  safe.
3    THE COURT:  Mr. Nathan?
4    MR. NATHAN:  I agree, Your Honor.
5    THE COURT:  All right.  Then what I'll tell
6  the jury is that we anticipate completing the trial by
7  tomorrow.  We have no idea how long their deliberations
8  are going to take, of course, and so it may be that they
9  have to deliberate into Wednesday and I'm gonna tell
10 them if they are not done deliberating by the end of the
11 day on Wednesday, they are to come back on Friday and
12 renew deliberations at that time.  Any questions about
13 that?
14    MR. NATHAN:  No, Your Honor.
15    MR. VAVRICEK:  No.
16    THE COURT:  Very good.  When we do
17 peremptory strikes, the Government will exercise three,
18 then the defense five, then the Government three and the
19 defense five.  Any questions about that?
20    MR. VAVRICEK:  No, Your Honor.
21    MR. NATHAN:  No.
22    THE COURT:  All right.  Very good.  The
23 topics I plan on covering in my voir dire include law
24 enforcement connections; anybody employed -- formally
25 or -- any family members employed in law

**6**

1  enforcement, anything about that. Can the jurors treat
2  law enforcement testimony the same as anybody else. If
3  anybody has any current or past serious dispute with the
4  federal government like a tax dispute or something like
5  that.
6        I'll cover prior jury service. I'm gonna
7  ask if anybody has previously served as a witness in
8  anything other than a family law matter like divorce or
9  custody. I'll ask if any of the jurors know each other.
10  I'll cover the burden of proof, the indictment and the
11  presumption of innocence.
12        Pursuant to an email from Mr. Nathan, I'll
13  also cover Senator Ernst. Here's what I plan on saying.
14  You have heard that Mr. Dierks is alleged to have sent
15  threatening messages to Senator Joni Ernst. Have any of
16  you personally met Senator Joni Ernst? Have any of you
17  communicated with her by email, text, Tweets or any
18  means? Do any of you follow her on social media? Have
19  any of you worked on her political campaigns or
20  supported her campaign financially? Is there anything
21  about the fact that it is Senator Ernst who is allegedly
22  threatened versus somebody else that would cause any of
23  you to have difficulty being fair and impartial in this
24  case?
25        Is there any other specific -- any objection

**7**

1  to those questions first, Mr. Nathan?
2        MR. NATHAN: No, Your Honor. Thank you.
3        THE COURT: Any other questions you would
4  like me to ask?
5        MR. NATHAN: I had talked about this with
6  the Government last week and as part of the Court's
7  inquiry into the jury pool regarding whether they've
8  read anything in the news about this case, if one of the
9  potential jurors indicates that they have had some prior
10  exposure to this case, the defense would request that
11  the Court further inquire at sidebar with that
12  particular juror. There are a couple of motions in
13  limine where both sides have agreed to not get into the
14  recovery of certain items from the defendant's home.
15        And additionally, I didn't realize this
16  until the weekend, but I -- I'm now aware that there is
17  a similar case out of Council Bluffs in the
18  Southern District where an Omaha man was arrested for
19  threatening Senator Ernst and I wouldn't want any of the
20  jurors to confuse something they've read in the media on
21  that case with this case because that case involved the
22  recovery of a firearm. This case did not. So just
23  something to highlight for Your Honor.
24        THE COURT: Oh, I appreciate that. I was
25  not aware of that other case.

**8**

1        MR. NATHAN: Yeah.
2        THE COURT: Very good. So I will ask for a
3  show of hands of anybody who knows anything about this
4  case or anything about this case and then if anybody
5  raises their hand, we'll take that up at sidebar.
6        MR. NATHAN: Thank you, Your Honor. And,
7  Your Honor, as part of that, if -- because obviously I
8  don't think I would be questioning the juror at that
9  point and then I wouldn't want to question the juror in
10  front of the rest of the panel or resummon them to
11  sidebar, if they had the misunderstanding that this case
12  was the case out of Council Bluffs, would Your Honor
13  just inform them that there are two different cases?
14        THE COURT: I will. We'll do two things,
15  Mr. Nathan. One is I will ask some questions just to
16  find out what they know and if they start to identify
17  something about a gun or something like that, I'll point
18  out that there's different case out of Omaha they're
19  probably confused about that.
20        The other thing that I tend to do when
21  there's publicity about a case is I note to the panel as
22  a whole that what they read in the newspapers is not
23  reliable; that I've tried cases with somebody blogging
24  in the back of the courtroom and they get it wrong. And
25  then I will also on sidebar allow the counsel to follow

**9**

1  up any questions on anybody that we have a sidebar, so
2  in this case I miss something, you'll have an
3  opportunity to clarify that.
4        MR. NATHAN: Thank you, Your Honor.
5        THE COURT: Okay. Yeah; very good. I will
6  cover the defendant's right to remain silent and that's
7  what I have down for my voir dire.
8        Mr. Vavricek, anything else the Government
9  wants me to handle on voir dire?
10        MR. VAVRICEK: Your Honor, with respect to
11  Your Honor's questions about whether the -- anyone on
12  the panel had supported Senator Ernst, by the same
13  token, the Government would ask that Your Honor ask if
14  anyone had, you know, contributed to an opponent of hers
15  or any group that was opposed to her to kind of get the
16  flip side of it as well.
17        THE COURT: Any objection to that,
18  Mr. Nathan?
19        MR. NATHAN: No, Your Honor.
20        THE COURT: I will do that. Anything else,
21  Mr. Vavricek?
22        MR. VAVRICEK: Not on questions.
23        THE COURT: And Mr. Nathan?
24        MR. NATHAN: No, Your Honor.
25        THE COURT: All right. Let's go to the

10

1   witness list. I think both counsel know that when I
2   read the witness list, I don't give attribution to who's
3   going to call whom, and so what I will tell the jurors
4   is that this is a list of names of people who may be
5   called as witness or -- witnesses or whose names may
6   come up in the process of the trial to find out if they
7   know any of them. And then I have combined the
8   two lists that were submitted by the parties and
9   eliminated duplication, and then I'm just gonna read
10  down the list. I have -- I have combined them by last
11  name, so I'll go Rhonda Weber, Sarah Dierks, Jeffrey
12  Dierks, Scott Irwin, Tom Reinwart, Lincoln Braun,
13  Heather Dolan, Jacob Dolan, Russell Dolan and Tina
14  Debban, and I'm just gonna go down the list like that.
15  Any objection to that?
16          MR. VAVRICEK: No objection.
17          MR. NATHAN: No, Your Honor.
18          THE COURT: All right. I've got a notice
19  from the Government that defense counsel got as well
20  regarding the prospective jurors and some problems we
21  have on criminal histories, and it looks like we have
22  two felony convictions. One is with Warren Lyon, who is
23  No. 1 in the jury box, and according to the Government's
24  documentation, Mr. Lyon has an OWI third from 1998 that
25  is a felony offense; is that correct, Mr. Vavricek?

11

1           MR. VAVRICEK: That is correct.
2           THE COURT: Mr. Nathan, what are your
3   thoughts on Mr. Lyon?
4           MR. NATHAN: He's not eligible to serve.
5           THE COURT: Very good. So are the parties
6   okay with just striking him and substituting somebody
7   else in at this stage?
8           MR. VAVRICEK: Yes, Your Honor.
9           MR. NATHAN: Yes, Your Honor.
10          THE COURT: We'll do that. And then the
11  next one that has a felony offense is Brian Wilson.
12  Mr. Wilson is not preseated in the box. According,
13  again, to the Government's documentation, he has
14  two felony convictions. One is for OWI third 1995 and
15  then a controlled substance violation in 2003; is that
16  correct, Mr. Vavricek?
17          MR. VAVRICEK: That is correct, Your Honor.
18          THE COURT: And, Mr. Nathan, what are your
19  thoughts on Mr. Wilson?
20          MR. NATHAN: He's not eligible to serve
21  either.
22          THE COURT: Very good. And so we will
23  excuse Mr. Wilson as well and we'll have them excused
24  before they come up here in the room. The clerk's
25  office will get you a new list before the jury selection for a

12

1   substitute in for Warren Lyon before we get started here
2   this morning. All right.
3           MR. VAVRICEK: Your Honor?
4           THE COURT: Yes.
5           MR. VAVRICEK: We -- we had discussed and it
6   looks like Mr. Dixon is --
7           THE COURT: Oh, I'm sorry. Yup. I missed
8   Mr. Dixon as well. And Mr. Dixon -- I don't see
9   Mr. Dixon preseated.
10          MR. VAVRICEK: No, he's not.
11          THE COURT: Okay. Mr. Nathan?
12          MR. NATHAN: Same, Your Honor; not eligible
13  to serve.
14          THE COURT: All right. Very good. We will
15  strike Mr. Nixon (sic) as well.
16          All right. Is that everybody, Mr. Vavricek?
17          MR. VAVRICEK: Yes, Your Honor.
18          THE COURT: Okay. That's everything on my
19  list.
20          Mr. Vavricek, what's on your list?
21          MR. VAVRICEK: That is all, Your Honor.
22          THE COURT: Okay. Mr. Nathan?
23          MR. NATHAN: Nothing else, Your Honor.
24          THE COURT: All right. Very good. We're
25  gonna do this over in Courtroom No. 4, so I'll see you

13

1   over there promptly at nine o'clock.
2           (Recess at 8:19 a.m., until 9:06 a.m.)
3           (The prospective jurors were preseated.)
4           THE COURT: Welcome to the United States
5   District Court for the Northern District of Iowa. The
6   matter now before the Court is United States of America
7   versus Joseph Hilton Dierks, Case No. 17-CR-2065. My
8   name is C.J. Williams. I am a United States magistrate
9   judge. I will be presiding over jury selection this
10  morning. District Court Judge Linda R. Reade will
11  actually be presiding over the trial in this matter, but
12  she's busy trying another case right now, and so with
13  the consent of the parties, she asked me to preside over
14  jury selection this morning to allow her to try the case
15  downstairs on the second floor and so I will do that
16  here today.
17          I'm going to start off by giving you a
18  little bit of a description of our court system and then
19  I'm gonna describe the jury selection process we're
20  going to go through here this morning, which will
21  involve asking questions of you both by myself and by
22  the attorneys in this case. I will tell you the good
23  news is this will last only until about noon today. I
24  have a friend from California who tells me about jury
25  selection in California and the jury selection for a

**14**

1  very short trial will take days and sometimes weeks.
2  Jurors are called.  They sit downstairs.  They don't
3  even see the courtroom for days at a time and they sit
4  on their rears back there.  That doesn't happen in
5  federal court in Iowa.  So we will go through this jury
6  selection process; we'll be done by noon today.
7      All right.  So let me start by just
8  describing the federal system.  There is a federal
9  system and a state system, so we have federal courts and
10  state courts, county courthouses.  This is federal court
11  and we are one of 94 federal districts across the
12  United States, including U.S. territories in Guam and
13  Virgin Islands and Puerto Rico and so forth.  The
14  Northern District of Iowa takes up approximately
15  Highway 30 across the state and north, so we have from
16  river to river and up to the Minnesota border and
17  basically down to Highway 30 roughly.  It goes by
18  counties so sometimes it's not completely accurate.
19      We have two courthouses.  We have the
20  courthouse here in Cedar Rapids.  Judge Reade --
21  District Court Judge Reade is a district court judge
22  here.  I'm a magistrate judge here.  And then we have a
23  bankruptcy judge and we have two resident Eighth Circuit
24  Court of Appeals judges here.  In Sioux City, we have
25  Chief Judge Leonard T. Strand, a district court judge.

**15**

1  We have Senior District Court Judge Mark W. Bennett and
2  then my counterpart over in Sioux City is Kelly Mahoney.
3  She's a United States magistrate judge.
4      Let me introduce you to the people in the
5  courtroom that you're going to be seeing at least today.
6  In front of me is Kay Carr.  She is our court reporter.
7  She has by far the most difficult job in this courtroom.
8  She has to take down literally every word that's said,
9  including my misstatements, and she can only do that if
10  she can hear people, and so when we go through the jury
11  selection process and we start asking you questions, if
12  you have an answer to the question, if you raise your
13  hand, I'm going to ask you to hold off saying anything
14  until Jill Hawkins, who is my courtroom deputy clerk
15  here, can get a microphone to you.  And then she will
16  get you a microphone and you can speak into the
17  microphone because Kay cannot do her job if she can't
18  hear you.  The -- when you are with Judge Reade, which
19  will start tomorrow, Judge Reade will have Patrice
20  Murray, who is another court reporter.  She'll have a
21  law clerk as well sitting in front of her.
22      In the back, we have the court security
23  officers.  You see them in the blue blazers.  You saw
24  them when you came in.  Their job on days when we have
25  a trial is to make sure that the jury is taken to the

**16**

1  room to go to, when to come back and that kind of thing.
2  They also know where all the restaurants are and things
3  like that if you need that kind of advice.
4      Finally, you know, the most important people
5  in the courtroom is the jury, because ultimately, the
6  jury is going to be making the decision in this case.
7  Juries -- the whole jury system is a remarkable product
8  of democracy and it's actually democracy in action.  We
9  have citizens coming from the street actually making a
10  decision that can be binding in a case like this against
11  the United States government; everyday citizens making
12  that decision.
13      Serving on a jury is one of the most
14  important duties you have as a United States citizen,
15  next to paying taxes and voting.  The Constitution
16  guarantees somebody accused of a crime the right to have
17  the decision made by a jury of his or her peers, meaning
18  a fair cross-section of the community coming in to
19  listen to the evidence and decide what the facts are in
20  the case.
21      The process for picking a jury has evolved
22  significantly over time.  We inherent most of our law
23  from England, and back in the day when jury trials first
24  started in England, it was common for the jurors to
25  actually be witnesses to the case or people who knew the

**17**

1  parties somehow in the dispute, and so people would sit
2  on the jury and then they would get out of the box and
3  come up here and testify and then get back in the box
4  and then ultimately make the decision.
5      Over time, it was concluded that may not be
6  the fairest way to decide a dispute, and so it was
7  determined that what we want for jurors are people that
8  have no interest in this case whatsoever.  They don't
9  know anybody in this case or if they do, it doesn't make
10  a difference to them.  They have no dog in this fight.
11  They have no interest in the outcome.  They have no bias
12  or interest.  They can be fair and impartial jurors of
13  the facts.
14      And so that's what we're looking for now in
15  a jury, and in order to get there, a system has evolved
16  that's called voir dire.  It comes from the French verbs
17  voir to see and dire to speak, and it's a process of
18  questioning jurors with the idea of trying to figure out
19  who among you could be the most fair and impartial juror
20  for this particular case.
21      If this case was a medical malpractice case,
22  for example, and we had among you a doctor who had been
23  sued for malpractice multiple times, that doctor may not
24  be the most fair and impartial person to sit on a
25  jury.  Or if we had a lawyer who -- whose case or matter of

**18**

1 whether you're a good person or a bad person.  It's a
2 question of whether, based on the facts of this
3 particular case, the views you hold and the values you
4 hold are ones that make you a fair and impartial juror
5 for this particular case.
6 　　　　And so we have this process of asking
7 questions that will help us determine that.  You also
8 filled out questionnaires in advance of coming here
9 today, and the parties and I have had your
10 questionnaires and so that allows us to have an
11 assessment too of what your background is and what your
12 views are to some degree and that will speed up this
13 process and that's how we're able to do it in half a
14 day.  Without those questionnaires, we might be here for
15 a couple days and so I appreciate you all carefully
16 filling those out.
17 　　　　The way this process is gonna work is I'm
18 gonna start asking questions of you first as a group.
19 I'll ask for a show of hands if you have affirmative
20 responses.  Sometimes I might have a follow-up question
21 of you.  When I'm done asking questions, then I turn it
22 over to the parties and they each have 45 minutes to ask
23 you questions.  Sometimes they take the full 45;
24 sometimes they don't.  But they'll have some time to ask
25 you questions as well.

**19**

1 　　　　When we're all done asking questions, we
2 need to get your group of 29 people down to 13;
3 12 jurors who will actually decide the case, plus
4 one alternate in case somebody gets sick or something
5 during the jury trial.  And so that process of removing
6 jurors and getting us down to the number we need is
7 called using peremptory strikes, meaning the lawyers can
8 strike people -- prospective jurors so we get down to
9 that 13.  They don't have a choice.  They have to strike
10 enough people to get us down to the 13 by the way we
11 have the system set up.  It could be we get through the
12 jury selection questioning process and they have no
13 problem with any of you.  It doesn't matter; they've got
14 to find some reason to get rid of enough of you so we
15 end up with just 13 and so they'll exercise their
16 peremptory strikes.
17 　　　　They'll work with Ms. Hawkins, who will take
18 a board back and forth to them and they will strike off
19 prospective jurors.  When they're all done, they'll give
20 me the list.  I'll look at it and make sure that we have
21 the right number and then Ms. Hawkins will read out the
22 names of the people who will actually serve as our
23 jurors.  Everybody else will be excused at that time and
24 then we'll be done with the jury selection process once
25 Ms. Hawkins gets that list and reads off the order set

**20**

1 seating chart.
2 　　　　So during this process when I'm gonna be
3 asking you questions, your answers to my questions must
4 be under oath, and so at this time, I will ask
5 Ms. Hawkins to administer the juror oath.
6 　　　　THE CLERK:  If you'd all stand and raise
7 your right hand, including behind -- yes; the potential
8 jurors.  Thank you.
9 　　　　　　(The prospective jurors were placed under
10 oath.)
11 　　　　THE CLERK:  Okay.
12 　　　　THE COURT:  Thank you.  Please be seated.
13 Now, Ms. Hawkins had everybody in the back of the
14 courtroom that's prospective jurors stand up and take
15 the oath as well and that's because although our
16 questions will be directed to the 29 sitting up here
17 right now, it could be that one of them gets excused for
18 some reason during that process, and if so, then we're
19 going to be pulling people randomly from the back of the
20 courtroom and coming up here and having you take their
21 place.
22 　　　　And so if that happens, one of the first
23 questions I'm gonna have of you is were you listening to
24 all the questions we asked up here and would you have
25 affirmative answers to any of those or anything that we

**21**

1 need to know about and so it's very helpful for those of
2 you in the back of the room to listen to all the
3 questioning and be thinking in your head if I'm called
4 up here, what am I gonna say in response to those
5 questions.
6 　　　　Now, the first thing I'm gonna do is talk to
7 you about the length of this trial and listen for
8 hardship excuses.  This trial is estimated to last about
9 three months and -- actually, I'm kidding.  I've had
10 trials that have lasted three-and-a-half months
11 actually, so it does happen in federal court.  This
12 trial is gonna last one day the parties estimate.  Now,
13 that's their estimate and, you know, sometimes they may
14 be slightly off.  It may get done in less than a day; it
15 may take slightly over a day, but usually they're pretty
16 accurate.
17 　　　　And so the parties in this case anticipate
18 that this trial is gonna start tomorrow morning as soon
19 as Judge Reade gets freed up from her current trial.
20 We'll start at nine o'clock in the morning and they
21 anticipate that by the close of business tomorrow, you
22 will have all of the evidence and their arguments and
23 you might even have a chance to deliberate a little bit
24 before five o'clock.  The courthouse shuts down at
25 five o'clock if you haven't deliberated yet or if

**22**

1  you deliberated and you haven't come up with a verdict
2  yet, you'll be sent home to come back the next day and
3  you'll start deliberations again at 9 a.m. and you'll go
4  until you need to or until five o'clock.  If you're
5  unable to reach a verdict by Wednesday at five o'clock,
6  Thursday is a federal holiday and so you'll come back on
7  Friday at 9 a.m. and deliberate again until
8  five o'clock.
9        We have no idea how long it takes to
10  deliberate.  Sometimes it doesn't take very long;
11  sometimes it takes a long time, and once it goes to the
12  jury, it's completely up to the jurors to determine how
13  long it's gonna take to reach a verdict, and so it's
14  hard for us to estimate just how long you'll have to
15  serve, but this is one of the shortest trials we have.
16  A typical trial is maybe three or four days and this is
17  gonna be a short trial that you'll have to serve on.  So
18  that's kind of the length of the trial and the timing
19  under which we're going to operate.  I'm about to ask if
20  serving under those circumstances would cause any of you
21  a severe or extreme hardship, but before I do that, I
22  want to talk to you about a few things.
23        First, I'm intentionally tough on granting
24  hardship excuses and it's not because I don't care.  I
25  get that this is inconvenient to all of you,

**23**

1  particularly during a holiday week.  You've got other
2  places you might want to be, you'd rather be.  Some of
3  you may be working and your employer doesn't pay you and
4  -- or you're self-employed and every day or every hour
5  you're in a courtroom is time you're not getting paid,
6  and I get that.  It may be a financial hardship for you
7  to serve.
8        But remember, I said at the beginning of
9  this that our system of justice relies on a fair
10  cross-section of the community serving as jurors, and
11  that system wouldn't be a fair cross-section if the only
12  people we could get to serve on the jury are retired
13  people and unemployed people.  And so it is important
14  that we have a fair cross-section of the community to
15  serve as jurors.
16        You know, in America, we spend a lot of time
17  talking about all of our rights and very little time
18  talking about our obligations and duties as citizens.
19  There are men and women right now who are serving
20  overseas; some of whom have served for months or years
21  overseas in harms way serving our country and so
22  patriotism is a lot more than flying a flag and having a
23  bumper sticker.  It's doing your duty as a citizen.  And
24  so with that kind of background, I will ask if this will
25  be a severe or extreme hardship for any of you, and

**24**

1  before you raise your hand, I would ask you to think in
2  your mind, think about the person sitting next to you
3  and whether your explanation or need is any greater than
4  the person sitting next to you.  So at this point, can I
5  see a show of hands of anybody for whom this will be a
6  severe extreme hardship to serve as a juror in this
7  case, please raise your hand.  I see no hands.
8        This is amazing.  I -- I go to conferences
9  across the United States with other judges and we talk
10  about jury selection and I love to bring it up because I
11  talk about how we ask for the hardship excuses and
12  almost never has anybody raised their hand in an Iowa
13  jury.  And I talk to the judges from California and
14  New York and stuff and they say everybody raises their
15  hand and everybody has an excuse and an explanation for
16  why they can't serve, and I tell them that's just the
17  way Iowa jurors are, and so thank you; thank each of you
18  for your willingness to serve in this case.
19        All right.  Let's talk about this case.  The
20  name of this case is, again, the United States of
21  America versus Joseph Hilton Dierks.  The party bringing
22  the case is the United States and the defendant in this
23  case is Joseph Hilton Dierks.  I'm gonna read a
24  statement of the case to you at this point so you have a
25  little bit of an idea of what this case is about.

**25**

1        Twitter is a social-networking company
2  headquartered in San Francisco, California, that owns
3  and operates a free social-networking website of the
4  same name that can be accessed at
5  http://www.twitter.com.  Twitter permits users to
6  create, send and receive messages up to 140 characters.
7        Twitter messages are known as Tweets.
8  Twitter users can send their Tweets to other users by
9  including the recipient's Twitter account in the Tweet.
10  In this case, the defendant is charged with sending
11  three threatening communications from his Twitter
12  account, which is @JosephDierks to Senator Ernst at her
13  Twitter accounts @SenJoniErnst and @JoniErnst on or
14  about August 16, 2017, in three separate Tweets.
15  Defendant has pleaded not guilty to each of these
16  charges and is presumed innocent of them.
17        Now that is just a statement of the case.
18  It's a short summary of what this case is about.  It's
19  not evidence of anything.  It doesn't mean anything, but
20  it's there to give you an idea of what this case is
21  about so as we move forward through questioning, you
22  have at least some idea.
23        Now, first of all, having read that short
24  statement of the case, does anybody think they've heard
25  anything about this case, seen anything about this case, seen

**26**

1  anything on it?  I have no idea if it was in the paper
2  or on TV or anything like that, but anybody think they
3  know anything about this case?  If so, raise their hand,
4  please.  All right.  I see no hands.
5       The parties, as I mentioned, are
6  United States of America and Joseph Dierks.  The
7  United States in this case is represented by Tim
8  Vavricek.
9       Mr. Vavricek, I would ask you to introduce
10  yourself, the gentleman at counsel table with you and
11  anybody else that you practice with, please.
12       MR. VAVRICEK:  Thank you, Your Honor.  My
13  name is Tim Vavricek.  I'm an attorney in the
14  United States Attorney's Office here in Cedar Rapids,
15  Iowa.  Next to me is Scott Irwin.  He is a special agent
16  with the FBI or Federal Bureau of Investigation.  I work
17  in this office for the United States Attorney.  His name
18  is Peter E. Deegan.  He's appointed by the President and
19  confirmed by the Senate.  We have two offices of
20  lawyers.  One office is here in Cedar Rapids and another
21  office is in Sioux City.  As the judge indicated to you,
22  the Northern District of Iowa is basically Highway 30
23  north from South Dakota, Nebraska border over to the
24  Wisconsin, Illinois border.
25       Here in Cedar Rapids, some of the attorneys

**27**

1  that I practice with here are Sean Berry, Dan Chatham,
2  Matt Cole, Lyndie Freeman, Drew Inman, Justin Lightfoot,
3  Marty McLaughlin, Tony Morfitt, Rich Murphy.  Mr. Murphy
4  will be alongside me tomorrow at counsel table.  He is
5  -- he would be here, but he's in the other trial with
6  Judge Reade right now.  Ravi Narayan, Emily Nydle, Pat
7  Reinert, Jacob Schunk, Aaron Shileny, Mark Tremmel, Dan
8  Tvedt, Lisa Williams, Stephanie Wright.  In our
9  Sioux City office, we have Ajay Alexander, Jamie Bowers,
10  Tim Duax, Forde Fairchild, Kevin Fletcher, Katherine
11  Hayden, Jack Lammers, Mikala Steenholdt and Shawn Wehde.
12  Thank you.
13       THE COURT:  Thank you.  Any of the 29 up
14  here think they know Mr. Vavricek or Agent Irwin or any
15  of the people that Mr. Vavricek read off?  If so, raise
16  your hand, please.  It looks like we have a few.  Keep
17  your hands up, please, if you will.  Okay.  And let's
18  see, it looks like first we have -- is it Mr. Heaven --
19  Heavens?
20       THE JUROR:  Heavens.
21       THE COURT:  Heavens.  Mr. Heavens, who do
22  you think you know?
23       THE JUROR:  Tony Morfitt.  I'm an attorney
24  and I know -- well, I can't say I've ever met him, but
25  I've communicated with him on email before

**28**

1       THE COURT:  All right.  Was that case
2  related?
3       THE JUROR:  Yes.  Not to this case, but to
4  other cases.
5       THE COURT:  Sure.  Is there anything about
6  your communication with Mr. Morfitt in that case or your
7  involvement in that case with Mr. Morfitt that you think
8  would impact your ability to be a fair and impartial
9  juror in this case in any way?
10       THE JUROR:  No.
11       THE COURT:  Very good.  Thank you.  And then
12  there's right back here -- is it Ms. Thede?
13       THE JUROR:  Thede.
14       THE COURT:  And who do you know?
15       THE JUROR:  I only known of Mr. Vavricek
16  because we live in the same neighborhood and then I've
17  had some of his children in some of my classes.
18       THE COURT:  All right.  And so you're a
19  teacher someplace?
20       THE JUROR:  Yes.
21       THE COURT:  All right.  Very good.  Is there
22  anything about, first of all, living in the same
23  neighborhood with Mr. Vavricek that you think would
24  impact your ability to be fair and impartial in any way?
25       THE JUROR:  No.

**29**

1       THE COURT:  If Mr. Vavricek gets up and
2  makes an argument at some point and wants you to decide
3  a case one way, are you gonna have a difficult time
4  deciding it the other way?
5       THE JUROR:  I don't think so.
6       THE COURT:  What if you ran into him in the
7  neighborhood?  Would you be hesitant to rule against him
8  thinking oh my gosh, I might run into him and have to,
9  you know, explain my position at some point?
10       THE JUROR:  No.
11       THE COURT:  Okay.  How about his -- anything
12  about his children and being their teacher that you
13  think would make it difficult for you to be fair and
14  impartial in any way?
15       THE JUROR:  No.  His children are
16  delightful.
17       THE COURT:  All right.  Very good.  Thank
18  you.  Anybody else know anybody?  Up in the right-hand
19  corner.  Mrs. --
20       THE JUROR:  Schenkelberg.
21       THE COURT:  -- Schenkelberg.  Thank you.
22       THE JUROR:  I do believe I know Pat Reinert.
23       THE COURT:  Okay.  And how do you know Pat
24  Reinert?
25       THE JUROR:  He -- I used to be -- him former teacher

---

**30**

1  and I had his kids.
2  THE COURT: All right. Anything about that
3  relationship that you think would make it difficult for
4  you to be fair and impartial in this case?
5  THE JUROR: No.
6  THE COURT: Thank you. Anybody else? Okay.
7  The defendant in this case is represented by Chris
8  Nathan and, Mr. Nathan, if you would introduce yourself
9  and the gentleman at table with you and anybody else you
10  practice with as well, please.
11  MR. NATHAN: Good morning. I'm Christopher
12  Nathan. I'm the defense lawyer for Joseph Dierks. I
13  work with three other lawyers; Jill Johnston, Heather
14  Quick and Brad Hansen.
15  THE COURT: Thank you. Anybody know
16  Mr. Nathan, Mr. Dierks or anybody else that Mr. Nathan
17  listed off that he works with? If so, raise your hand,
18  please. Okay. I see no hands.
19  I'm gonna read to you a list of witnesses
20  with the same thing in mind. This is either a list of
21  people who actually will testify or people whose names
22  you will hear or may hear during the course of this
23  trial, and what we're looking for, again, is if you
24  happen to know them and if so, what the relationship
25  might be to determine if you can be fair and impartial.

---

**31**

1  And so the list is Rhonda Weber, Sarah
2  Dierks, Jeffrey Dierks, Scott Irwin who you met. Tom
3  Reinwart, who is an FBI agent. Lincoln Braun, Heather
4  Dolan, Jacob Dolan, Russell Dolan and Tina Debban. Does
5  anybody of the 29 up here believe they know any of those
6  people who may serve as a witness or whose name may come
7  up during the course of this trial? If so, raise your
8  hand, please. I see no hands.
9  All right. Any of you currently working in
10  a law enforcement capacity in any way as a correctional
11  officer or in -- as a police officer, a security guard,
12  military police, anything like that, please raise your
13  hand. Okay. We have -- again, it's Mr. Heavens?
14  THE JUROR: I'm Clayton County Attorney.
15  THE COURT: Okay. And so that's kind of the
16  chief law enforcement officer for Clayton County. Is
17  there anything about you serving as the Clayton County
18  Attorney you think would make it difficult for you to be
19  fair and impartial in this case?
20  THE JUROR: No.
21  THE COURT: This is a criminal case. You
22  are a criminal prosecutor. Do you think you can really
23  be fair and impartial to a defendant in this case as a
24  juror?
25  THE JUROR: I believe that my duty --

---

**32**

1  every case that I handle, so yes.
2  THE COURT: Very good. Thank you. Anybody
3  else in law enforcement in any capacity?
4  All right. Anybody have a close family
5  member, a brother or sister, a parent, a child or a very
6  close friend; somebody you would consider a close friend
7  working in law enforcement, please raise your hand?
8  Okay. And keep your hands up, if you would. We just
9  want -- the lawyers may have follow-up questions for
10  you.
11  All right. My general question to it looks
12  like the three of you then -- you can put your hands
13  down at this point -- is there anything about that
14  relationship, the fact you might have a family member or
15  close friend in law enforcement that you believe would
16  make it difficult for you to be fair and impartial in
17  this case? If so, raise your hand. Okay. No hands.
18  In this case, as you know, we've -- we've
19  got some law enforcement officers who may testify in
20  this case and it's going to be important that you be
21  able to judge that law enforcement officer's testimony
22  just like you would anybody else's. You don't give a
23  law enforcement officer any more credit simply because
24  they're a law enforcement officer; nor do you hold it
25  against them that they're law enforcement and judge them

---

**33**

1  as less credible because they're law enforcement.
2  Judge Reade will instruct you on how to --
3  you know, things you can do to help assess the
4  credibility of a witness, and among those things is not
5  what the person does for a living. It's things like
6  whether their testimony is consistent with other
7  testimony and so forth, and so it's going to be
8  important that you be able to judge law enforcement
9  officers' testimony just like anybody else. Does
10  anybody think they would have difficulty doing that in
11  this case? If so, please raise your hand. Okay. I see
12  no hands.
13  Does anybody currently have a dispute or in
14  the past had a serious dispute with the federal
15  government? You got audited by the IRS or you had a
16  dispute with the USDA over some land or crops or
17  something like that. Anybody currently have a dispute
18  ongoing with the federal government or in the past had
19  one? Okay. Yeah; okay.
20  THE JUROR: I'm just trying to be sure about
21  this.
22  THE COURT: Sure. Ms. Schenkelberg?
23  THE JUROR: I did have a case of a stolen
24  identity and it was a federal trial in New York. I

## 34

1    THE COURT: It was your identity that was
2  stolen?
3    THE JUROR: Right.
4    THE COURT: And did you testify in that
5  case?
6    THE JUROR: No, I did not. I wrote a letter
7  on behalf of myself and -- an impact statement, but no,
8  it was held in New York City.
9    THE COURT: Anything about that experience
10  that you think would influence you as a juror in this
11  case?
12    THE JUROR: No.
13    THE COURT: Okay. Thank you. Thank you for
14  bringing that up.
15    All right. Who among you previously has
16  served on a jury? Please raise your hand. And keep
17  your hands up, please, so again, the lawyers are gonna
18  take down their names. Okay. I think they're done. You
19  can put your hands down. Ms. Hawkins, can you hand the
20  microphone I think to the gentleman in the second row on
21  the very end there; Mr. McNally. Mr. McNally, you
22  previously served on a jury, sir?
23    THE JUROR: Yes, I have; Black Hawk County.
24    THE COURT: And how long ago was that?
25    THE JUROR: Probably two years ago.

## 35

1    THE COURT: And that was a criminal case or
2  a civil case?
3    THE JUROR: Civil case.
4    THE COURT: And so somebody was suing
5  another person for money damages?
6    THE JUROR: Domestic quarrel --
7    THE COURT: I see.
8    THE JUROR: -- situation.
9    THE COURT: And did you reach a verdict as a
10  jury?
11    THE JUROR: Yes.
12    THE COURT: And what was the verdict?
13    THE JUROR: It was not guilty.
14    THE COURT: Okay. And when you say not
15  guilty, that sounds like a criminal case. Was it a
16  question of whether somebody was gonna go to jail or not
17  or was it a question of whether somebody was gonna get
18  money or not? Do you remember? Sometimes those
19  distinctions don't mean a lot to jurors, but, you know,
20  to us lawyers and judges --
21    THE JUROR: Tell you the truth, I can't
22  answer that.
23    THE COURT: Okay. Fair enough. You were
24  able to reach a verdict though in that case?
25    THE JUROR: Yes.

## 36

1    THE COURT: And were you -- did you act as
2  the foreperson of the jury?
3    THE JUROR: No.
4    THE COURT: All right. Can you do me a
5  favor? Can you assure the rest of the people in this
6  group that have not served as jurors that you will
7  actually live through the experience?
8    THE JUROR: Oh, you'll make it, yeah.
9    THE COURT: All right. Good. Thank you.
10  Thank you. All right. If you could hand the microphone
11  right behind you, I think to Ms. -- is it Flater?
12    THE JUROR: Flater.
13    THE COURT: Flater. Ms. Flater, you served
14  on a jury as well?
15    THE JUROR: Yes. It was in Fort Dodge,
16  Iowa, and the case was -- I think it was a drunk driving
17  charge for a person who was also a coach, so if he was
18  convicted, it would affect his ability to work. And he
19  was found not guilty.
20    THE COURT: And was -- this was a state
21  court case how long ago?
22    THE JUROR: I believe it was 2002.
23    THE COURT: And did you serve as the
24  foreperson of the jury?
25    THE JUROR: Pardon me?

## 37

1    THE COURT: Did you serve as the foreperson
2  of the jury?
3    THE JUROR: No.
4    THE COURT: No. Okay. Ms. Flater, what --
5  having gone through that experience, what do you think
6  was the most important thing as a juror for you to be a
7  good juror?
8    THE JUROR: Well, one of the significant
9  impacts was that most of the people on the jury believed
10  that he was guilty, but they didn't have enough evidence
11  to convict him.
12    THE COURT: I see. All right. Very good.
13  And then is it Ms. Rohwedder next to you? You also
14  served on a jury?
15    THE JUROR: Yes, I did.
16    THE COURT: How long ago that was?
17    THE JUROR: I'm guessing it was probably
18  12 years ago.
19    THE COURT: And was it a criminal or a civil
20  case?
21    THE JUROR: I believe it was a criminal. It
22  was a case about a man with some child abuse.
23    THE COURT: Okay. And did you reach a
24  verdict in that case?
25    THE JUROR: Yes, we did.

---

**38**

1    THE COURT: And what was it?

2    THE JUROR: It was guilty.

3    THE COURT: And did you serve as the

4  foreperson of the jury?

5    THE JUROR: No, I did not.

6    THE COURT: Okay. What did you think,

7  having gone through that experience, was the most

8  important attribute of a good juror?

9    THE JUROR: Paying attention to the fellow

10  jurors, working with them, listening to the man that was

11  the foreperson's guidance and -- yeah.

12    THE COURT: Good. All right. Thank you.

13  If you could hand the microphone back I think -- actually

14  actually just down the row; Mr. Mueller. You served on

15  a jury as well?

16    THE JUROR: Yes.

17    THE COURT: How long ago?

18    THE JUROR: Spring 2016.

19    THE COURT: And criminal or civil case?

20    THE JUROR: It was a criminal case.

21    THE COURT: And was it --

22    THE JUROR: Robbery.

23    THE COURT: I'm sorry?

24    THE JUROR: It was a robbery.

25    THE COURT: And was it in state court or

---

**39**

1  federal court?

2    THE JUROR: It was Black Hawk County.

3    THE COURT: Okay. And did you reach a

4  verdict?

5    THE JUROR: Yes, guilty.

6    THE COURT: And did you serve as the

7  foreperson?

8    THE JUROR: No.

9    THE COURT: Okay. What did you think was

10  the most important attribute of a juror, having gone

11  through that process?

12    THE JUROR: I don't know; both sides being

13  presented and be able to make a decision. We had what I

14  felt was a pretty good jury, I guess.

15    THE COURT: Good. Thank you. And then I

16  think Ms. Schenkelberg again in the back. Ms. Hawkins

17  will get you the microphone. I'm talking to you a lot

18  this morning.

19    THE JUROR: I know; sorry.

20    THE COURT: That's all right.

21    THE JUROR: I was just an alternate in a

22  civil case. That was probably 20 years ago though.

23    THE COURT: Okay. And never got to

24  actually --

25    THE JUROR: Huh-uh.

---

**40**

1    THE COURT: -- make a decision in the case.

2    THE JUROR: No.

3    THE COURT: Okay. Well, thank you very

4  much. All right. Any of you served on a grand jury

5  before? Okay. I see no hands.

6    Has anybody previously testified in a trial

7  or a hearing and -- other than a family law related

8  thing like a divorce or a child custody, but in some

9  type of dispute where you served as a witness? If so,

10  raise your hand. Okay.

11    Do any of you know each other? We've

12  actually had cousins on the same panel before and

13  neighbors more than once, so any of you know each other?

14  Okay. I see no hands.

15    All right. Let me talk to you about some

16  principles of criminal law and criminal cases. This is

17  a criminal case and the Government has the burden of

18  proving each element of the offense by evidence beyond a

19  reasonable doubt. It's the highest standard in our

20  legal system. In civil cases, the burden of proof is

21  often by a preponderance of the evidence, which means

22  just slightly more; whoever has slightly more evidence

23  wins and that's preponderance of the evidence. Or

24  sometimes clear and convincing evidence and there's a

25  number of different standards, but beyond a reasonable

---

**41**

1  doubt is higher than any of the other standards of law.

2    Now, it's not beyond all doubt and

3  Judge Reade will instruct you tomorrow morning on what

4  the law is regarding reasonable doubt and she'll define

5  that for you. But what I want to get a sense from you

6  is you've all watched TV. You've all watched movies.

7  There's kind of a common understanding of what beyond a

8  reasonable doubt means and I want to get a sense from

9  any of you if you think that that standard is too high

10  and that the Government shouldn't have to prove its case

11  beyond a reasonable doubt and maybe a preponderance of

12  the evidence or if you just think the person is guilty,

13  that would be enough. Does anybody feel that that ought

14  to be the standard? If so, raise your hand. I see

15  none.

16    Does anybody think the other thing; that it

17  ought to be beyond all doubt? Absolutely no doubt

18  whatsoever and if you have even any reasonable doubt,

19  that -- that -- that's not good enough. You're not

20  gonna convict somebody unless you have absolutely no

21  doubt whatsoever the person is guilty. Anybody feel

22  that way? Okay. I see no hands.

23    You've heard in this case that Mr. Dierks

24  has been charged by way of an indictment. It's simply a

25  charge. It's not returned by a grand jury. The fact

---

42

1  that -- that a grand jury has returned an indictment
2  against Mr. Dierks is not evidence of anything.  It
3  doesn't mean he's guilty.  It's simply a way of charging
4  somebody in the federal system and so it's simply an
5  accusation.  It's not evidence of anything.  Now, it's
6  natural for you perhaps to be suspicious that if he's
7  been charged, there must be something there and -- and
8  that may be in the back of your mind, but you need to
9  understand that the fact that somebody has been accused
10  of a crime by way of indictment, it doesn't mean
11  anything.
12          Mr. Dierks is presumed to be innocent of all
13  charges right now as he sits here today.  And that
14  presumption of innocence stays with him all the way
15  through the trial unless the Government can prove his
16  guilt with evidence beyond a reasonable doubt.  Now, if
17  I were to ask you right now looking at Mr. Dierks, do
18  you -- do you think he's guilty or not guilty, my guess
19  would be that most of you would say well, I don't know
20  because I haven't seen any evidence yet, okay, and that
21  -- and that's kind of a common sense reaction.
22          But if you said that, you actually would not
23  be affording Mr. Dierks the benefit of the presumption
24  of innocence because I've just told you he's presumed to
25  be innocent right now.  He is innocent as he sits there

43

1  and that presumption of innocence stays with him all the
2  way through the trial.  And so if I were to ask you
3  looking at Mr. Dierks, is he innocent or guilty right
4  now, your answer would have to be he's innocent because
5  he's presumed to be innocent and that presumption,
6  again, stays with him unless and until you get into the
7  grand jury -- or into the jury deliberation room and you
8  conclude that there's evidence that proves his guilt
9  beyond a reasonable doubt.
10          Now, does anybody think they would have
11  difficulty in this case affording Mr. Dierks the full
12  benefit of the presumption of innocence now and all the
13  way through the trial until deliberations when you would
14  actually have a chance to assess the evidence in this
15  case?  Anybody think they would have difficulty doing
16  that?  Okay.  I see no hands.
17          All right.  The Fifth Amendment to the
18  United States Constitution guarantees a person the right
19  to remain silent and you hear about that in police shows
20  and movies, again, when somebody gets arrested, but it
21  also applies in a -- in a trial.  A person accused of a
22  crime has the right to remain silent all the way through
23  the trial.  I don't know what's gonna happen in this
24  case.  Mr. Dierks may testify; he may not testify.  He
25  has an absolute constitutional right not to testify and

44

1  if he chooses not to testify, the jurors cannot hold
2  that against him or consider it in any way.  In fact,
3  you can't even discuss it when you're back in the jury
4  deliberation room trying to reach a conclusion and
5  that's because he has a constitutional right not to
6  testify.
7          Now, I teach class -- law school class at
8  night and in one of my classes every year, I have a
9  session on jury selection and we talk about this concept
10  of the presumption of innocence and the right to remain
11  silent, and I ask the students to come up with reasons
12  why somebody might not testify that has absolutely
13  nothing to do with whether they're guilty or not guilty.
14  And I use the chalkboard and I start writing it down on
15  the chalkboard and we usually fill the chalkboard in a
16  very short period of time.
17          It could be that they have a speech
18  impediment.  It could be that they have English as a
19  second language.  It could be that they have a fear of
20  speaking in public and if they got up and started
21  speaking, they would start sweating profusely and
22  worried that suddenly you'd reach a conclusion they were
23  guilty because they were sweating.  You can go on and on
24  and on the point.  There are lots of reasons why
25  somebody might not testify that has nothing to do with

45

1  whether they're guilty or not guilty.
2          The important thing is if you serve as a
3  juror in this case, you must be able to afford
4  Mr. Dierks the full benefit of the Fifth Amendment and
5  not hold it against him in any way or consider it in any
6  way if he does not testify.  Again, I don't know if he
7  will or not, but if he doesn't, you can't even take that
8  into account.  You've got to look at the evidence you
9  saw; not speculate about what other evidence is or
10  speculate about why he may have chosen not to testify in
11  this particular case.  Does anybody think they would
12  have difficulty doing that?  If so, raise your hand,
13  please.  Okay.  I see no hands.
14          You've heard that this case involves
15  allegations that Mr. Dierks sent messages to
16  Senator Joni Ernst.  Have any of you personally met
17  Senator Ernst?  If so, raise your hand.  Okay.  And I'm
18  sorry -- I'm not gonna ask you any follow-up questions,
19  but if you could raise your hand again just to --
20  Ms. Rohwedder?  Okay.  The lawyers may want to ask some
21  follow-up questions on that.  Well, actually, why don't
22  you give her the microphone, if you would, sir -- or
23  Jill; sorry.
24          THE CLERK:  That's all right.
25          THE COURT:  Can you just tell me how did you

**46**

1  meet her or where did you meet?

2  THE JUROR: My husband's a county supervisor

3  and she has visited our local Republican sites.

4  THE COURT: Okay.

5  THE JUROR: And we've had conversation.

6  It's cas -- I mean just like this.

7  THE COURT: Okay. Here's -- here's my

8  concern is I want to make sure that -- that that doesn't

9  influence your ability to be fair and impartial in this

10  case. Now, the case involves allegations of threats

11  against Senator Ernst in Tweets. Is there anything

12  about your relationship with Senator Ernst or your

13  contact with her that you think would make it difficult

14  for you to be fair and impartial in this case and

15  determine the facts and whether, in fact, it's true or

16  not true and put aside whatever connections you have to

17  Senator Ernst? Would you have difficulty doing that?

18  THE JUROR: No.

19  THE COURT: Okay. Thank you. Has anybody

20  worked on Senator Ernst's campaigns or contributed

21  financially to her campaign or have any other strong

22  connection to Senator Ernst? All right. We have

23  Mr. Heavens. And what is your connection, sir?

24  THE JUROR: I think my wife contributed to

25  her campaign, if I remember correctly.

**47**

1  THE COURT: Okay. And is there anything

2  about that that you think would influence your ability

3  to be fair and impartial in this case?

4  THE JUROR: No.

5  THE COURT: All right. Thank you. Anybody

6  else? How about the other way? Has anybody campaigned

7  against Senator Ernst or contributed money in efforts

8  not to get her elected or to get anybody elected against

9  her or anything like that? Or anybody have any strong

10  anti-Joni Ernst sentiments? If so, raise your hand.

11  All right. Bottom line, is there anybody

12  here who thinks the fact that the alleged recipient of

13  these messages in this case is Senator Joni Ernst;

14  whether that's going to influence their ability to be

15  fair and impartial in any way versus if it had been

16  messages to anybody else in this world? Any -- anybody

17  have any concerns whatsoever about whether they could be

18  fair and impartial given the -- the identity of the

19  alleged recipient of these messages? If so, raise your

20  hand, please. Okay. I see no hands.

21  Some say that characteristics of a good

22  judge is somebody who can be open-minded, who can wait

23  to make up his or her mind until after they've heard all

24  of the evidence and heard all of the argument and

25  somebody who can be fair and impartial and doesn't have a

**48**

1  vested interest in the outcome but actually just decide

2  the matter as the law requires and follow the law even

3  if the judge disagrees with the law. Those are

4  attributes of a good judge.

5  Those are also attributes of a good juror

6  because, ultimately, jurors are going to be judges of --

7  judges of the facts. Judge Reade will give you the law

8  that you have to apply to the case and you have to

9  follow that law whether you agree with it or not, but

10  you ultimately will be judges of the facts and it's

11  going to be important for you to be able to keep an open

12  mind. Not make up your mind after you hear the first

13  witness or even the second witness or even the third

14  witness, but keep an open mind all the way through the

15  evidence, to listen to both sides fairly, to be fair and

16  impartial and to give both sides a fair trial. Having

17  that description of a good juror, does anybody on this

18  panel think they might have difficulty living up to that

19  expectation? If so, raise your hand, please.

20  All right. My final question is this. I

21  asked a lot of questions. I'm trying to probe. I'm

22  trying to think of everything that may be important for

23  us to try to figure out who might be fair and impartial

24  or if there's anything out there that might make it

25  where you would not be a fair and impartial juror for

**49**

1  some reason in this particular case, and I can't think

2  of anything -- or everything. And so my question is is

3  there anything else that I've missed that you know about

4  yourself or your background that you think would be

5  important for either me or the parties to know about in

6  assessing whether this is a good case for you to be a

7  juror on? If so, raise your hand, please. Anything I

8  missed? Okay. I see no hands.

9  At this point, I'm gonna turn it over to

10  Mr. Vavricek. You may ask questions of this jury.

11  MR. VAVRICEK: Thank you, Your Honor. Got

12  it working. Good morning again. My name is Tim

13  Vavricek. I'm here with Agent Irwin for the

14  United States of America, and I wanted to thank you,

15  first of all, for your service. It is a busy time of

16  year for everyone and we appreciate you doing your civic

17  duty being here, and we'll try to be as respectful of

18  your time as we can and we do expect -- our best efforts

19  are to have this case to the jury tomorrow.

20  My first question for you all is anybody

21  here feel uncomfortable sitting in judgment of another

22  person? Ma'am. It's Ms. Rohwedder?

23  THE JUROR: Lewis.

24  MR. VAVRICEK: Ms. Lewis; sorry. I've got

25  anybody who's unfair or impartial -- I'm sorry -- if the judge

**50**

1  were to tell you that your job is to apply the law to
2  the facts and you're not to sit in moral judgment of
3  another person, for example, would you be able to follow
4  that instruction?
5      THE JUROR:  That I could do, yeah.
6      MR. VAVRICEK:  Okay.  Do you think that --
7  though that your initial inclination would affect --
8  affect you in the jury room?
9      THE JUROR:  It might be difficult.  I -- I
10  think it probably would be a little difficult, but I
11  don't know; I've never done this before.
12      MR. VAVRICEK:  Sure.  Sure.  But do you
13  think though if -- if the judge tells you that your job
14  as the jury is to be judges of the facts and apply the
15  law to those facts, could you do that?
16      THE JUROR:  When it comes to facts and law,
17  I could distinguish that versus the moral.
18      MR. VAVRICEK:  Okay.  Well, thank you.
19  Anyone else that might have difficulty or have some
20  hesitancy about sitting on a jury and making a decision
21  involving another person?
22      All right.  So the judge talked to you a
23  little bit about what might make a -- make a good juror.
24  For those of you who have been on a jury before, would
25  one of you maybe please volunteer and tell me your ideas

**51**

1  on what -- what makes a good juror, having gone through
2  that process.  I don't want to call on anybody if
3  somebody volunteers.  Kind of like school, remember?
4  Mr. -- Mr. McNally, I guess I'll -- I'll pick on you.
5  You were on a -- on a jury.  What do you think makes a
6  good juror?
7      THE JUROR:  I don't know.  I guess just
8  basically being honest.  Looking over the case and doing
9  the best you can.
10      MR. VAVRICEK:  What about using your common
11  sense?
12      THE JUROR:  Common sense.
13      MR. VAVRICEK:  Okay.  How -- how would you
14  or did you in that case that you had decide, like, who
15  to believe?  What are some of the things you might look
16  for?
17      THE JUROR:  You just have to look over both
18  sides and you can make the decision and I can't tell you
19  now --
20      MR. VAVRICEK:  Yeah.
21      THE JUROR:  -- but at the time.
22      MR. VAVRICEK:  Okay.  I'll stop picking on
23  you now.  There's others.  Let's see; anyone else want
24  to volunteer who's been on a jury?  Oh, Ms. Rohwedder.

**52**

1  any thoughts on that; what makes a good juror?
2      THE JUROR:  I agree with him and your
3  integrity and yourself to be fair and listen to both
4  sides.  And -- yeah.
5      MR. VAVRICEK:  Would maybe comparing the
6  testimony that you hear to any other maybe evidence you
7  have to make sure they're -- they line up and they're
8  the same, they're consistent?  Was that something that
9  you had to deal with in --
10      THE JUROR:  Yes.  You -- yeah.  You listen
11  to the people that were on the stand and all the
12  evidence and testimony, I think those work together to
13  help you make your decision.
14      MR. VAVRICEK:  Okay.  And then next to you,
15  Ms. Flater.  What about your jury experience?  What were
16  some of the things that you might think made a good
17  juror in that case you had up in Fort Dodge?
18      THE JUROR:  What the two previously stated
19  is pretty much my opinion too, but you really have to
20  pay attention and listen to everything.
21      MR. VAVRICEK:  Okay.  And when you're paying
22  attention to a witness, what are some of the things that
23  you might be -- might be looking for to see whether you
24  believe them or not?
25      THE JUROR:  What they say, tone, body

**53**

1  language, eye contact.
2      MR. VAVRICEK:  All right.  Thank you.  Now,
3  going through those questionnaires you filled out, you
4  probably wondered who -- who like -- who reads these;
5  right?  They're these forms you send out and you don't
6  know who reads them, but I -- looking through them, I
7  noted, you know, a number of people have had maybe
8  themselves or family or friends that have had legal
9  troubles or maybe run-ins with law enforcement.  Does --
10  does anybody think that, you know, any of your
11  experiences with law enforcement, either good or bad,
12  would interfere with your ability to be a fair and
13  impartial juror in this case?  Because everybody here
14  just wants fairness.  Anybody?
15      Okay.  And the judge mentioned if there were
16  any disputes with -- anybody had any serious disputes
17  with the federal government.  You know, like the postman
18  ran over your mailbox and didn't -- nobody paid for it
19  or, you know, an IRS issue is a common one.  Anybody
20  have an issue with the FBI in particular that might
21  affect your ability to be a fair juror in this case?
22  Okay.  I don't see that.
23      What about the Waterloo Police Department?
24  Anybody had an issue with the Waterloo Police

**54**

1 Waterloo police officer.

2 Okay. I expect one -- for those of you who

3 are lucky enough to get on the -- the -- the jury, there

4 will be an instruction about direct and circumstantial

5 evidence. Anybody know what the difference between

6 direct and circumstantial evidence is? All right. We

7 have a lawyer here. Sir, Mr. Heavens, I don't think we

8 know each other, do we?

9 THE JUROR: No.

10 MR. VAVRICEK: Okay. And what -- what is

11 the difference between direct and circumstantial

12 evidence?

13 THE JUROR: Well, direct would be something

14 that a witness has seen live; something like that.

15 Circumstantial would be a chain of facts that lead you

16 to an inference or conclusion.

17 MR. VAVRICEK: Okay. And so an example

18 might be, you know, a common one is to figure out if it

19 snowed last night, you could either be up in the middle

20 of the night and you could watch it and you could see it

21 with your own eyes. That would be direct evidence. The

22 other one is, you know, you go to bed and there's

23 nothing on the ground and then you wake up in the

24 morning and there's a bunch of white stuff. Now, I

25 expect the judge is gonna tell you there's no difference

**55**

1 in the law between direct and circumstantial evidence

2 and if the judge instructs you on that, anybody gonna

3 have a problem with that instruction -- following that

4 instruction of the judge?

5 All right. Anybody, you know, you gonna require

6 the Government to have, you know, everything on actual

7 videotape and a confession?

8 Okay. So the judge also talked to you about

9 the burden of proof and the presumption of innocence.

10 As you sit there right now, how many of you, raise your

11 hand, would find the defendant not guilty if you just

12 had to make your decision right now? All right. All

13 right. That's right. I expect the judge is gonna

14 instruct you on this. That the defendant is presumed

15 innocent; however, proof at trial may overcome that

16 presumption, and this is the same burden of reasonable

17 doubt that is in every criminal case in this great

18 country of ours. Now, the question is what does that

19 mean? Everybody agree with me that that doesn't -- that

20 beyond a reasonable doubt doesn't mean just probably

21 guilty or might be guilty? I see some nodding. Good.

22 Now, on the flip side, however, anybody here

23 have the view that, you know, if there's any doubt, even

24 a shadow of a doubt, a mere possibility of innocence,

25 that you wouldn't be able to find him -- the defendant

**56**

1 Anybody --

2 THE JUROR: You have to prove your case --

3 THE COURT: Let's wait until we get a

4 microphone.

5 THE JUROR: You have to prove your case

6 without a doubt. I mean that's the way it is. If I

7 feel that he still has a possibility of being innocent,

8 then he's still innocent until you prove me different.

9 MR. VAVRICEK: Okay. What if -- what if the

10 judge told you that the Government doesn't have to prove

11 it without any doubt whatsoever, but only a reasonable

12 doubt? Would you be able to --

13 THE JUROR: I wouldn't be able to be on the

14 jury. I mean without reasonable -- you would have to

15 prove without a doubt that he is guilty.

16 MR. VAVRICEK: Even if the judge instructed

17 you otherwise?

18 THE JUROR: As a juror, as an independent,

19 yes.

20 MR. VAVRICEK: Okay. Well, I appreciate

21 your candor, sir. Anybody else feel that way? You,

22 ma'am?

23 THE JUROR: I believe I do.

24 MR. VAVRICEK: Okay. Okay. So if the judge

25 -- I just want to be clear; if the judge were to tell

**57**

1 you that's not the standard you should apply, beyond any

2 doubt whatsoever, you would -- you just -- when you went

3 back in that room, you won't be able to follow what the

4 judge said?

5 THE JUROR: No offense to the judge, but I

6 like to think for myself, so I probably would have

7 difficulty.

8 MR. VAVRICEK: Okay. And I -- I appreciate

9 -- I appreciate your candor and honesty. That's what

10 this process is for. Anybody else feel that way? Okay.

11 All right.

12 THE COURT: Mr. Vavricek, let me jump in

13 here. Ms. Lewis, the judge will instruct you that the

14 burden of proof is proof beyond a reasonable doubt, and

15 so the Government has to prove it beyond a reasonable

16 doubt, all right? But if you have a reasonable doubt of

17 defendant's -- whether he's guilty or not guilty, then

18 you have to vote him to be not guilty; right? If you

19 have a reasonable doubt left; right? But if you have no

20 reasonable doubt left, then you would have to vote

21 guilty. Do you think you would have difficulty

22 following that instruction?

23 In other words, the test is not all mere

24 possibility. It's not -- you don't think about well,

25 maybe if I could prove it, but if you sit on there and you, you know, did

**58**

1  this or whatever.  I mean it's not a case where you
2  think beyond all possible doubt.  It has to be beyond a
3  reasonable doubt.  And you think you can follow that
4  instruction or do you think if the judge gave you that
5  instruction, you would still think I would have to find
6  beyond all doubt whatsoever, no even mere possibility?
7  It's just got to be absolute completely -- and if you
8  feel that way, that's fine.  I'm just trying to assess
9  whether you can serve as a juror in this case because
10  you have to be able to follow the law in this case.
11          THE JUROR:  Right, which is basically facts
12  and evidence and all that.  So I honestly, yeah,
13  probably if I had all that in front of me, I guess.
14          THE COURT:  Okay.
15          THE JUROR:  I just don't feel comfortable
16  judging people's guilt or innocence.
17          THE COURT:  Yeah, and I get that.  Most
18  people don't feel comfortable doing that.  And your case
19  is -- and jurors aren't trying to decide whether
20  somebody's a good person or a bad person.  They're
21  simply, you know, trying to figure out did this happen
22  as alleged.  Are these facts -- does it really prove
23  beyond a reasonable doubt that the person did what the
24  Government accuses them of doing.
25          THE JUROR:  Right.

**59**

1          THE COURT:  The jury doesn't have any
2  involvement in determining punishment, what the outcome
3  is gonna be; anything like that.  You're simply
4  determining whether, in fact, the thing happened as
5  alleged.  Do you think you could do that?
6          THE JUROR:  Probably, yes.
7          THE COURT:  Okay.  And could you pass the
8  microphone down to Mr. Green.  And, Mr. Green, I have
9  the same questions of you.  Given that description, do
10  you think you could follow the judge's instruction
11  beyond a reasonable doubt versus beyond all possible
12  mere possibility?
13          THE JUROR:  Yeah, without a doubt.  I mean
14  the case has to be proven to me also.  I mean he's
15  innocent until they prove they have the evidence against
16  him.
17          THE COURT:  Right.  Beyond a reasonable
18  doubt though.  At some point --
19          THE JUROR:  Yeah.
20          THE COURT:  And so my question is some
21  people just can't do that.  Some people just really
22  believe that I've got to have, you know, every, you
23  know, elimination.  You know, it's the -- you know,
24  there could be a person on the grassy knoll and, you
25  know, it's possibly not really Lee Harvey

**60**

1  Harvey Oswald and it was actually an alien that was in
2  his skin.  You know, you can speculate beyond a certain
3  level --
4          THE JUROR:  Yes, there is speculation.
5          THE COURT:  -- but the Government's burden
6  is beyond a reasonable doubt.
7          THE JUROR:  Yeah, without a reasonable
8  doubt.
9          THE COURT:  Do you think you can abide by
10  that standard if the judge gives it to you --
11          THE JUROR:  Yes.
12          THE COURT:  -- or do you think you would
13  have difficulty?  And if you have difficulty, that's
14  fine.
15          THE JUROR:  No, it wouldn't be difficult,
16  just as long as without a reasonable doubt that, you
17  know, they proved their case and --
18          THE COURT:  And you think you could do that?
19          THE JUROR:  Yes.
20          THE COURT:  Okay.  Mr. Vavricek?
21          MR. VAVRICEK:  Thank you, Your Honor.  Sort
22  of on a related note, I expect the judge will tell you
23  there's certain elements or things that the Government
24  has to prove in this case, and in this case I believe
25  there will be three things.  But any of you, if the

**61**

1  judge told you that there were three things that the
2  Government had to prove, would require the Government
3  maybe to prove something else, like a fourth thing?
4          Just to give you a wild example, you know,
5  you know, maybe you thought that when you're listening
6  to the testimony, that it was somehow important that on
7  August 16th of 2017, the sun was shining on that day.
8  Something that -- that you yourself very much felt was
9  important, but it was not something that the judge had
10  instructed you was required before the defendant could
11  be found guilty.  Anybody have -- would have problems
12  following the judge's instructions like that?  Okay.
13  Thank you.
14          So this case, as the judge mentioned,
15  involves a Senator Joni Ernst.  Anyone here a real big
16  fan of politicians?  I see no hands.  Okay.  A lot of
17  people don't like politicians.  Maybe -- maybe better
18  than lawyers; I don't know.  You know, approval ratings
19  for Congress are pretty low I hear, but anybody here
20  would be unable to set aside dislike or bad feelings
21  about politicians in this case if it's not one of the
22  things that, you know, matters?  Anybody here just say
23  oh, gosh, this case involves a politician.  I'm not
24  gonna -- I couldn't find anybody guilty in a case like
25  that.  Okay.

## 62

1     Would it affect your decision in any way, do
2  you think, if it was a politician or staff members that
3  were threatened?  Anybody here, you know, just figure
4  they deserve it, so I couldn't -- I couldn't follow the
5  law?  Okay.
6     Anybody here think that the law should treat
7  politicians better or worse than the rest of us folks?
8  Mr. Heavens, you've had to run for office, I assume;
9  right?
10    THE JUROR:  Yes, I have.
11    MR. VAVRICEK:  Do you think, you know, the
12  fact that you had to run for office would affect your
13  decision in this case in any way?
14    THE JUROR:  No, I don't think so.
15    MR. VAVRICEK:  I'm gonna ask a slightly
16  different but related question.  Anybody here think that
17  just because somebody has different political beliefs
18  from you, that the law should not apply the same to
19  them?  I see some shaking heads, and maybe -- let's see
20  who shook your heads all; maybe pick on you a little
21  bit.  Ms. Nordstrom?
22    THE JUROR:  Yes.
23    MR. VAVRICEK:  And why would that be the
24  case?
25    THE JUROR:  Everyone has the same rights --

## 63

1     THE COURT:  Hang on; let's get that
2  microphone.  Thank you.
3     THE JUROR:  Everyone has the same rights
4  regardless of their political views.
5     MR. VAVRICEK:  Okay.  So just because this
6  case might involve somebody from one side of the
7  political spectrum, that -- that wouldn't affect your
8  views in any way.  You -- you -- would you be able to
9  follow the law and the facts as they are?
10    THE JUROR:  I would, because that's how our
11  country is run.
12    MR. VAVRICEK:  Okay.  Anybody disagree with
13  that?  Now, this case involves threats.  Anybody here
14  think that no matter what the judge instructs you, for
15  something to count as a -- you know, as a threat, it
16  would have to be face-to-face or in person?  Okay.
17  Anybody here ever had themselves or a family member or a
18  close friend ever threatened or bullied?
19    MR. VAVRICEK:  Yes, ma'am.  Ms. Lewis?
20    THE JUROR:  Yes.
21    MR. VAVRICEK:  You're popular today.
22    THE JUROR:  I guess.
23    MR. VAVRICEK:  And would -- could you
24  explain what that was if you're -- if you're
25  comfortable.

## 64

1     THE JUROR:  My mother had a boyfriend who
2  she was broken up with and it's kind of a harassment
3  type threatening situation.
4     MR. VAVRICEK:  And was that always in
5  person?
6     THE JUROR:  No.
7     MR. VAVRICEK:  Okay.  And --
8     THE JUROR:  Letters.
9     MR. VAVRICEK:  Things like that.  Okay.  The
10  fact that you had someone close to you that was
11  threatened, would that affect your ability to just, you
12  know, decide the facts and -- and apply them to the law
13  as the judge gives them to you tomorrow hopefully?
14    THE JUROR:  It might, because I can take it
15  personal.  I mean depending on the type of threat that
16  was involved in the case.  But I guess if I was looking
17  at just the facts, I would hope I would be able to
18  distinguish them.
19    MR. VAVRICEK:  Okay.  Thank you.  Anyone
20  else?  And if you don't feel comfortable going into the
21  -- the real details, I'm not gonna press you on it, but
22  anybody else have a -- have a person close to you?  Yes,
23  ma'am.  Ms. Flood?
24    THE JUROR:  Yeah.  I had a niece that was
25  cyber bullied and her mom and her ended up leaving the

## 65

1  state --
2     THE COURT REPORTER:  I'm sorry; her mom
3  what?
4     THE JUROR:  Her mom and her ended up leaving
5  the state to get away.
6     MR. VAVRICEK:  Okay.  And was that on the --
7  so cyber; that was on the internet then?
8     THE JUROR:  Yes; I'm not sure which.
9     MR. VAVRICEK:  Which platform, social
10  media --
11    THE JUROR:  Yeah; I'm not sure which.
12    MR. VAVRICEK:  The fact that you know
13  somebody who's had to go through that, would that affect
14  your ability to be fair and impartial --
15    THE JUROR:  No.
16    MR. VAVRICEK:  -- in this case?  Okay.  And
17  this case does involve Twitter.  Anybody had a bad
18  experience with social media; Twitter, Facebook,
19  Instagram, whatever else folks use these days?  Anybody
20  had an uncomfortable experience with someone approaching
21  you maybe you didn't know?  Thank you.
22    Raise your hand if you've heard of Twitter.
23  Oh, everybody has heard of Twitter.  Okay.  Anybody here
24  maybe a self-styled Twitter expert?  We had -- everybody
25  raised their hand already.  Anybody like besides

---

**66**

1 hearing of it, use it?  Okay.  We've got a few hands.
2 Ms. Thede, do you have a Twitter account?
3 THE JUROR:  I do have a Twitter account
4 mainly just for professional reasons.  I follow
5 educational people and then share out classroom
6 happenings.
7 MR. VAVRICEK:  Okay.  And with -- for those
8 of you who use Twitter, would you be able to set aside
9 any preconceptions or things you may think you know
10 about Twitter and only base your decision on what you
11 hear in this courtroom?  Would you be able to do that,
12 Ms. Thede?
13 THE JUROR:  Yes.
14 MR. VAVRICEK:  Okay.  Great.  For the rest
15 of you too?  Okay.  That's about all I have.  This is
16 our last chance to talk back and forth with one another
17 and so my last question is just, you know, everybody
18 here wants fair jurors.  Is there anything else we
19 haven't talked about or I didn't ask about that would --
20 that we need to know about that might affect your
21 ability to be fair in a case like this based on the very
22 little that you know about it right now?  All right.
23 Seeing none.
24 Your Honor, there is a matter I would like
25 to discuss when I'm done, but --

---

**67**

1 THE COURT:  Let's do this.  Let's go ahead
2 and put the jurors on break here and so we're gonna take
3 our morning break here.  We're gonna be on break until
4 10:35.  It's 10:17 right now.  And so at 10:35, I'll ask
5 you to assemble back here in the courtroom.  During this
6 break, don't talk about this case.  Don't discuss it.
7 Don't try to make up your mind.  Don't try to go figure
8 out what Tweeter is or Twitter or whatever it's called.
9 Just we need you to be completely neutral and so just
10 don't do anything in relation to this case.
11 While you're out in the hallway, the lawyers
12 and the parties may see you out there and pass by you.
13 If they do so, they're not gonna engage you.  They may
14 not even look at you.  It's not because they're not
15 being friendly.  It's because they're instructed to not
16 have any interaction with the jurors.  It's important
17 not only that we have a fair trial, but we have to have
18 the appearance of a fair trial and if somebody else saw
19 you talking to one of the parties or the lawyers in this
20 case, they may reach a conclusion that you were talking
21 about the case when all you were talking about is how
22 horrible the Iowa Hawkeyes played on Saturday, all
23 right?  And so it's gonna be important that nobody have
24 any contact with you, and so again, if the parties and
25 the lawyers pass you, they're not gonna be unfriendly.

---

**68**

1 people.  It's because they're instructed to do so.
2 So with that, we'll go ahead and excuse the
3 jurors until 10:35.
4 (Jury out at 10:19 a.m.)
5 (In open court, outside the presence of
6 the prospective jury.)
7 THE COURT:  All right.  Please be seated.
8 The record will reflect we're outside the presence of
9 the jury and, Mr. Vavricek, you had a motion.
10 MR. VAVRICEK:  Yes.  The United States would
11 move to strike for cause Mr. Green, I believe Juror
12 No. 16, and Ms. Lewis, Juror No. 12.  I recognize,
13 Your Honor, that in -- in many ways, I think, you
14 rehabilitated them with your questioning; however, under
15 oath they gave very contradictory statements and I
16 thought both of them were pretty firm with respect to my
17 questioning that they -- they weren't able to follow the
18 beyond a reasonable doubt instruction, but I -- I do
19 recognize that in your questioning, they came around a
20 good bit, so thank you.
21 THE COURT:  Thank you.  Mr. Nathan?
22 MR. NATHAN:  The defense would resist the
23 Government's motion to strike Nos. 12 and 16 for cause
24 for essentially the reasons the Government put forth in
25 their argument that Your Honor did rehabilitate them.

---

**69**

1 THE COURT:  I am going to deny the
2 Government's motion to strike those two jurors.  Here's
3 the problem.  I think when we get into trying to
4 question jurors about beyond a reasonable doubt before
5 it's been defined for them, it's easy for jurors to get
6 confused on what the standard is and what they're
7 expected to do, and we use certain terms -- legal terms.
8 We're very familiar with them; jurors are not, and so I
9 think the product of the voir dire was really more of --
10 or the outcome of this voir dire was more a product of
11 the jurors not really understanding what their job is
12 and what the burden of proof is and that will all be
13 explained to them in the jury instructions.
14 I'm confident, given the answers provided by
15 Mr. Green and Ms. Lewis, that they are prepared to
16 follow the law as given to them by the judge and will
17 hold the Government to proof beyond a reasonable doubt,
18 but not beyond that.  So the motion is denied.
19 Anything else, Mr. Vavricek?
20 MR. VAVRICEK:  No, Your Honor.  We'd pass
21 the rest of the panel for cause and thank you.
22 THE COURT:  All right.  Thank you.  And so
23 when we get back at 10:35, we'll start up with defense
24 voir dire.
25 MR. NATHAN:  Your Honor, I just had

**70**

1  one question.

2  　　　　THE COURT: Yes.

3  　　　　MR. NATHAN: If I don't have any motions for

4  cause, may I simply sit down rather than say pass for

5  cause? It always struck me as sort of an awkward way to

6  end the conversation.

7  　　　　THE COURT: Certainly. If you have no

8  motions for cause, what you can do is simply say

9  Your Honor, I'm done asking all questions and then sit

10  down and if I don't -- if I don't hear a motion,

11  then we'll take that as an indication you have none.

12  　　　　MR. NATHAN: Thanks, Your Honor.

13  　　　　THE COURT: Thank you. Anything else before

14  we adjourn for 15 minutes?

15  　　　　MR. VAVRICEK: Just on that note on avoiding

16  awkward sayings, I note the trial management order

17  requires us after exercising our peremptory strikes to

18  appear to -- it appears to me to stand and say

19  exercised. Is that -- Your Honor, I haven't had voir

20  dire --

21  　　　　THE COURT: I don't require that.

22  　　　　MR. VAVRICEK: Okay. Thank you.

23  　　　　THE COURT: Just simply hand -- when you're

24  done, hand it back to Ms. Hawkins. She'll hand it over

25  to the other side and so forth and so on until we're

**71**

1  done.

2  　　　　MR. VAVRICEK: All right. I thought that

3  was the case, but thank you.

4  　　　　THE COURT: Yeah. Thank you. Anything

5  else?

6  　　　　MR. NATHAN: No. Thanks.

7  　　　　THE COURT: All right. We're adjourned

8  until 10:35.

9  　　　　(Recess at 10:23 a.m., until 10:38 a.m.)

10  　　　　THE COURT: Looks like we have everybody

11  back. I actually had a jury trial one time when we took

12  a break and not everybody came back after. Very good.

13  When we left off, the Government had concluded its

14  questioning and now we're ready for the defendant, so

15  Mr. Nathan?

16  　　　　MR. NATHAN: Thank you, Your Honor. Good

17  morning. So I actually start every jury selection the

18  same way. Because you guys filled out the

19  questionnaires, obviously I know a lot about each one of

20  you, so it's only fair if I tell you a little about

21  me. As I said, my name is Christopher Nathan and I'm

22  actually originally from Miami, Florida, and then I

23  moved to Chicago for law school, and I worked there

24  until about 2013. And while I was in Chicago, I met my

25  wife who is from Iowa and moved to Iowa City

**72**

1  2013, as I said, and we've lived there ever since. We

2  have two little girls. The youngest is almost three and

3  the oldest is almost seven years old.

4  　　　　Okay. All right. I won't take up a lot of

5  your time because the judge and the prosecutor already

6  asked you some questions, so let's just get to it.

7  Raise your hand if you've ever read or watched the news

8  and seen or heard a quote and you thought to yourselves

9  whoa, I can't believe that that person said that. Now,

10  how many of you have then seen or heard the quoted

11  person then say something like it was taken out of

12  context or something to that effect? When you've seen

13  the quote and then heard the person say that it was

14  taken out of context, raise your hand if you continue to

15  judge the quote based sole -- based only on the words in

16  the quote without the context. Raise your hands if you

17  then judge the quote based on the entire context.

18  　　　　All right. Like I said, my wife and I live

19  in Iowa City. We have two small children and as a

20  result, sometimes we're out and about shopping or

21  whatever and we run into acquaintances or parents of

22  friends of our children and someone in the other couple

23  says something like hey, we should get together sometime

24  or let's have lunch or maybe our kids should have a play

25  date; something like that, and then later on my wife and

**73**

1  I are asking ourselves did -- did they really mean that

2  we should get together or did they really mean that we

3  should schedule a play date?

4  　　　　So let me ask you guys, and if I don't see

5  any hands raised or volunteers, I'll just pick on

6  somebody. How do you decide when you hear someone say

7  something if they mean it? Any volunteers?

8  Ms. Hawkins, can I bother you to hand the microphone to

9  Mr. Burdess? Thank you, sir. Haven't heard from you

10  yet so wanted to give you a chance to talk. You're

11  welcome.

12  　　　　I -- I don't want to tether you to my

13  example where, you know, you and your spouse are out and

14  someone tries to say that you should schedule some sort

15  of social event sometime, but generally speaking, how do

16  you try and decide if someone means what they say?

17  Tone?

18  　　　　THE JUROR: Tone, eye contact. Maybe they

19  were just trying to be polite in passing.

20  　　　　MR. NATHAN: So is it -- is it fair to say

21  -- and I don't want to put any words in your mouth, but

22  is it fair to say you look at more than just the words?

23  　　　　THE JUROR: Yeah.

24  　　　　MR. NATHAN: Thank you, sir. Thanks,

25  All right. So you guys are probably, by now that

---

**74**

1 this case involves threats against United States
2 Senator Joni Ernst; right? And the prosecutor and the
3 Court have already talked to you about her status as a
4 U.S. senator, so I want to talk about something related.
5 Like I said, I've got a seven -- excuse me -- almost
6 seven-year-old girl, which means that when she was
7 almost four, the Disney movie Frozen came out, and if
8 you have small children or grandchildren, you remember
9 that this Disney movie Frozen was very popular.
10       And there was one song in the movie called
11 Let It Go, which I won't sing because it's not a
12 pleasant sound, but let's say that I said something not
13 very nice after I had heard that song Let It Go for the
14 thousandth time. And I said something not nice about
15 the person who wrote that song, saying oh, I'm so tired
16 of listening to this song; if I ever see the person who
17 wrote this song, I'm gonna and then something not very
18 nice. Who thinks that I'm being serious? Raise your
19 hand if you believe that I meant that that not nice thing.
20 Raise your hand if you think I was just being glib or
21 frivolous.
22       Raise your hand again if you've ever
23 received in your email inbox and you just see the sender
24 and the subject line and it's something like from
25 Nigeria; I want to make you a multi-millionaire and for

---

**75**

1 some reason or another, you just click and see the body
2 of the email. No one's received that email? Oh, good.
3 Okay. So you guys have received a similar email to
4 that. Now who -- who thinks that that email is a real
5 offer to make you a multi-millionaire? Any hands? Now,
6 when you, of course, determined that that email was not
7 a sincere offer to make you a multi-millionaire, how did
8 you determine that? And again, if I don't see any
9 hands, I'm gonna have Ms. Hawkins pass the microphone to
10 somebody who I have not yet heard from. Okay. Is it
11 Mr. Gondek?
12             THE JUROR: Yes.
13             MR. NATHAN: Thank you. Ms. Hawkins. How
14 did you figure out that that email is not a real offer?
15             THE JUROR: Well, I have never gotten one of
16 those emails, but it's common knowledge that there are
17 no princes that are willing to give Americans money.
18             MR. NATHAN: Yeah. And basically, that you
19 have no idea who the sender is; right?
20             THE JUROR: That's correct.
21             MR. NATHAN: Thank you, sir. Ms. Hawkins.
22 Let's change subjects slightly. Raise your hand -- and
23 if you raise your hand, I promise I won't take any
24 offense. I'm a defense lawyer; pretty tough, but raise
25 your hand if you think lawyers play too many word

---

**76**

1 games. Thank you. Thanks for being honest. Raise your
2 hands if you think that lawyers don't play enough word
3 games. Raise your hand if you just like playing that
4 word game.
5       All right. Let's say this were a different
6 kind of trial. Let's say this were a trial involving a
7 homicide and you were trying to determine whether or not
8 the defendant was guilty of that homicide. And let's
9 say that some of the evidence in that homicide
10 prosecution was that the defendant's DNA was found on
11 the victim's body. So in the middle of the trial, the
12 defense lawyer is cross-examining the DNA expert or the
13 lab technician, whoever is saying that your client's DNA
14 was found on the victim's body, and the defense lawyer
15 says something like well, isn't it -- isn't it possible
16 that there's an innocent explanation for how my client's
17 DNA wound up on the victim's body? Who here would sort
18 of either outwardly roll their eyes or inwardly roll
19 their eyes at that question and answer? And again, you
20 can be honest. Okay. So does everyone understand that
21 a question like that has a value or worth in determining
22 whether or not the defendant is guilty of that homicide?
23 Raise your hands if you agree. I see heads nodding, but
24 -- okay. Thank you.
25       This was sort of touched on earlier by the

---

**77**

1 judge and the prosecutor so I sort of apologize for
2 asking the question for a third time in a different way,
3 but there's something that the law refers to as the
4 trans-substantive doctrine. Trans-substantive doctrine.
5 And basically what it says is that defendants have the
6 same rights whether they're being investigated for a
7 homicide or whether they're being investigated for
8 jaywalking. So raise your hands if you think that it
9 makes sense to treat the rights of a defendant no matter
10 how serious the offense for which they're being
11 investigated. Please raise your hands. Does anybody
12 here think that makes no sense?
13       A few more questions and then I'll let you
14 go. If you've had -- if you've had a disagreement with
15 somebody at work -- and I understand that you're not
16 always able to resolve disagreements with coworkers, but
17 if you've had a disagreement, could someone please
18 volunteer and tell me how they communicated with that
19 person to address the disagreement. Any volunteers?
20 Ms. Lewis, I'm gonna give somebody else a chance, but
21 thank you for volunteering. I appreciate that. Ms. --
22 oh, is it Ms. Weiss?
23             THE JUROR: Yes.
24             MR. NATHAN: Thanks for volunteering.
25             THE JUROR: It's pringette to me as a

---

**78**

1  supervisor, so all you can do is set the party down;
2  listen to what they have to say; maybe show them what
3  the rules are or something like that so they know why
4  they're being called on and then hopefully act as a
5  mediator and try and get it shut down as quick as
6  possible.
7  　　　　MR. NATHAN:  And in your experience as a
8  supervisor, did you find that it was always more
9  effective to speak to somebody in person rather than
10  indirectly?
11  　　　　THE JUROR:  Always in person.
12  　　　　MR. NATHAN:  Does everyone agree that when
13  you're trying to resolve a disagreement -- let's say in
14  a jury deliberation room -- that it's better or
15  preferable to talk to that person directly rather than
16  pass them a note or something juvenile like that?
17  　　　　THE JUROR:  Definitely.
18  　　　　MR. NATHAN:  Anyone disagree with that?
19  Okay.  Thank you, Ms. Hawkins.  And thank you.  We're
20  gonna change subjects again, so thanks for indulging me.
21  Who's been to this federal courthouse before?  Anybody?
22  Okay.  You've already heard from Mr. Green, so
23  Ms. Hawkins, can I please have you pass the microphone
24  to Mr. Lahr, Lahr?
25  　　　　THE JUROR:  Lahr.

**79**

1  　　　　MR. NATHAN:  Lahr.  Thank you.
2  　　　　THE JUROR:  Thank you.  I work for an
3  insulation company and I helped build the building, so
4  that was the reason I was here.
5  　　　　MR. NATHAN:  Perfect.  That's sort of what
6  I'm getting at, so that worked out well for me.  When
7  you were building this courthouse, did you imagine that
8  it would be this clean and shiny?
9  　　　　THE JUROR:  It was -- it was pretty over the
10  top.  We knew that when we were building it.
11  　　　　MR. NATHAN:  Yeah; it's a really nice
12  courthouse, fair to say?
13  　　　　THE JUROR:  Yup.
14  　　　　MR. NATHAN:  It's a really magnificent
15  federal building; correct?
16  　　　　THE JUROR:  Correct.
17  　　　　MR. NATHAN:  Thank you, sir.  Ms. Hawkins.
18  As -- as my clients tell me when they walk into this
19  magnificent federal building, they usually say something
20  man, I must have really messed up to be in federal
21  court.  But more substantively, does anybody think that
22  the presumption of innocence is any less strong in
23  federal court than in state court?  Everyone agree that
24  it's the same presumption of innocence?  Anyone think
25  that the burden of proof is any lower in a federal

**80**

1  prosecutor than a state court prosecutor?  Seeing no
2  hands.  And of course what I'm getting at is when you
3  take away the trappings, does everyone understand that
4  there's nothing special about a prosecution brought by
5  the federal government as opposed to the state
6  government?  Anyone not understand that?  Okay.  Seeing
7  no hands, I'll move on.
8  　　　　We're gonna change subjects again.  Thank
9  you for continuing to indulge me.  As the Court
10  mentioned earlier, the Hawkeyes did not play very well
11  on Saturday.  Is there a Hawkeye fan here who I can pick
12  on?  Oh, no, not pick on; have a -- have a great
13  conversation with.  Okay.  Ms. Hawkins, can I please
14  have you pass the microphone to Ms. Fish, Mrs. Fish?
15  　　　　THE COURT:  Good try.
16  　　　　MR. NATHAN:  Okay.  As a Hawkeye fan --
17  　　　　THE JUROR:  Oh, I am.
18  　　　　MR. NATHAN:  I'm a Hurricane fan, so I hear
19  ya.
20  　　　　THE JUROR:  I won't hold that against you.
21  　　　　MR. NATHAN:  Thank you.  It's our first good
22  year in a very long time, so I am immoderately excited,
23  but we'll -- won't discuss that.  When you're watching
24  the Hawkeyes and the referee makes a call against the
25  Hawkeyes, do you expect Coach Ferentz to advocate for

**81**

1  his team?
2  　　　　THE JUROR:  Not to get himself in trouble or
3  anything.
4  　　　　MR. NATHAN:  No, right.  You don't want
5  Coach Ferentz to get ejected, but do you expect him to
6  talk to the referees and say how could you call --
7  　　　　THE JUROR:  Yeah, if he has a question about
8  the call.
9  　　　　MR. NATHAN:  Yeah.  So referees call pass
10  interference on one of the cornerbacks, do you expect
11  Coach Ferentz to say what were you watching?  How could
12  you call that?  Now, by the same token, let's say that
13  the Hawkeyes are playing my Northwestern Wildcats --
14  　　　　THE JUROR:  Uh-oh.
15  　　　　MR. NATHAN:  -- and again, thank you for
16  forgiving me, but let's say instead of the call going
17  against the Hawkeyes, the call goes against the Wildcats
18  and Coach Fitzgerald for Northwestern then advocates for
19  his team.  Would you hold that against Coach Fitzgerald?
20  　　　　THE JUROR:  No.
21  　　　　MR. NATHAN:  Thank you, Ms. Hawkins.  And
22  again, what I'm getting at is would anybody in this
23  courtroom hold it against a defense lawyer for zealously
24  advocating for his client?  Would anyone here hold it
25  against a defense lawyer if the defense lawyer asks some

82

1  questions and the judge sustains objections to those
2  questions?  Would anyone hold it against the zealous
3  defense lawyer?  Thank you.
4          Thank you, Your Honor.  I'm done.
5          THE COURT:  Thank you.  Well, ladies and
6  gentlemen, that concludes the portion of the jury
7  selection I spoke about when we're gonna be asking
8  questions.  You'll be happy to know that all questions
9  are done at this point and so now we're gonna hit the
10 point of this process where the parties are going to
11 exercise those peremptory strikes I told you about.  So
12 Ms. Hawkins will work with the parties passing the sheet
13 back and forth between them for them to exercise those
14 strikes.  Sometimes that takes a little bit of time, so
15 during this time period just so you're not bored, I try
16 to entertain you.  I don't sing and I don't dance.
17 There is the Eighth Amendment to the United States
18 Constitution that prohibits cruel and unusual punishment
19 and if I sang or danced, it would qualify.
20         No; what I can try to do is tell you a
21 little bit more about this courthouse.  Now, we have an
22 expert actually in this jury pool that knows more about
23 it than I do, but this courthouse was built back in 2000
24 -- completed back in 2012.  We -- we came in and
25 occupied it for the first time on November 6, 2012, and

83

1  it was built after the old federal courthouse that's up
2  the river was seriously damaged in the 2008 flood.
3          We, the Northern District of Iowa, had been
4  on the list for receiving a new courthouse for decades
5  because we had outgrown the old courthouse.  We had
6  federal judges in private spaces in various locations.
7  The bankruptcy court was actually located in a whole
8  different building, private building, and so we had
9  outgrown that building a long time ago, but Congress
10 isn't always very good about coming up with funding, so
11 we were on the list.
12         It's kind of like the Soviet five year plan,
13 you know.  It kept getting pushed back and pushed back
14 and pushed back until the flood happened.  And then when
15 the flood happened, Congress put us at the top of the
16 list and actually passed a law that enacted -- that
17 provided funding for the new courthouse.  And so we had
18 this courthouse built at a cost of about $182,000,000.
19 It has about 300,000 square feet to it.  The old
20 courthouse was built back in 1933 at a cost of a little
21 bit over a million-and-a-half dollars, so times change.
22         The Oklahoma City bombing was a contributing
23 factor to that.  There's more steel as our juror
24 probably knows about this in this building than -- I
25 can't -- I'm going to get corrected later on this building

84

1  down, but there's a lot of steel in it; I can guarantee
2  that.  And so it is LED gold certificate, meaning it's
3  highly environmentally good for the economy -- or for
4  the environment.  It actually came in on time and under
5  budget, which is rare in federal buildings.
6          We have nine federal agencies that have
7  offices here in this building.  All of the judges are
8  now located in this building.  We all have chambers up
9  on the eighth floor.  There are six -- I'm sorry --
10 five courtrooms.  There is a library -- an
11 Eighth Circuit library that's in the space that if we
12 needed to at some point we could turn into another
13 courtroom up on the sixth floor.  And so it -- it does
14 actually meet our needs now.
15         When we were in between courthouses after
16 the flood, we couldn't go back to our old courthouse.
17 This wasn't build yet.  We were actually out on C Street
18 way south of town off of Highway 30, and our
19 government requires you build federal courthouses
20 downtown in the central quarter of the cities to help
21 sustain the core, and so there was never a plan to have
22 it out -- permanently out at C Street, but we were
23 temporarily out there.
24         We moved in; within 48 hours after the
25 flood, we were back in business.  We were in an old

85

1  Telecom building out there on a complex and our entire
2  courtroom was the -- we only had space for
3  one courtroom.  It was the former cafeteria and it was
4  not a whole lot bigger than the space you all are
5  sitting in right now.  When we selected a jury in there,
6  our tables were right against your tables and it was a
7  very cozy atmosphere, I can tell you that.
8          But we were in there for -- and everybody
9  was in there.  The -- you know, all the government
10 agencies; probation, U.S. Attorneys, the marshals and
11 everybody was located in that one building for a short
12 period of time for about a year.  I actually had an
13 office in a doublewide trailer out back behind the
14 building for almost eight months.  So we -- we got
15 through with FEMA's help for a period of time, and then
16 we expanded to another building on that same complex and
17 they actually built out at a cost of several million
18 dollars the building to serve as a temporary courthouse
19 for a few years until this building was built and we
20 could move into it.
21         You probably noticed when you came in the
22 atrium, there's that great big sculpture hanging down
23 from the top of it.  That actually has to do with jury
24 service.  The name of it is E Pluribus and the sculptor
25 actually was inspired to do that based on

**86**

1  his own jury service. And the way he thought about it
2  is, you know, jurors come in as separate people not
3  connected to each other. They're ultimately selected to
4  serve on a jury and so for a period of time, they come
5  together and they're all connected and then when they're
6  done with jury service, they leave and they all go out
7  and they're separate people again, and so that's the
8  purpose for the shape.
9         The images on there are silhouettes of
10 people that are employees of this courthouse that he
11 asked for volunteers to come and serve and be the
12 silhouette. I'm not on there, but there are people I
13 know on there. So that cost, I think, about $450,000,
14 and the federal government, in order to support the
15 arts, requires a certain percentage of all public
16 buildings be devoted toward public art and so we have
17 that sculpture and then we have a number of paintings
18 and some other works of art within this building.
19        If you ever get a chance to go to the old
20 courthouse, the old courthouse upstairs from us -- it's
21 about four blocks away -- was the federal courthouse for
22 a number of years and it was also the post office and
23 after the flood, the city had this land that this
24 building is on. We had that building and we traded
25 them, and so the city government took over the old

**87**

1  building and restored it and now uses it for city hall.
2         Ms. Hawkins, are we done?
3         THE CLERK: Yup.
4         THE COURT: I hadn't even told you about
5  that building yet. If you want to stick around, I'll
6  give a lecture afterwards.
7         Okay, Ms. Hawkins, if you could read off the
8  jurors. When she reads off the list of -- if your name
9  is read off, please stand.
10        THE CLERK: Andrew Burdess, Kendall Weiss,
11 Adam Kramer, Cathy Fish, Karla Frazier, Matthew Lahr,
12 Amanda Neumann-Birchard, Nathaniel Gull, Susan Aubrecht,
13 Aaron Mueller, Maggi Muhlhausen, Kimberly Merner, Sally
14 Nordstrom.
15        THE COURT: Thank you. Mr. Vavricek, is
16 this the jury you selected?
17        MR. VAVRICEK: Yes, Your Honor.
18        THE COURT: Mr. Nathan?
19        MR. NATHAN: Yes, Your Honor.
20        THE COURT: All right. Thank you. You may
21 be seated. Here's what we're gonna do now. We're going
22 to go ahead and excuse those jurors who were not
23 selected and those in the back of the courtroom; you did
24 serve a purpose. We -- we oftentimes -- this is one

**88**

1  to replace somebody up front, and so we really did need
2  to have all of you come in this morning and you served a
3  valuable service to us even though you weren't called
4  forward.
5         And for those who you've not selected,
6  again, don't take it personally. It doesn't mean you're
7  a good or bad person. It just means the lawyers have to
8  come up with some reason to narrow us down to 13 people.
9  And so I deeply appreciate on behalf of the
10 United States District Court for the Northern District
11 of Iowa all of your time and your close attention this
12 morning during voir dire. And so at this time, I'll
13 excuse all of those except those selected to serve as
14 jurors in this case.
15        (The prospective jurors left the
16        courtroom.)
17        THE COURT: All right. Please be seated.
18 Thank you again, ladies and gentlemen. What we're gonna
19 do now is Ms. Hawkins is going to come up with a chart.
20 It's gonna just show where you're going to sit in the
21 jury box. It's -- the trial is actually gonna take
22 place down in Courtroom No. 1 on the second floor
23 directly below us two floors, and so the layout there is
24 a little bit different. The box looks a little bit
25 different and so she'll have this chart and she will

**89**

1  have you kind of rearranged and seated in here just
2  initially so you have a sense of where you're gonna be
3  when you come in tomorrow morning.
4         As I mentioned, trial will start tomorrow
5  morning at 9 a.m. Right after we're done coming up with
6  this chart, Ms. Hawkins will take you back into the jury
7  room and show you kind of where -- the layout of the
8  jury room is very similar downstairs, so she'll kind of
9  show you where that is, where you will assemble; answer
10 any questions you have about the process. Again, we'll
11 have you come back at nine o'clock tomorrow morning, at
12 which time the judge will start off by providing jury
13 instructions to you; tells you what the law is in the
14 case that will apply to this case. Then the parties
15 will present opening statements. The Government will
16 put on evidence and the defense can or cannot put on
17 evidence if it wants to, and then ultimately, there will
18 be closing arguments and then the case will be yours,
19 and if all goes well, we'll get that all to you by
20 tomorrow.
21        I kid the deputy clerks, by the way, that
22 when they come up with these charts, I think they
23 intentionally try to figure out how many times they can
24 get you guys to move around in multiple places. I don't

**90**

1  Ms. Hawkins, are you done?
2       THE CLERK:  I think so.
3       THE COURT:  All right.
4       THE CLERK:  So I'm just gonna have -- well,
5  yeah; this is gonna be -- well, it's different because
6  then we have three rows.  We only have two here, so
7  that's why --
8       THE COURT:  Oh, yeah.
9       THE CLERK:  -- down there --
10      THE COURT:  And so it probably is not even a
11  benefit to even have them sit -- okay.
12      THE CLERK:  I don't think so.
13      THE COURT:  In the morning, will you have a
14  chart for them downstairs?
15      THE CLERK:  Yes; there will be one in the
16  jury room.
17      THE COURT:  Okay.  So they're gonna have a
18  chart for you in the morning that will help you, because
19  it is a different box and it wouldn't be productive to
20  even go through this sitting here.  So there will be
21  somebody from the Clerk of Court's office tomorrow
22  morning to meet with you and help you understand where
23  you're supposed to sit in what order in the courtroom.
24      All right.  And now, again, as during the
25  break, it's gonna be important that when you leave here

**91**

1  today, that you not make up your mind about this case.
2  Don't talk about it with -- among each other.  Don't
3  talk about it with anybody else.  Again, I have no idea
4  if this is ever gonna be on the news, but it may be
5  helpful if you have a loved one at home or partner to
6  have them monitor the newspaper, for example, and if
7  there is an article about this case, have them cut it
8  out and save it for you and you can read it when the
9  case is all over.
10      I'll guarantee you I've had trials where
11  we've had court -- or newspaper reporters blogging from
12  the back of the courtroom and they got it wrong, so
13  newspapers aren't terribly trustworthy.  Not that
14  they're intentionally doing it wrong, but it's hard for
15  them to understand.  You're gonna hear everything and
16  know everything you need to know when you're sitting as
17  jurors.  You're gonna hear it from the witness box and
18  there's nothing you're gonna gain from the news that's
19  gonna be helpful to you, and, frankly, it's probably
20  gonna be inaccurate in some way.
21      And so you don't want to pay attention to
22  the news.  I don't want you to do independent research.
23  Don't go on the internet.  Don't try to figure out what
24  Twitter is.  Don't research this case in any way.  We

**92**

1  neutral; have no interest in this case, no interest in
2  the outcome of the case and be completely unbiased and
3  be ready to hear the evidence and then ultimately make a
4  decision based on the evidence presented to you.
5       So with that, we'll go ahead and excuse you
6  at this time and we'll have Ms. Hawkins take you back
7  into the jury room.
8       (Jury out at 11:10 a.m.)
9       (In open court, outside the presence of
10  the jury.)
11      THE COURT:  All right.  Please be seated.
12  The record will reflect we're outside the presence of
13  the jury.  We've just finished with the jury selection.
14      Mr. Vavricek, any record you wish to be
15  made?
16      MR. VAVRICEK:  No, Your Honor.  Thank you.
17      THE COURT:  Mr. Nathan?
18      MR. NATHAN:  No, Your Honor.
19      THE COURT:  Thank you, counsel.  We'll see
20  you tomorrow -- or Judge Reade will see you tomorrow
21  morning at 9 a.m.  Court is adjourned.
22      (Proceedings concluded at 11:11 a.m.)

**93**

C E R T I F I C A T E

    I, Kay C. Carr, a Certified Shorthand Reporter of
the State of Iowa, do hereby certify that I acted as the
official court reporter at the proceedings in the
above-entitled matter at the time and place indicated.

    That I reported in shorthand all of the proceedings
had at the said time and place and that said shorthand
notes were reduced to print by means of a computer-aided
transcription device under my direction and supervision,
and that the foregoing typewritten pages are a full and
complete transcript of the shorthand notes so taken.

    I further certify that I am not related to or
employed by any of the parties to this proceeding, and
further that I am not a relative or employee of any
attorney of counsel employed by the parties hereto or
financially interested in the action.

    IN WITNESS WHEREOF, I have set my hand this 3rd day
of September, 2018.


    ___/s/  Kay C. Carr_____
    Kay C. Carr
    Certified Shorthand Reporter
    Registered Professional Reporter
    Cedar Rapids, Iowa

## $

**$182,000,000** [1] - 83:18
**$450,000** [1] - 86:13

## 1

**1** [2] - 10:23, 88:22
**10:17** [1] - 67:4
**10:19** [1] - 68:4
**10:23** [1] - 71:9
**10:35** [5] - 67:4, 68:3, 69:23, 71:8
**10:38** [1] - 71:9
**11:10** [1] - 92:8
**11:11** [1] - 92:22
**12** [4] - 19:3, 37:18, 68:12, 68:23
**13** [5] - 19:2, 19:9, 19:10, 19:15, 88:8
**140** [1] - 25:6
**15** [2] - 2:23, 70:14
**16** [3] - 25:14, 68:12, 68:23
**16th** [1] - 61:7
**17-CR-2065** [2] - 2:3, 13:7
**1933** [1] - 83:20
**1995** [1] - 11:14
**1998** [1] - 10:24

## 2

**20** [1] - 39:22
**2000** [1] - 82:23
**2002** [1] - 36:22
**2003** [1] - 11:15
**2008** [1] - 83:2
**2012** [2] - 82:24, 82:25
**2013** [1] - 71:24, 72:1
**2016** [1] - 38:18
**2017** [2] - 25:14, 61:7
**29** [6] - 3:4, 3:6, 19:2, 20:16, 27:13, 31:5

## 3

**30** [4] - 14:15, 14:17, 26:22, 84:18
**300,000** [1] - 83:19

## 4

**4** [1] - 12:25
**45** [3] - 3:10, 18:22, 18:23
**48** [1] - 84:24

## 6

**6** [1] - 82:25

## 8

**8:19** [1] - 13:2

## 9

**9** [4] - 22:3, 22:7, 89:5, 92:21
**94** [1] - 14:11
**9:06** [1] - 13:2

## A

**a.m** [11] - 13:2, 22:3, 22:7, 68:4, 71:9, 89:5, 92:8, 92:21, 92:22
**Aaron** [2] - 27:7, 87:13
**abide** [1] - 60:9
**ability** [1] - 28:8, 28:24, 36:18, 46:9, 47:2, 47:14, 53:12, 53:21, 64:11, 65:14, 66:21
**able** [18] - 18:13, 32:21, 33:8, 35:24, 39:13, 45:3, 48:11, 50:3, 56:12, 56:13, 57:3, 58:10, 63:8, 64:17, 66:8, 66:11, 68:17, 77:16
**absolute** [1] - 43:25, 58:7
**absolutely** [3] - 41:17, 41:20, 44:12
**abuse** [1] - 37:22
**accessed** [1] - 25:4
**according** [2] - 10:23, 11:12
**account** [5] - 25:9, 25:12, 45:8, 66:2, 66:3
**accounts** [1] - 25:13
**accurate** [2] - 14:18, 21:16
**accusation** [1] - 42:5
**accused** [3] - 16:16, 42:9, 43:21
**accuses** [1] - 58:24
**acquaintances** [1] - 72:21
**act** [2] - 36:1, 78:4
**action** [1] - 16:8
**actual** [1] - 55:6
**Adam** [1] - 87:11
**additionally** [1] - 7:15
**address** [5] - 3:18, 3:23, 4:1, 4:8, 77:19
**adjourn** [1] - 70:14
**adjourned** [2] - 71:7, 92:21
**administer** [1] - 20:5
**advance** [1] - 18:8
**advice** [1] - 16:3
**advocate** [1] - 80:25
**advocates** [1] - 81:18
**advocating** [1] - 81:24
**affect** [10] - 36:18, 50:7, 50:8, 53:21, 62:1, 62:12, 63:7, 64:11, 65:13, 66:20

**afford** [1] - 45:3
**affording** [2] - 42:23, 43:11
**afterwards** [1] - 87:6
**agencies** [2] - 84:6, 85:10
**agent** [2] - 26:15, 31:3
**Agent** [2] - 27:14, 49:13
**ago** [8] - 34:24, 34:25, 36:21, 37:16, 37:18, 38:17, 39:22, 83:9
**agree** [7] - 5:4, 48:9, 52:2, 55:19, 76:23, 78:12, 79:23
**agreed** [1] - 7:13
**ahead** [4] - 67:1, 68:2, 87:22, 92:5
**Ajay** [1] - 27:9
**Alexander** [1] - 27:9
**alien** [2] - 57:25, 60:1
**allegations** [2] - 45:15, 46:10
**alleged** [5] - 6:14, 47:12, 47:19, 58:22, 59:5
**allegedly** [1] - 6:21
**allow** [2] - 8:25, 13:14
**allows** [1] - 18:10
**almost** [6] - 24:12, 72:2, 72:3, 74:5, 74:7, 85:14
**alongside** [1] - 27:4
**alternate** [2] - 19:4, 39:21
**Amanda** [1] - 87:12
**amazing** [1] - 24:8
**Amendment** [3] - 43:17, 45:4, 82:17
**America** [6] - 2:2, 13:6, 23:16, 24:21, 26:6, 49:14
**Americans** [1] - 75:17
**Andrew** [1] - 87:10
**answer** [5] - 15:12, 35:22, 43:4, 76:19, 89:9
**answers** [3] - 20:3, 20:25, 69:14
**anti** [1] - 47:10
**anti-Joni** [1] - 47:10
**anticipate** [4] - 4:23, 5:6, 21:17, 21:21
**apologize** [2] - 49:25, 77:1
**Appeals** [1] - 14:24
**appear** [1] - 70:18
**appearance** [1] - 67:18
**applies** [1] - 43:21
**apply** [7] - 48:8, 50:1, 50:14, 57:1, 62:18, 64:12, 89:14
**appointed** [1] - 26:18
**appreciate** [8] - 7:24, 18:15, 49:16, 56:20, 57:8, 57:9, 77:21, 88:9
**approaching** [1] - 65:20
**approval** [1] - 61:18
**argument** [4] - 4:14, 29:2, 47:24, 68:25
**arguments** [2] - 21:22, 89:18

**arrested** [2] - 7:18, 43:20
**art** [2] - 86:16, 86:18
**article** [1] - 91:7
**arts** [1] - 86:15
**aside** [3] - 46:16, 61:20, 66:8
**assemble** [2] - 67:5, 89:9
**assess** [3] - 33:3, 43:14, 58:8
**assessing** [1] - 49:6
**assessment** [1] - 18:11
**Assistant** [2] - 2:5, 2:7
**assume** [1] - 62:8
**assure** [1] - 36:5
**atmosphere** [1] - 85:7
**atrium** [1] - 85:22
**attention** [3] - 38:9, 52:20, 52:22, 88:11, 91:21
**attorney** [2] - 26:13, 27:23
**Attorney** [4] - 2:6, 26:17, 31:14, 31:18
**Attorney's** [1] - 26:14
**attorneys** [2] - 13:22, 26:25
**Attorneys** [1] - 85:10
**attribute** [2] - 38:8, 39:10
**attributes** [2] - 48:4, 48:5
**attribution** [1] - 10:2
**Aubrecht** [1] - 87:12
**audited** [1] - 33:15
**August** [2] - 25:14, 61:7
**avoiding** [1] - 70:15
**aware** [2] - 7:16, 7:25
**awkward** [2] - 70:5, 70:16

## B

**background** [3] - 18:11, 23:24, 49:4
**bad** [6] - 18:1, 53:11, 58:20, 61:20, 65:17, 88:7
**bankruptcy** [2] - 14:23, 83:7
**base** [1] - 66:10
**based** [8] - 4:16, 18:2, 66:21, 72:15, 72:17, 85:25, 92:4
**bed** [1] - 54:22
**beginning** [1] - 23:8
**behalf** [2] - 34:7, 88:9
**behind** [3] - 20:7, 36:11, 85:13
**beliefs** [1] - 62:17
**below** [1] - 88:23
**benefit** [4] - 42:23, 43:12, 45:4, 90:11
**Bennett** [1] - 15:1
**Berry** [1] - 27:1
**best** [3] - 4:18, 49:18, 51:9
**better** [3] - 61:17, 62:7, 78:14
**between** [5] - 54:5, 54:11, 55:1, 82:13, 84:15

**beyond** [25] - 40:18, 40:25, 41:2, 41:7, 41:11, 41:17, 42:16, 43:9, 55:20, 57:1, 57:14, 57:15, 58:2, 58:6, 58:23, 59:11, 59:17, 60:2, 60:6, 68:18, 69:4, 69:17, 69:18
**bias** [1] - 17:11
**big** [2] - 61:15, 85:22
**bigger** [1] - 85:4
**binding** [1] - 16:10
**Birchard** [1] - 87:12
**bit** [13] - 3:2, 13:18, 21:23, 24:25, 50:23, 62:21, 68:20, 71:20, 82:14, 82:21, 83:21, 88:24
**Black** [2] - 34:23, 39:2
**blazers** [1] - 15:23
**blocks** [1] - 86:21
**blogging** [2] - 8:23, 91:11
**blue** [1] - 15:23
**Bluffs** [2] - 7:17, 8:12
**board** [1] - 19:18
**body** [6] - 52:25, 75:1, 76:11, 76:14, 76:17
**bombing** [1] - 83:22
**border** [3] - 14:16, 26:23, 26:24
**bored** [1] - 82:15
**bother** [1] - 73:8
**bottom** [1] - 47:11
**Bowers** [1] - 27:9
**box** [10] - 3:4, 3:5, 10:23, 11:12, 17:2, 17:3, 88:21, 88:24, 90:19, 91:17
**boyfriend** [1] - 64:1
**Brad** [1] - 30:14
**Braun** [2] - 10:12, 31:3
**break** [6] - 67:2, 67:3, 67:6, 71:12, 90:25
**Brian** [1] - 11:11
**bring** [1] - 24:10
**bringing** [2] - 24:21, 34:14
**broken** [1] - 64:2
**brother** [1] - 32:5
**brought** [1] - 80:4
**budget** [1] - 84:5
**build** [3] - 79:3, 84:17, 84:19
**building** [23] - 79:3, 79:7, 79:10, 79:15, 79:19, 83:8, 83:9, 83:24, 83:25, 84:7, 84:8, 85:1, 85:11, 85:14, 85:16, 85:18, 85:19, 86:18, 86:24, 87:1, 87:5
**buildings** [2] - 84:5, 86:16
**built** [6] - 82:23, 83:1, 83:18, 83:20, 85:17, 85:19
**bullied** [2] - 63:18, 64:25
**bumper** [1] - 23:23
**bunch** [1] - 54:24
**burden** [9] - 6:10, 40:17, 40:20, 55:9, 55:16, 57:14, 60:5, 69:12, 79:25

**Burdess** [2] - 73:9, 87:10
**Bureau** [1] - 26:16
**business** [2] - 21:21, 84:25
**busy** [2] - 13:12, 49:15

**C**

**C.J** [1] - 13:8
**cafeteria** [1] - 85:3
**California** [4] - 13:24, 13:25, 24:13, 25:2
**campaign** [3] - 6:20, 46:21, 46:25
**campaigned** [1] - 47:6
**campaigns** [2] - 6:19, 46:20
**candor** [2] - 56:21, 57:9
**cannot** [2] - 15:17, 44:1, 89:16
**capacity** [2] - 31:10, 32:3
**care** [1] - 22:24
**carefully** [1] - 18:15
**Carr** [1] - 15:6
**cas** [1] - 46:6
**Case** [2] - 2:3, 13:7
**case** [149] - 2:19, 3:14, 4:17, 6:24, 7:8, 7:10, 7:17, 7:21, 7:22, 7:25, 8:4, 8:11, 8:12, 8:18, 8:21, 9:2, 13:12, 13:14, 13:22, 16:6, 16:10, 16:20, 16:25, 17:8, 17:9, 17:20, 17:21, 17:25, 18:3, 18:5, 19:3, 19:4, 21:17, 24:7, 24:18, 24:19, 24:20, 24:22, 24:23, 24:24, 24:25, 25:10, 25:17, 25:18, 25:20, 25:24, 25:25, 26:3, 26:7, 28:1, 28:3, 28:6, 28:7, 28:9, 29:3, 30:4, 30:7, 31:19, 31:21, 31:23, 32:1, 32:17, 32:18, 32:20, 33:11, 33:23, 34:5, 34:11, 35:1, 35:2, 35:3, 35:15, 35:24, 36:16, 36:21, 37:20, 37:22, 37:24, 38:19, 38:20, 39:22, 40:1, 40:17, 41:10, 41:23, 43:11, 43:15, 43:24, 45:3, 45:11, 45:14, 46:10, 46:14, 47:3, 47:13, 48:8, 49:1, 49:6, 49:19, 51:8, 51:14, 52:17, 53:13, 53:21, 55:17, 56:2, 56:5, 58:1, 58:9, 58:10, 58:18, 59:14, 60:17, 60:24, 61:14, 61:21, 61:23, 61:24, 62:13, 62:24, 63:6, 63:13, 64:16, 65:16, 65:17, 66:21, 67:6, 67:10, 67:20, 67:21, 71:3, 74:1, 88:14, 89:14, 89:18, 91:1, 91:7, 91:9, 91:24, 92:1, 92:2
**cases** [5] - 8:13, 8:23,

28:4, 40:16, 40:20
**Cathy** [1] - 87:11
**Cedar** [4] - 14:20, 26:14, 26:20, 26:25
**central** [1] - 84:20
**certain** [5] - 7:14, 60:2, 60:23, 69:7, 86:15
**Certainly** [1] - 70:7
**certificate** [1] - 84:2
**chain** [1] - 54:15
**chalkboard** [3] - 44:14, 44:15
**chambers** [1] - 84:8
**chance** [6] - 21:23, 43:14, 66:16, 73:10, 77:20, 86:19
**change** [4] - 75:22, 78:20, 80:8, 83:21
**characteristics** [1] - 47:21
**characters** [1] - 25:6
**charge** [1] - 36:17
**charged** [3] - 25:10, 41:24, 42:7
**charges** [2] - 25:16, 42:13
**charging** [2] - 41:25, 42:3
**chart** [6] - 20:1, 88:19, 88:25, 89:6, 90:14, 90:18
**charts** [1] - 89:22
**Chatham** [1] - 27:1
**Chicago** [2] - 71:23, 71:24
**chief** [1] - 31:16
**Chief** [1] - 14:25
**child** [2] - 32:5, 37:22, 40:8
**children** [6] - 28:17, 29:12, 29:15, 72:19, 72:22, 74:8
**choice** [1] - 19:9
**chooses** [1] - 44:1
**chosen** [1] - 45:10
**Chris** [2] - 2:8, 30:7
**Christopher** [2] - 30:11, 71:21
**Circuit** [2] - 14:23, 84:11
**circumstances** [1] - 22:20
**circumstantial** [5] - 54:4, 54:6, 54:11, 54:15, 55:1
**cities** [1] - 84:20
**citizen** [2] - 16:14, 23:23
**citizens** [3] - 16:9, 16:11, 23:18
**city** [3] - 86:23, 86:25, 87:1
**City** [8] - 14:24, 15:2, 26:21, 27:9, 34:8, 71:25, 72:19, 83:22
**civic** [1] - 49:16
**civil** [6] - 35:2, 35:3, 37:19, 38:19, 39:22, 40:20
**clarify** [1] - 9:3
**class** [2] - 44:7
**classes** [2] - 28:17, 44:8
**classroom** [1] - 66:5
**Clayton** [3] - 31:14, 31:16,

31:17
**clean** [1] - 79:8
**clear** [3] - 3:3, 40:24, 56:25
**clerk** [2] - 15:14, 15:21
**CLERK** [10] - 20:6, 20:11, 45:24, 87:3, 87:10, 90:2, 90:4, 90:9, 90:12, 90:15
**Clerk** [1] - 90:21
**clerk's** [1] - 11:24
**clerks** [1] - 89:21
**click** [1] - 75:1
**client** [1] - 81:24
**client's** [2] - 76:13, 76:16
**clients** [1] - 79:18
**close** [10] - 5:25, 21:21, 32:4, 32:6, 32:15, 63:18, 64:10, 64:22, 88:11
**closing** [1] - 89:18
**coach** [1] - 36:17
**Coach** [5] - 80:25, 81:5, 81:11, 81:18, 81:19
**Cole** [1] - 27:2
**combined** [2] - 10:7, 10:10
**comfortable** [4] - 58:15, 58:18, 63:25, 64:20
**coming** [6] - 16:9, 16:18, 18:8, 20:20, 83:10, 89:5
**common** [8] - 16:24, 41:7, 42:21, 51:10, 51:12, 53:19, 54:18, 75:16
**communicated** [3] - 6:17, 27:25, 77:18
**communication** [1] - 28:6
**communications** [1] - 25:11
**community** [3] - 16:18, 23:10, 23:14
**company** [2] - 25:1, 79:3
**comparing** [1] - 52:5
**completed** [1] - 82:24
**completely** [6] - 3:19, 14:18, 22:12, 58:7, 67:9, 92:2
**completing** [1] - 5:6
**complex** [2] - 85:1, 85:16
**concept** [1] - 44:9
**concern** [1] - 46:8
**concerns** [1] - 47:17
**conclude** [1] - 43:8
**concluded** [3] - 17:5, 71:13, 92:22
**concludes** [1] - 82:6
**conclusion** [4] - 44:4, 44:22, 54:16, 67:20
**conduct** [2] - 3:8, 3:10
**conference** [1] - 2:4
**conferences** [1] - 24:8
**confession** [1] - 55:7
**confident** [1] - 69:14
**confirmed** [1] - 26:19
**confuse** [1] - 7:20

confused [2] - 8:19, 69:6
Congress [3] - 61:19, 83:9, 83:15
connected [2] - 86:3, 86:5
connection [2] - 46:22, 46:23
connections [2] - 5:24, 46:16
consent [4] - 2:10, 2:17, 2:23, 13:13
consider [3] - 32:6, 44:2, 45:5
consistent [2] - 33:6, 52:8
Constitution [3] - 16:15, 43:18, 82:18
constitutional [2] - 43:25, 44:5
contact [4] - 46:13, 53:1, 67:24, 73:18
context [4] - 72:12, 72:14, 72:16, 72:17
continue [1] - 72:14
continuing [1] - 80:9
contradictory [1] - 68:15
contributed [4] - 9:14, 46:20, 46:24, 47:7
contributing [1] - 83:22
controlled [1] - 11:15
conversation [4] - 4:9, 46:5, 70:6, 80:13
convict [2] - 37:11, 41:20
convicted [1] - 36:18
convictions [2] - 10:22, 11:14
convincing [1] - 40:24
core [1] - 84:21
corner [1] - 29:19
cornerbacks [1] - 81:10
correct [7] - 10:25, 11:1, 11:16, 11:17, 75:20, 79:15, 79:16
correctional [1] - 31:10
correctly [1] - 46:25
cost [4] - 83:18, 83:20, 85:17, 86:13
Council [2] - 7:17, 8:12
counsel [10] - 3:2, 3:9, 4:15, 8:25, 10:1, 10:19, 26:10, 27:4, 92:19
count [1] - 63:15
counterpart [1] - 15:2
counties [1] - 14:18
country [3] - 23:21, 55:18, 63:11
County [5] - 31:14, 31:16, 31:17, 34:23, 39:2
county [2] - 14:10, 46:2
couple [3] - 7:12, 18:15, 72:22
course [5] - 5:8, 30:22, 31:7, 75:6, 80:2
COURT [144] - 2:1, 2:16, 2:22, 3:25, 4:23, 5:3, 5:5, 5:16, 5:22, 7:3, 7:24, 8:2,

8:14, 9:5, 9:17, 9:20, 9:23, 9:25, 10:18, 11:2, 11:5, 11:10, 11:18, 11:22, 12:4, 12:7, 12:11, 12:14, 12:18, 12:22, 12:24, 13:4, 20:12, 27:13, 27:21, 28:1, 28:5, 28:11, 28:14, 28:18, 28:21, 29:1, 29:6, 29:11, 29:17, 29:21, 29:23, 30:2, 30:6, 30:15, 31:15, 31:21, 32:2, 33:22, 34:1, 34:4, 34:9, 34:13, 34:24, 35:1, 35:4, 35:7, 35:9, 35:12, 35:14, 35:23, 36:1, 36:4, 36:9, 36:13, 36:20, 36:23, 37:1, 37:4, 37:12, 37:16, 37:19, 37:23, 38:1, 38:3, 38:6, 38:12, 38:17, 38:19, 38:21, 38:23, 38:25, 39:3, 39:6, 39:9, 39:15, 39:20, 39:23, 40:1, 40:3, 45:25, 46:4, 46:7, 46:19, 47:1, 47:5, 56:3, 57:12, 58:14, 58:17, 59:1, 59:7, 59:17, 59:20, 60:5, 60:9, 60:12, 60:18, 60:20, 63:1, 65:2, 67:1, 68:7, 68:21, 69:1, 69:22, 70:2, 70:7, 70:13, 70:21, 70:23, 71:4, 71:7, 71:10, 80:15, 82:5, 87:4, 87:15, 87:18, 87:20, 88:17, 90:3, 90:8, 90:10, 90:13, 90:17, 92:11, 92:17, 92:19
Court [13] - 2:1, 3:23, 7:11, 13:5, 13:6, 13:10, 14:21, 14:24, 15:1, 74:3, 80:9, 88:10, 92:21
court [23] - 2:13, 3:6, 3:13, 13:18, 14:5, 14:10, 14:21, 14:25, 15:6, 15:20, 15:22, 21:11, 36:21, 38:25, 39:1, 68:5, 79:21, 79:23, 80:1, 83:7, 91:11, 92:9
Court's [2] - 7:6, 90:21
court's [1] - 2:23
courthouse [19] - 14:20, 21:24, 78:21, 79:7, 79:12, 82:21, 82:23, 83:1, 83:4, 83:5, 83:17, 83:18, 83:20, 84:16, 85:18, 86:10, 86:20, 86:21
courthouses [4] - 14:10, 14:19, 84:15, 84:19
courtroom [22] - 3:8, 3:17, 8:24, 14:3, 15:5, 15:7, 15:14, 16:5, 20:14, 20:20, 23:5, 66:11, 67:5, 81:23, 84:13, 85:2, 85:3, 87:23, 88:16, 90:23, 91:12
Courtroom [2] - 12:25, 88:22
courtrooms [1] - 84:10
courts [2] - 14:9, 14:10
cousins [1] - 40:12

cover [4] - 6:6, 6:10, 6:13, 9:6
covering [1] - 5:23
coworkers [1] - 77:16
cozy [1] - 85:7
create [1] - 25:6
credibility [1] - 33:4
credible [1] - 33:1
credit [1] - 32:23
crime [3] - 16:16, 42:10, 43:22
criminal [13] - 10:21, 31:21, 31:22, 35:1, 35:15, 37:19, 37:21, 38:19, 38:20, 40:16, 40:17, 55:17
crops [1] - 33:16
cross [5] - 16:18, 23:10, 23:11, 23:14, 76:12
cross-examining [1] - 76:12
cross-section [4] - 16:18, 23:10, 23:11, 23:14
cruel [1] - 82:18
current [2] - 6:3, 21:19
custody [2] - 6:9, 40:8
cut [1] - 91:7
cyber [2] - 64:25, 65:7

# D

Dakota [1] - 26:23
damaged [1] - 83:2
damages [1] - 35:5
Dan [2] - 27:1, 27:7
dance [1] - 82:16
danced [1] - 82:19
date [2] - 72:25, 73:3
day-and-a-half [1] - 4:18
days [6] - 14:1, 14:3, 15:24, 18:15, 22:16, 65:19
deal [1] - 52:9
dealing [1] - 3:18
Debban [2] - 10:14, 31:4
decades [1] - 83:4
decide [10] - 16:19, 17:6, 19:3, 29:2, 48:1, 51:14, 58:19, 64:12, 73:6, 73:16
deciding [1] - 29:4
decision [15] - 16:6, 16:10, 16:12, 16:17, 17:4, 39:13, 40:1, 50:20, 51:18, 52:13, 55:12, 62:1, 62:13, 66:10, 92:4
Deegan [1] - 26:18
deeply [1] - 88:9
defendant [13] - 2:6, 24:22, 25:10, 25:15, 30:7, 31:23, 55:11, 55:14, 61:10, 71:14, 76:8, 76:22, 77:9
DEFENDANT [2] - 2:15, 2:21
defendant's [5] - 2:10, 7:14, 9:6, 57:17, 76:10

defendants [1] - 77:5
Defender [1] - 2:8
defense [17] - 3:15, 3:20, 5:18, 5:19, 7:10, 10:19, 30:12, 68:22, 69:23, 75:24, 76:12, 76:14, 81:23, 81:25, 82:3, 89:16
define [1] - 41:4
defined [1] - 69:5
definitely [1] - 78:17
degree [1] - 18:12
deliberate [4] - 5:9, 21:23, 22:7, 22:10
deliberated [2] - 21:25, 22:1
deliberating [1] - 5:10
deliberation [2] - 43:7, 44:4, 78:14
deliberations [5] - 5:7, 5:12, 22:3, 43:13
delightful [1] - 29:16
democracy [2] - 16:8
denied [1] - 69:18
deny [1] - 69:1
Department [2] - 53:23, 53:25
deputy [3] - 3:16, 15:14, 89:21
describe [1] - 13:19
describing [1] - 14:8
description [3] - 13:18, 48:17, 59:9
deserve [1] - 62:4
details [1] - 64:21
determine [6] - 18:7, 22:12, 30:25, 46:15, 75:8, 76:7
determined [2] - 17:7, 75:6
determining [3] - 59:2, 59:4, 76:21
devoted [1] - 86:16
Dierks [23] - 2:2, 2:12, 6:14, 10:11, 10:12, 13:7, 24:21, 24:23, 26:6, 30:12, 30:16, 31:2, 41:23, 42:2, 42:12, 42:17, 42:23, 43:3, 43:11, 43:24, 45:4, 45:15
DIERKS [2] - 2:15, 2:21
difference [4] - 17:10, 54:5, 54:11, 54:25
different [13] - 8:13, 8:18, 40:25, 56:8, 62:16, 62:17, 76:5, 77:2, 83:8, 88:24, 88:25, 90:5, 90:19
difficult [10] - 15:7, 29:3, 29:13, 30:3, 31:18, 32:16, 46:13, 50:9, 50:10, 60:15
difficulty [12] - 6:23, 33:10, 43:11, 43:15, 45:12, 46:17, 48:18, 50:19, 57:7, 57:21, 60:13
dire [14] - 3:8, 3:10, 4:3, 4:5, 5:23, 9:7, 9:9, 17:16,

17:17, 69:9, 69:10, 69:24, 70:20, 88:12

**direct** [6] - 54:4, 54:6, 54:11, 54:13, 54:21, 55:1

**directed** [1] - 20:16

**directly** [2] - 78:15, 88:23

**disagree** [2] - 63:12, 78:18

**disagreement** [4] - 77:14, 77:17, 77:19, 78:13

**disagreements** [1] - 77:16

**disagrees** [1] - 48:3

**discuss** [4] - 44:3, 66:25, 67:6, 80:23

**discussed** [1] - 12:5

**dislike** [1] - 61:20

**Disney** [2] - 74:7, 74:9

**dispute** [9] - 6:3, 6:4, 17:1, 17:6, 33:13, 33:14, 33:16, 33:17, 40:9

**disputes** [1] - 53:16

**distinctions** [1] - 35:19

**distinguish** [2] - 50:17, 64:18

**district** [4] - 2:13, 13:10, 14:21, 14:25

**District** [10] - 7:18, 13:5, 14:14, 14:21, 15:1, 26:22, 83:3, 88:10

**districts** [1] - 14:11

**divorce** [2] - 6:8, 40:8

**Dixon** [4] - 12:6, 12:8, 12:9

**DNA** [4] - 76:10, 76:12, 76:13, 76:17

**doctor** [2] - 17:22, 17:23

**doctrine** [2] - 77:4

**document** [1] - 41:25

**Document** [1] - 2:23

**documentation** [2] - 10:24, 11:13

**Dodge** [2] - 36:15, 52:17

**dog** [1] - 17:10

**Dolan** [6] - 10:13, 31:4

**dollars** [2] - 83:21, 85:18

**domestic** [1] - 35:6

**done** [21] - 3:9, 4:25, 5:10, 14:6, 18:21, 19:1, 19:19, 19:24, 21:14, 34:18, 50:11, 66:25, 70:9, 70:24, 71:1, 82:4, 82:9, 86:6, 87:2, 89:5, 90:1

**doublewide** [1] - 85:13

**doubt** [39] - 40:19, 41:1, 41:2, 41:4, 41:8, 41:11, 41:17, 41:18, 41:21, 42:16, 43:9, 55:17, 55:20, 55:23, 55:24, 56:6, 56:11, 56:12, 56:15, 57:2, 57:14, 57:16, 57:19, 57:20, 58:2, 58:3, 58:6, 58:23, 59:11, 59:13, 59:18, 60:6, 60:8, 60:16, 68:18, 69:4, 69:17

**down** [27] - 4:5, 9:7, 10:10, 10:14, 14:17, 15:8,

19:2, 19:6, 19:8, 19:10, 21:24, 32:13, 34:18, 34:19, 38:14, 44:14, 57:25, 59:8, 70:4, 70:10, 78:1, 78:5, 84:1, 85:22, 88:8, 88:22, 90:9

**downstairs** [4] - 13:15, 14:2, 89:8, 90:14

**downtown** [1] - 84:20

**Drew** [1] - 27:2

**driving** [1] - 36:16

**drunk** [1] - 36:16

**Duax** [1] - 27:10

**duplication** [1] - 10:9

**during** [12] - 3:11, 4:2, 19:5, 20:2, 20:18, 23:1, 30:22, 31:7, 67:5, 82:15, 88:12, 90:24

**duties** [2] - 16:14, 23:18

**duty** [3] - 23:23, 31:25, 49:17

**E**

**easy** [1] - 69:5

**economy** [1] - 84:3

**educational** [1] - 66:5

**effect** [1] - 72:12

**effective** [1] - 78:9

**efforts** [2] - 47:7, 49:18

**eight** [1] - 85:14

**eighth** [1] - 84:9

**Eighth** [3] - 14:23, 82:17, 84:11

**either** [6] - 11:21, 30:20, 49:5, 53:11, 54:19, 76:18

**ejected** [1] - 81:5

**elected** [2] - 47:8

**element** [1] - 40:18

**elements** [1] - 60:23

**eligible** [3] - 11:4, 11:20, 12:12

**eliminated** [1] - 10:9

**elimination** [1] - 59:23

**email** [10] - 6:12, 6:17, 27:25, 74:23, 75:2, 75:3, 75:4, 75:6, 75:14

**emails** [1] - 75:16

**Emily** [1] - 27:6

**employed** [4] - 5:24, 5:25, 23:4

**employees** [1] - 86:10

**employer** [1] - 23:3

**enacted** [1] - 83:16

**end** [5] - 4:5, 5:10, 19:15, 34:21, 70:6

**ended** [2] - 64:25, 65:4

**enforcement** [17] - 5:24, 6:1, 6:2, 31:10, 31:16, 32:3, 32:7, 32:15, 32:19, 32:21, 32:23, 32:24, 32:25, 33:1, 33:8, 53:9, 53:11

**engage** [1] - 67:13

**England** [2] - 16:23, 16:24

**English** [1] - 44:18

**entertain** [2] - 4:14, 82:16

**entire** [2] - 72:17, 85:1

**environment** [1] - 84:4

**environmentally** [1] - 84:3

**Ernst** [18] - 6:13, 6:15, 6:16, 6:21, 7:19, 9:12, 25:12, 45:16, 45:17, 46:11, 46:12, 46:17, 46:22, 47:7, 47:10, 47:13, 61:15, 74:2

**Ernst's** [1] - 46:20

**essentially** [1] - 68:24

**estimate** [4] - 4:18, 21:12, 21:13, 22:14

**estimated** [1] - 21:8

**event** [1] - 73:15

**everyday** [1] - 16:11

**evidence** [34] - 16:19, 21:22, 25:19, 37:10, 40:18, 40:21, 40:22, 40:23, 40:24, 41:12, 42:2, 42:5, 42:16, 42:20, 43:8, 43:14, 45:8, 45:9, 47:24, 48:15, 52:6, 52:12, 54:5, 54:6, 54:12, 54:21, 55:1, 58:12, 59:15, 76:9, 89:16, 89:17, 92:3, 92:4

**evolved** [2] - 16:21, 17:15

**examining** [1] - 76:12

**example** [6] - 17:22, 50:3, 54:17, 61:4, 73:13, 91:6

**except** [1] - 88:13

**excited** [1] - 80:22

**excuse** [8] - 4:13, 11:23, 24:15, 68:2, 74:5, 87:22, 88:13, 92:5

**excused** [2] - 11:23, 19:23, 20:17

**excuses** [5] - 4:11, 4:12, 21:8, 22:24, 24:11

**exercise** [4] - 5:17, 19:15, 82:11, 82:13

**exercised** [1] - 70:19

**exercising** [1] - 70:17

**expanded** [1] - 85:16

**expect** [9] - 49:18, 53:25, 54:2, 54:25, 55:13, 60:22, 80:25, 81:5, 81:10

**expectation** [1] - 48:19

**expected** [1] - 69:7

**experience** [8] - 34:9, 36:7, 37:5, 38:7, 52:15, 65:18, 65:20, 78:7

**experiences** [1] - 53:11

**expert** [3] - 65:24, 76:12, 82:22

**explain** [3] - 3:6, 29:9, 63:24

**explained** [2] - 3:16, 69:13

**explanation** [3] - 24:3, 24:15, 76:16

**exposure** [1] - 7:10

**extreme** [3] - 22:21, 23:25,

24:6

**eye** [2] - 53:1, 73:18

**eyes** [3] - 54:21, 76:18, 76:19

**F**

**face** [2] - 63:16

**face-to-face** [1] - 63:16

**Facebook** [1] - 65:18

**fact** [11] - 6:21, 32:14, 41:25, 42:9, 44:2, 46:15, 47:12, 59:4, 62:12, 64:10, 65:12

**factor** [1] - 83:23

**facts** [16] - 16:19, 17:13, 18:2, 46:15, 48:7, 48:10, 50:2, 50:14, 50:15, 50:16, 54:15, 58:11, 58:22, 63:9, 64:12, 64:17

**fair** [40] - 6:23, 16:18, 17:12, 17:19, 17:24, 18:4, 23:9, 23:11, 23:14, 28:8, 28:24, 29:13, 30:4, 30:25, 31:19, 31:23, 32:16, 46:9, 46:14, 47:3, 47:15, 47:18, 47:25, 48:15, 48:16, 48:23, 48:25, 52:3, 53:12, 53:21, 65:14, 66:18, 66:21, 67:17, 67:18, 71:20, 73:20, 73:22, 79:12, 91:25

**Fair** [1] - 35:23

**Fairchild** [1] - 27:10

**fairest** [1] - 17:6

**fairly** [1] - 48:15

**fairness** [1] - 53:14

**familiar** [1] - 69:8

**family** [7] - 5:25, 6:8, 32:4, 32:14, 40:7, 53:8, 63:17

**fan** [4] - 61:16, 80:11, 80:16, 80:18

**far** [1] - 15:7

**favor** [1] - 36:5

**FBI** [3] - 26:16, 31:3, 53:20

**fear** [1] - 44:19

**federal** [30] - 6:4, 14:5, 14:8, 14:9, 14:10, 14:11, 21:11, 22:6, 33:14, 33:18, 33:24, 39:1, 42:4, 53:17, 78:21, 79:15, 79:19, 79:20, 79:23, 79:25, 80:5, 83:1, 83:6, 84:5, 84:6, 84:18, 84:19, 86:14, 86:21

**Federal** [2] - 2:7, 26:16

**feelings** [1] - 61:20

**feet** [1] - 83:19

**fellow** [1] - 38:9

**felony** [4] - 10:22, 10:25, 11:11, 11:14

**felt** [2] - 39:14, 61:8

**FEMA's** [1] - 85:15

**Ferentz** [3] - 80:25, 81:5,

81:11
**few** [5] - 22:22, 27:16, 66:1, 77:13, 85:19
**Fifth** [2] - 43:17, 45:4
**fight** [1] - 17:10
**figure** [9] - 17:18, 48:23, 54:18, 58:21, 62:3, 67:7, 75:14, 89:23, 91:23
**file** [1] - 2:23
**fill** [1] - 44:15
**filled** [3] - 18:8, 53:3, 71:18
**filling** [1] - 18:16
**final** [1] - 48:20
**finally** [1] - 16:4
**financial** [1] - 23:6
**financially** [2] - 6:20, 46:21
**fine** [2] - 58:8, 60:14
**finished** [1] - 92:13
**firearm** [1] - 7:22
**firm** [1] - 68:16
**first** [16] - 2:9, 3:12, 7:1, 16:23, 18:18, 20:22, 21:6, 22:23, 25:23, 27:18, 28:22, 48:12, 49:15, 49:20, 80:21, 82:25
**fish** [2] - 80:14
**Fish** [1] - 87:11
**Fitzgerald** [2] - 81:18, 81:19
**five** [9] - 5:18, 5:19, 21:24, 21:25, 22:4, 22:5, 22:8, 83:12, 84:10
**flag** [1] - 23:22
**Flater** [6] - 36:11, 36:12, 36:13, 37:4, 52:15
**Fletcher** [1] - 27:10
**flip** [2] - 9:16, 55:22
**flood** [7] - 64:23, 83:2, 83:14, 83:15, 84:16, 84:25, 86:23
**floor** [4] - 13:15, 84:9, 84:13, 88:22
**floors** [1] - 88:23
**Florida** [1] - 71:22
**flying** [1] - 23:22
**focused** [1] - 3:6
**folks** [2] - 62:7, 65:19
**follow** [18] - 6:18, 8:25, 18:20, 32:9, 45:18, 45:21, 48:2, 48:9, 50:3, 57:3, 58:3, 58:10, 59:10, 62:4, 63:9, 66:4, 68:17, 69:16
**follow-up** [4] - 18:20, 32:9, 45:18, 45:21
**following** [3] - 55:3, 57:22, 61:12
**Forde** [1] - 27:10
**foreperson** [5] - 36:2, 36:24, 37:1, 38:4, 39:7
**foreperson's** [1] - 38:11
**forgiving** [1] - 81:16
**formally** [1] - 5:24

**former** [2] - 29:25, 85:3
**forms** [1] - 53:5
**Fort** [2] - 36:15, 52:17
**forth** [7] - 14:13, 19:18, 33:7, 66:16, 68:24, 70:25, 82:13
**forward** [2] - 25:21, 88:4
**four** [3] - 22:16, 74:7, 86:21
**fourth** [1] - 61:3
**Francisco** [1] - 25:2
**frankly** [1] - 91:19
**Frazier** [1] - 87:11
**free** [1] - 25:3
**freed** [1] - 21:19
**Freeman** [1] - 27:2
**French** [1] - 17:16
**Friday** [2] - 5:11, 22:7
**friend** [5] - 13:24, 32:6, 32:15, 63:18
**friendly** [1] - 67:15
**friends** [2] - 53:8, 72:22
**frivolous** [1] - 74:21
**front** [7] - 3:4, 3:12, 8:10, 15:6, 15:21, 58:13, 88:1
**Frozen** [2] - 74:7, 74:9
**full** [3] - 18:23, 43:11, 45:4
**funding** [2] - 83:10, 83:17

## G

**gain** [1] - 91:18
**game** [1] - 76:4
**games** [2] - 76:1, 76:3
**general** [1] - 32:11
**generally** [1] - 73:15
**gentleman** [3] - 26:10, 30:9, 34:20
**gentlemen** [2] - 82:6, 88:18
**girl** [1] - 74:6
**girls** [1] - 72:2
**given** [4] - 47:18, 59:9, 69:14, 69:16
**glib** [1] - 74:20
**gold** [1] - 84:2
**Gondek** [1] - 75:11
**gonna** [60] - 5:9, 6:6, 10:9, 10:14, 12:25, 13:19, 18:17, 18:18, 20:2, 20:23, 21:4, 21:6, 21:12, 21:18, 22:13, 22:17, 24:23, 29:3, 30:19, 34:17, 35:16, 35:17, 41:20, 43:23, 45:18, 49:9, 54:25, 55:2, 55:5, 55:13, 59:3, 61:24, 62:15, 64:21, 67:2, 67:3, 67:13, 67:23, 74:17, 75:9, 77:20, 78:20, 80:8, 82:7, 82:9, 87:21, 88:18, 88:20, 88:21, 89:2, 90:4, 90:5, 90:17, 90:25, 91:4, 91:15, 91:17, 91:18, 91:19, 91:20

**gosh** [2] - 29:8, 61:23
**Government** [20] - 5:17, 5:18, 7:6, 9:8, 9:13, 10:19, 40:17, 41:10, 42:15, 55:6, 56:10, 57:15, 58:24, 60:23, 61:2, 68:24, 69:17, 71:13, 89:15
**government** [11] - 6:4, 16:11, 33:15, 33:18, 53:17, 80:5, 80:6, 84:19, 85:9, 86:14, 86:25
**Government's** [5] - 10:23, 11:13, 60:5, 68:23, 69:2
**grand** [4] - 40:4, 41:25, 42:1, 43:7
**grandchildren** [1] - 74:8
**granting** [1] - 22:23
**grassy** [1] - 59:24
**great** [4] - 55:17, 66:14, 80:12, 85:22
**greater** [1] - 24:3
**green** [5] - 59:8, 68:11, 69:15, 78:22
**ground** [1] - 54:23
**group** [4] - 9:15, 18:18, 19:2, 36:6
**Guam** [1] - 14:12
**guarantee** [2] - 84:1, 91:10
**guarantees** [2] - 16:16, 43:18
**guard** [1] - 31:11
**guess** [7] - 39:14, 42:18, 51:4, 51:7, 58:13, 63:22, 64:16
**guessing** [1] - 37:17
**guidance** [1] - 38:11
**guilt** [3] - 42:16, 43:8, 58:16
**guilty** [31] - 25:15, 35:13, 35:15, 36:19, 37:10, 38:2, 39:5, 41:12, 41:21, 42:3, 42:18, 43:3, 44:13, 44:23, 45:1, 55:11, 55:21, 55:25, 56:15, 57:17, 57:18, 57:21, 61:11, 61:24, 76:8, 76:22
**Gull** [1] - 87:12
**gun** [1] - 8:17
**guys** [4] - 71:18, 73:4, 75:3, 89:24

## H

**half** [4] - 4:18, 18:13, 21:10, 83:21
**hall** [1] - 87:1
**hallway** [1] - 67:11
**hand** [44] - 8:5, 15:13, 20:7, 24:1, 24:7, 24:12, 24:15, 26:3, 27:16, 29:18, 30:17, 31:8, 31:13, 32:7, 32:17, 33:11, 34:16, 34:19, 36:10, 38:13, 40:10, 41:14,

45:12, 45:17, 45:19, 47:10, 47:20, 48:19, 49:7, 51:25, 55:11, 65:22, 70:23, 70:24, 72:7, 72:14, 73:8, 74:19, 74:20, 74:22, 75:22, 75:23, 76:3
**handle** [1] - 9:9, 32:1
**hands** [35] - 8:3, 18:19, 24:5, 24:7, 26:4, 27:17, 30:18, 31:8, 32:8, 32:12, 32:17, 33:12, 34:17, 34:19, 40:5, 40:14, 41:22, 43:16, 45:13, 47:20, 49:8, 61:16, 65:25, 66:1, 72:16, 73:5, 75:5, 75:9, 75:25, 76:2, 76:23, 77:8, 77:11, 80:2, 80:7
**hang** [1] - 63:1
**hanging** [1] - 85:22
**Hansen** [1] - 30:14
**happenings** [1] - 66:6
**happy** [1] - 82:8
**harassment** [1] - 64:2
**hard** [2] - 22:14, 91:14
**hardship** [10] - 4:11, 4:12, 4:13, 21:8, 22:21, 22:24, 23:6, 23:25, 24:6, 24:11
**harms** [1] - 23:21
**Harvey** [1] - 60:1
**Hawk** [2] - 34:23, 39:2
**Hawkeye** [2] - 80:11, 80:16
**Hawkeyes** [6] - 67:22, 80:10, 80:24, 80:25, 81:13, 81:17
**Hawkins** [26] - 15:14, 19:17, 19:21, 19:25, 20:5, 20:13, 34:19, 39:16, 70:24, 73:8, 73:25, 75:9, 75:13, 75:21, 78:19, 78:23, 79:17, 80:13, 81:21, 82:12, 87:2, 87:7, 88:19, 89:6, 90:1, 92:6
**Hayden** [1] - 27:11
**head** [1] - 21:3
**headquartered** [1] - 25:2
**heads** [3] - 62:19, 62:20, 76:23
**hear** [15] - 15:10, 15:18, 30:22, 43:19, 48:12, 52:6, 61:19, 66:11, 70:10, 73:6, 80:18, 91:15, 91:17, 92:3
**heard** [16] - 6:14, 25:24, 41:23, 45:14, 47:23, 47:24, 65:22, 65:23, 72:8, 72:10, 72:13, 73:9, 73:25, 74:13, 75:10, 78:22
**hearing** [3] - 2:17, 40:7, 66:1
**Heather** [3] - 10:13, 30:13, 31:3
**Heaven** [1] - 27:18
**Heavens** [8] - 27:19, 27:20, 27:21, 31:13, 46:23,

54:7, 62:8
**held** [1] - 34:8
**help** [8] - 15:25, 18:7, 33:3, 52:13, 84:20, 85:15, 90:18, 90:22
**helped** [1] - 79:3
**helpful** [3] - 21:1, 91:5, 91:19
**hesitancy** [1] - 50:20
**hesitant** [1] - 29:7
**high** [1] - 41:9
**higher** [1] - 41:1
**highest** [1] - 40:19
**highlight** [1] - 7:23
**highly** [1] - 84:3
**Highway** [4] - 14:15, 14:17, 26:22, 84:18
**Hilton** [3] - 13:7, 24:21, 24:23
**himself** [1] - 81:2
**histories** [1] - 10:21
**hit** [1] - 82:9
**hold** [12] - 15:13, 18:3, 18:4, 32:24, 44:1, 45:5, 69:17, 80:20, 81:19, 81:23, 81:24, 82:2
**holiday** [2] - 22:6, 23:1
**home** [3] - 7:14, 22:2, 91:5
**homicide** [5] - 76:7, 76:8, 76:9, 76:22, 77:7
**honest** [3] - 51:8, 76:1, 76:20
**honestly** [1] - 58:12
**honesty** [1] - 57:9
**Honor** [41] - 2:21, 3:23, 5:4, 5:14, 5:20, 7:2, 7:23, 8:6, 8:7, 8:12, 9:4, 9:10, 9:13, 9:19, 9:24, 10:17, 11:8, 11:9, 11:17, 12:3, 12:12, 12:17, 12:21, 12:23, 26:12, 49:11, 60:21, 66:24, 68:13, 68:25, 69:20, 69:25, 70:9, 70:12, 70:19, 71:16, 82:4, 87:17, 87:19, 92:16, 92:18
**Honor's** [1] - 9:11
**hope** [1] - 64:17
**hopefully** [2] - 64:13, 78:4
**horrible** [1] - 67:22
**hour** [1] - 23:4
**hours** [1] - 84:24
**http://www.twitter.com** [1] - 25:5
**Hurricane** [1] - 80:18
**husband's** [1] - 46:2

**I**

**idea** [9] - 5:7, 17:18, 22:9, 24:25, 25:20, 25:22, 26:1, 75:19, 91:3
**ideas** [1] - 50:25
**identify** [1] - 8:16

**identity** [3] - 33:24, 34:1, 47:18
**Illinois** [1] - 26:24
**images** [1] - 86:9
**imagine** [2] - 79:7, 83:25
**immoderately** [1] - 80:22
**impact** [2] - 28:8, 28:24, 34:7
**impacts** [1] - 37:9
**impartial** [24] - 6:23, 17:12, 17:19, 17:24, 18:4, 28:8, 28:24, 29:14, 30:4, 30:25, 31:19, 31:23, 32:16, 46:9, 46:14, 47:3, 47:15, 47:18, 47:25, 48:16, 48:23, 48:25, 53:13, 65:14
**impediment** [1] - 44:18
**impersonating** [1] - 59:25
**important** [17] - 16:4, 16:14, 23:13, 32:20, 33:8, 37:6, 38:8, 39:10, 45:2, 48:11, 48:22, 49:5, 61:6, 61:9, 67:16, 67:23, 90:25
**inaccurate** [1] - 91:20
**inbox** [1] - 74:23
**inclination** [1] - 50:7
**include** [1] - 5:23
**including** [4] - 14:12, 15:9, 20:7, 25:9
**inconvenient** [1] - 22:25
**independent** [2] - 56:18, 91:22
**indicated** [1] - 26:21
**indicates** [1] - 7:9
**indication** [1] - 70:11
**indictment** [4] - 6:10, 41:24, 42:1, 42:10
**indirectly** [1] - 78:10
**indulge** [1] - 80:9
**indulging** [1] - 78:20
**inference** [1] - 54:16
**influence** [4] - 34:10, 46:9, 47:2, 47:14
**inform** [1] - 8:13
**inherent** [1] - 16:22
**initial** [1] - 50:7
**Inman** [1] - 27:2
**innocence** [11] - 6:11, 42:14, 42:24, 43:1, 43:12, 44:10, 55:9, 55:24, 58:16, 79:22, 79:24
**innocent** [12] - 25:16, 42:12, 42:25, 43:3, 43:4, 43:5, 55:15, 56:7, 56:8, 59:15, 76:16
**inquire** [1] - 7:11
**inquiry** [1] - 7:7
**inspired** [1] - 85:25
**Instagram** [1] - 65:19
**instead** [1] - 81:16
**instruct** [4] - 33:2, 41:3, 55:14, 57:13
**instructed** [4] - 56:16, 61:10, 67:15, 68:1

**instruction** [9] - 50:4, 54:4, 55:3, 55:4, 57:22, 58:4, 58:5, 59:10, 68:18
**instructions** [3] - 61:12, 69:13, 89:13
**instructs** [2] - 55:2, 63:14
**insulation** [1] - 79:3
**integrity** [1] - 52:3
**intentionally** [3] - 22:23, 89:23, 91:14
**interaction** [1] - 67:16
**interest** [6] - 17:8, 17:11, 17:12, 48:1, 92:1
**interfere** [1] - 53:12
**interference** [1] - 81:10
**internet** [2] - 65:7, 91:23
**introduce** [5] - 3:7, 3:12, 15:4, 26:9, 30:8
**introduced** [1] - 3:15
**investigated** [3] - 77:6, 77:7, 77:11
**Investigation** [1] - 26:16
**involve** [3] - 13:21, 63:6, 65:17
**involved** [2] - 7:21, 64:16
**involvement** [2] - 28:7, 59:2
**involves** [6] - 45:14, 46:10, 61:15, 61:23, 63:13, 74:1
**involving** [2] - 50:21, 76:6
**inwardly** [1] - 76:18
**Iowa** [14] - 13:5, 14:5, 14:14, 24:12, 24:17, 26:15, 26:22, 36:16, 67:22, 71:25, 72:19, 83:3, 88:11
**IRS** [2] - 33:15, 53:19
**Irwin** [5] - 10:12, 26:15, 27:14, 31:2, 49:13
**Islands** [1] - 14:13
**issue** [4] - 4:15, 53:19, 53:20, 53:24
**items** [1] - 7:14

**J**

**Jack** [1] - 27:11
**Jacob** [3] - 10:13, 27:7, 31:4
**jail** [1] - 35:16
**Jamie** [1] - 27:9
**jaywalking** [1] - 77:8
**Jeffrey** [2] - 10:11, 31:2
**Jill** [3] - 15:14, 30:13, 45:23
**job** [6] - 15:7, 15:17, 15:24, 50:1, 50:13, 69:11
**Johnston** [1] - 30:13
**Joni** [7] - 6:15, 6:16, 45:16, 47:10, 47:13, 61:15, 74:2
**JoniErnst** [1] - 25:13
**Joseph** [6] - 2:2, 13:7,

24:21, 24:23, 26:6, 30:12
**JosephDierks** [1] - 25:12
**judge** [49] - 2:11, 2:13, 2:24, 3:17, 4:8, 13:9, 14:21, 14:22, 14:23, 14:25, 15:3, 26:21, 32:21, 32:25, 33:8, 47:22, 48:3, 48:4, 49:25, 50:13, 50:22, 53:15, 54:25, 55:2, 55:4, 55:8, 55:13, 56:10, 56:16, 56:24, 56:25, 57:4, 57:5, 57:13, 58:4, 60:10, 60:22, 61:1, 61:9, 61:14, 63:14, 64:13, 66:19, 72:5, 72:15, 72:17, 77:1, 82:1, 89:12
**Judge** [14] - 2:19, 13:10, 14:20, 14:21, 14:25, 15:1, 15:18, 15:19, 21:19, 27:6, 33:2, 41:3, 48:7, 92:20
**judge's** [1] - 59:10, 61:12
**judges** [10] - 14:24, 24:9, 24:13, 35:20, 48:6, 48:7, 48:10, 50:14, 83:6, 84:7
**judging** [1] - 58:16
**judgment** [2] - 49:21, 50:2
**jump** [1] - 57:12
**juries** [1] - 16:7
**Juror** [2] - 68:11, 68:12
**juror** [29] - 7:12, 8:8, 8:9, 17:19, 18:4, 20:5, 24:6, 28:9, 31:24, 34:10, 37:6, 37:7, 38:8, 39:10, 45:3, 48:5, 48:17, 48:25, 49:7, 50:23, 51:1, 51:6, 52:1, 52:17, 53:13, 53:21, 56:18, 58:9, 83:23
**JUROR** [135] - 27:20, 27:23, 28:3, 28:10, 28:13, 28:15, 28:20, 28:25, 29:5, 29:10, 29:15, 29:20, 29:22, 29:25, 30:5, 31:14, 31:20, 31:25, 33:20, 33:23, 34:3, 34:6, 34:12, 34:23, 34:25, 35:3, 35:6, 35:8, 35:11, 35:13, 35:21, 35:25, 36:3, 36:8, 36:12, 36:15, 36:22, 36:25, 37:3, 37:8, 37:15, 37:17, 37:21, 37:25, 38:2, 38:5, 38:9, 38:16, 38:18, 38:20, 38:22, 38:24, 39:2, 39:5, 39:8, 39:12, 39:19, 39:21, 39:25, 40:2, 46:2, 46:5, 46:18, 46:24, 47:4, 49:23, 50:5, 50:9, 50:16, 51:7, 51:12, 51:17, 51:21, 52:2, 52:10, 52:18, 52:25, 54:9, 54:13, 56:2, 56:5, 56:13, 56:18, 56:23, 57:5, 58:11, 58:15, 58:25, 59:6, 59:13, 59:19, 60:4, 60:7, 60:11, 60:15, 60:19, 62:10, 62:14, 62:22, 62:25, 63:3, 63:10, 63:20, 63:22, 64:1, 64:6, 64:8, 64:14, 64:24,

65:4, 65:8, 65:11, 65:15, 66:3, 66:13, 73:18, 73:23, 75:12, 75:15, 75:20, 77:23, 77:25, 78:11, 78:17, 78:25, 79:2, 79:9, 79:13, 79:16, 80:17, 80:20, 81:2, 81:7, 81:14, 81:20

**juror's** [1] - 4:13
**jurors** [46] - 4:10, 6:1, 6:9, 7:9, 7:20, 10:3, 10:20, 13:3, 14:2, 16:24, 17:7, 17:12, 17:18, 19:3, 19:6, 19:8, 19:19, 19:23, 20:8, 20:9, 20:14, 22:12, 23:10, 23:15, 24:17, 35:19, 36:6, 38:10, 44:1, 48:6, 58:19, 66:18, 67:2, 67:16, 68:3, 69:2, 69:4, 69:5, 69:8, 69:11, 86:2, 87:8, 87:22, 88:14, 88:15, 91:17
**jury** [97] - 2:4, 2:11, 2:13, 2:18, 2:24, 3:1, 3:2, 3:7, 4:2, 4:7, 4:24, 5:1, 5:6, 6:6, 7:7, 10:23, 13:9, 13:14, 13:19, 13:24, 13:25, 14:5, 15:10, 15:25, 16:5, 16:6, 16:7, 16:13, 16:17, 16:21, 16:23, 17:2, 17:15, 19:5, 19:12, 19:24, 22:12, 23:12, 24:10, 24:13, 34:16, 34:22, 35:10, 36:2, 36:14, 36:24, 37:2, 37:9, 37:14, 38:4, 38:15, 39:14, 40:4, 41:25, 42:1, 43:7, 44:3, 44:9, 49:10, 49:19, 50:8, 50:14, 50:20, 50:24, 51:5, 51:24, 52:15, 54:3, 56:14, 59:1, 68:6, 68:9, 69:13, 71:11, 71:17, 78:14, 82:6, 82:22, 85:5, 85:23, 86:1, 86:4, 86:6, 87:16, 87:25, 88:21, 89:6, 89:8, 89:12, 90:16, 92:7, 92:8, 92:10, 92:13
**Jury** [1] - 68:4
**justice** [1] - 23:9
**Justin** [1] - 27:2
**juvenile** [1] - 78:16

## K

**Karla** [1] - 87:11
**Katherine** [1] - 27:10
**Kay** [2] - 15:6, 15:17
**keep** [5] - 27:16, 32:8, 34:16, 48:11, 48:14
**Kelly** [1] - 15:2
**Kendall** [1] - 87:10
**kept** [1] - 83:13
**Kevin** [1] - 27:10
**kid** [1] - 89:21
**kidding** [1] - 21:9
**kids** [2] - 30:1, 72:24
**Kimberly** [1] - 87:13

**kind** [15] - 9:15, 16:1, 16:3, 22:18, 23:24, 31:15, 41:7, 42:21, 51:3, 64:2, 76:6, 83:12, 89:1, 89:7, 89:8
**knoll** [1] - 59:24
**knowledge** [1] - 75:16
**known** [2] - 25:7, 28:15
**knows** [3] - 8:3, 82:22, 83:24
**Kramer** [1] - 87:11

## L

**lab** [1] - 76:13
**ladies** [2] - 82:5, 88:18
**Lahr** [5] - 78:24, 78:25, 79:1, 87:11
**Lammers** [1] - 27:11
**land** [2] - 33:16, 86:23
**language** [2] - 44:19, 53:1
**last** [8] - 7:6, 10:10, 13:23, 21:8, 21:12, 54:19, 66:16, 66:17
**lasted** [1] - 21:10
**law** [45] - 5:23, 5:25, 6:2, 6:8, 15:21, 16:22, 31:10, 31:16, 32:3, 32:7, 32:15, 32:19, 32:21, 32:23, 32:24, 32:25, 33:1, 33:8, 40:7, 40:16, 41:1, 41:4, 44:7, 48:2, 48:3, 48:7, 48:9, 50:1, 50:15, 50:16, 53:9, 53:11, 55:1, 58:10, 62:5, 62:6, 62:18, 63:9, 64:12, 69:16, 71:23, 77:3, 83:16, 89:13
**lawyer** [9] - 30:12, 54:7, 75:24, 76:12, 76:14, 81:23, 81:25, 82:3
**lawyers** [14] - 19:7, 26:20, 30:13, 32:9, 34:17, 35:20, 45:20, 61:18, 67:11, 67:19, 67:25, 75:25, 76:2, 88:7
**layout** [2] - 88:23, 89:7
**lead** [3] - 3:21, 54:15
**least** [2] - 15:5, 25:22
**leave** [2] - 86:6, 90:25
**leaving** [2] - 64:25, 65:4
**lecture** [1] - 87:6
**LED** [1] - 84:2
**Lee** [1] - 59:25
**left** [3] - 57:20, 71:13, 88:15
**legal** [3] - 40:20, 53:8, 69:7
**length** [2] - 21:7, 22:18
**Leonard** [1] - 14:25
**less** [3] - 21:14, 33:1, 79:22
**letter** [1] - 34:6
**letters** [1] - 64:8
**level** [1] - 60:3

**Lewis** [7] - 49:23, 49:24, 57:13, 63:19, 68:12, 69:15, 77:20
**library** [2] - 84:10, 84:11
**Lightfoot** [1] - 27:2
**limine** [2] - 4:21, 7:13
**Lincoln** [2] - 10:12, 31:3
**Linda** [1] - 13:10
**line** [3] - 47:11, 52:7, 74:24
**Lisa** [1] - 27:8
**list** [15] - 10:1, 10:2, 10:4, 10:10, 10:14, 12:19, 12:20, 19:20, 30:19, 30:20, 31:1, 83:4, 83:11, 83:16, 87:8
**listed** [1] - 30:17
**listen** [9] - 4:12, 16:19, 21:2, 21:7, 48:15, 52:3, 52:10, 52:20, 78:2
**listening** [2] - 20:23, 38:10, 61:5, 74:16
**lists** [1] - 10:8
**literally** [1] - 15:8
**live** [4] - 28:16, 36:7, 54:14, 72:18
**lived** [1] - 72:1
**living** [3] - 28:22, 33:5, 48:18
**local** [1] - 46:3
**located** [3] - 83:7, 84:8, 85:11
**locations** [1] - 83:6
**look** [6] - 19:20, 45:8, 51:15, 51:17, 67:14, 73:22
**looking** [6] - 4:16, 17:14, 30:23, 42:17, 43:3, 51:8, 52:23, 53:6, 64:16
**looks** [4] - 4:16, 10:21, 12:6, 27:16, 27:18, 32:11, 71:10, 88:24
**love** [1] - 24:10
**loved** [1] - 91:5
**low** [1] - 61:19
**lower** [1] - 79:25
**lucky** [1] - 54:3
**lunch** [1] - 72:24
**Lyndie** [1] - 27:2
**Lyon** [4] - 10:22, 10:24, 11:3, 12:1

## M

**ma'am** [4] - 49:22, 56:22, 63:19, 64:23
**Maggi** [1] - 87:13
**magistrate** [5] - 2:11, 2:24, 13:8, 14:22, 15:3
**magnificent** [2] - 79:14, 79:19
**Mahoney** [1] - 15:2
**mailbox** [1] - 53:18
**malpractice** [3] - 17:21, 17:23, 17:25

**man** [4] - 7:18, 37:22, 38:10, 79:20
**management** [1] - 70:16
**Mark** [2] - 15:1, 27:7
**Marshals** [1] - 3:15
**marshals** [3] - 3:16, 85:10
**Marty** [1] - 27:3
**Matt** [1] - 27:2
**matter** [11] - 2:1, 2:3, 6:8, 13:6, 13:11, 17:25, 19:13, 48:2, 63:14, 66:24, 77:9
**matters** [1] - 61:22
**Matthew** [1] - 87:11
**McLaughlin** [1] - 27:3
**McNally** [3] - 34:21, 51:4
**mean** [18] - 4:3, 25:19, 35:19, 42:3, 42:10, 46:6, 55:19, 55:20, 56:6, 56:14, 58:1, 59:13, 59:14, 64:15, 73:1, 73:2, 73:7, 88:6
**meaning** [3] - 16:17, 19:7, 84:2
**means** [6] - 6:18, 40:21, 41:8, 73:16, 74:6, 88:7
**meant** [1] - 74:19
**media** [4] - 6:18, 7:20, 65:10, 65:18
**mediator** [1] - 78:5
**medical** [2] - 17:21, 17:25
**meet** [4] - 46:1, 84:14, 90:22
**member** [3] - 32:5, 32:14, 63:17
**members** [2] - 5:25, 62:2
**men** [1] - 23:19
**mentioned** [6] - 3:14, 26:5, 53:15, 61:14, 80:10, 89:4
**mere** [4] - 55:24, 57:23, 58:6, 59:12
**Merner** [1] - 87:13
**messages** [7] - 6:15, 25:6, 25:7, 45:15, 47:13, 47:16, 47:19
**messed** [1] - 79:20
**met** [5] - 6:16, 27:24, 31:2, 45:16, 71:24
**Miami** [1] - 71:22
**mic** [1] - 51:25
**microphone** [15] - 15:15, 15:16, 15:17, 34:20, 36:10, 38:13, 39:17, 45:22, 56:4, 59:8, 63:2, 73:8, 75:9, 78:23, 80:14
**middle** [2] - 54:19, 76:11
**might** [25] - 18:14, 18:20, 21:23, 23:2, 29:8, 30:25, 32:14, 44:12, 44:25, 48:18, 48:23, 48:24, 50:9, 50:19, 50:23, 51:15, 52:16, 52:23, 53:20, 54:18, 55:21, 63:6, 64:14, 66:20
**Mikala** [1] - 27:11
**military** [1] - 31:12

**million** [2] - 83:21, 85:17
**million-and-a-half** [1] - 83:21
**millionaire** [3] - 74:25, 75:5, 75:7
**mind** [9] - 24:2, 30:20, 42:8, 47:23, 48:12, 48:14, 67:7, 91:1
**minded** [1] - 47:22
**Minnesota** [1] - 14:16
**minutes** [3] - 3:10, 18:22, 70:14
**miss** [1] - 9:2
**missed** [3] - 12:7, 49:3, 49:8
**misstatements** [1] - 15:9
**misunderstanding** [1] - 8:11
**mixed** [1] - 49:25
**mom** [3] - 64:25, 65:2, 65:4
**money** [4] - 35:5, 35:18, 47:7, 75:17
**monitor** [1] - 91:6
**months** [4] - 21:9, 21:10, 23:20, 85:14
**moral** [2] - 50:2, 50:17
**Morfitt** [4] - 27:3, 27:23, 28:6, 28:7
**morn** [1] - 2:17
**morning** [29] - 2:5, 2:10, 2:14, 2:18, 2:19, 2:25, 12:2, 13:10, 13:14, 13:20, 41:3, 49:12, 54:24, 67:3, 71:17, 88:2, 88:12, 89:3, 89:5, 89:11, 90:13, 90:18, 90:22, 91:25, 92:21
**most** [12] - 15:7, 16:4, 16:13, 16:22, 17:19, 17:24, 37:6, 37:9, 38:7, 39:10, 42:19, 58:17
**mother** [1] - 64:1
**motion** [7] - 4:4, 4:21, 68:9, 68:23, 69:2, 69:18, 70:10
**motions** [3] - 7:12, 70:3, 70:8
**motivated** [1] - 85:25
**mouth** [1] - 73:21
**move** [5] - 25:21, 68:11, 80:7, 85:20, 89:24
**moved** [3] - 71:23, 71:25, 84:24
**movie** [3] - 74:7, 74:9, 74:10
**movies** [2] - 41:6, 43:20
**MR** [109] - 3:22, 4:20, 4:25, 5:4, 5:14, 5:15, 5:20, 5:21, 7:2, 7:5, 8:1, 8:6, 9:4, 9:10, 9:19, 9:22, 9:24, 10:16, 10:17, 11:1, 11:4, 11:8, 11:9, 11:17, 11:20, 12:3, 12:5, 12:10, 12:12, 12:17,

12:21, 12:23, 26:12, 30:11, 49:11, 49:24, 50:6, 50:12, 50:18, 51:10, 51:13, 51:20, 51:22, 52:5, 52:14, 52:21, 53:2, 54:10, 54:17, 56:9, 56:16, 56:20, 56:24, 57:8, 60:21, 62:11, 62:15, 62:23, 63:5, 63:12, 63:19, 63:21, 63:23, 64:4, 64:7, 64:9, 64:19, 65:6, 65:9, 65:12, 65:16, 66:7, 66:14, 68:10, 68:22, 69:20, 69:25, 70:3, 70:12, 70:15, 70:22, 71:2, 71:6, 71:16, 73:20, 73:24, 75:13, 75:18, 75:21, 77:24, 78:7, 78:12, 78:18, 79:1, 79:5, 79:11, 79:14, 79:17, 80:16, 80:18, 80:21, 81:4, 81:9, 81:15, 81:21, 87:17, 87:19, 92:16, 92:18
**Mueller** [2] - 38:14, 87:13
**Muhlhausen** [1] - 87:13
**multi** [3] - 74:25, 75:5, 75:7
**multi-millionaire** [3] - 74:25, 75:5, 75:7
**multiple** [2] - 17:23, 89:24
**Murphy** [2] - 27:3
**Murray** [1] - 15:20
**must** [4] - 20:3, 42:7, 45:3, 79:20

## N

**name** [12] - 10:11, 11:25, 13:8, 24:20, 25:4, 26:13, 26:17, 31:6, 49:12, 71:21, 85:24, 87:8
**names** [5] - 10:4, 10:5, 19:22, 30:21, 34:18
**Narayan** [1] - 27:6
**narrow** [1] - 88:8
**Nathan** [22] - 2:8, 3:13, 5:3, 6:12, 7:1, 8:15, 9:18, 9:23, 11:2, 11:18, 12:11, 12:22, 30:8, 30:12, 30:16, 68:21, 71:15, 71:21, 87:18, 92:17
**NATHAN** [47] - 3:22, 5:4, 5:14, 5:21, 7:2, 7:5, 8:1, 8:6, 9:4, 9:19, 9:24, 10:17, 11:4, 11:9, 11:20, 12:12, 12:23, 30:11, 68:22, 69:25, 70:3, 70:12, 71:6, 71:16, 73:20, 73:24, 75:13, 75:18, 75:21, 77:24, 78:7, 78:12, 78:18, 79:1, 79:5, 79:11, 79:14, 79:17, 80:16, 80:18, 80:21, 81:4, 81:9, 81:15, 81:21, 87:19, 92:18
**Nathaniel** [1] - 87:12
**natural** [1] - 42:6
**Nebraska** [1] - 26:23
**need** [12] - 4:4, 16:3, 19:2,

19:6, 21:1, 22:4, 24:3, 42:8, 66:20, 67:9, 88:1, 91:16
**needed** [1] - 84:12
**needs** [1] - 84:14
**neighborhood** [3] - 28:16, 28:23, 29:7
**neighbors** [1] - 40:13
**networking** [2] - 25:1, 25:3
**Neumann** [1] - 87:12
**Neumann-Birchard** [1] - 87:12
**neutral** [1] - 67:9, 92:1
**never** [5] - 24:12, 39:23, 50:11, 75:15, 84:21
**new** [2] - 83:4, 83:17
**New** [3] - 24:14, 33:24, 34:8
**news** [6] - 7:8, 13:23, 72:7, 91:4, 91:18, 91:22
**newspaper** [2] - 91:6, 91:11
**newspapers** [2] - 8:22, 91:13
**next** [8] - 11:11, 16:15, 22:2, 24:2, 24:4, 26:15, 37:13, 52:14
**nice** [5] - 74:13, 74:14, 74:18, 74:19, 79:11
**niece** [1] - 64:24
**Nigeria** [1] - 74:25
**night** [3] - 44:8, 54:19, 54:20
**nine** [4] - 13:1, 21:20, 84:6, 89:11
**Nixon** [1] - 12:15
**nobody** [2] - 53:18, 67:23
**none** [3] - 41:15, 66:23, 70:11
**noon** [2] - 13:23, 14:6
**Nordstrom** [2] - 62:21, 87:14
**north** [2] - 14:15, 26:23
**Northern** [5] - 13:5, 14:14, 26:22, 83:3, 88:10
**Northwestern** [2] - 81:13, 81:18
**Nos** [1] - 68:23
**note** [6] - 2:22, 8:21, 60:22, 70:15, 70:16, 78:16
**noted** [1] - 53:7
**nothing** [6] - 12:23, 44:13, 44:25, 54:23, 80:4, 91:18
**notice** [1] - 10:18
**noticed** [1] - 85:21
**November** [1] - 82:25
**number** [6] - 19:6, 19:21, 40:25, 53:7, 86:17, 86:22
**Nydle** [1] - 27:6

## O

**o'clock** [8] - 13:1, 21:20, 21:24, 21:25, 22:4, 22:5, 22:8, 89:11
**oath** [5] - 20:4, 20:5, 20:10, 20:15, 68:15
**objection** [4] - 6:25, 9:17, 10:15, 10:16
**objections** [1] - 82:1
**obligations** [1] - 23:18
**obviously** [2] - 8:7, 71:19
**occupied** [1] - 82:25
**offense** [6] - 10:25, 11:11, 40:18, 57:5, 75:24, 77:10
**offer** [3] - 75:5, 75:7, 75:14
**Office** [1] - 26:14
**office** [10] - 11:25, 26:17, 26:20, 26:21, 27:9, 62:8, 62:12, 85:13, 86:22, 90:21
**officer** [6] - 31:11, 31:16, 32:23, 32:24, 54:1
**officer's** [1] - 32:21
**officers** [3] - 3:13, 15:23, 32:19
**officers'** [1] - 33:9
**offices** [2] - 26:19, 84:7
**often** [1] - 40:21
**oftentimes** [1] - 87:24
**Oklahoma** [1] - 83:22
**old** [10] - 72:3, 74:6, 83:1, 83:5, 83:19, 84:16, 84:25, 86:19, 86:20, 86:25
**oldest** [1] - 72:3
**Omaha** [2] - 7:18, 8:18
**once** [3] - 19:24, 22:11, 40:13
**one** [38] - 7:8, 10:22, 11:11, 11:14, 14:11, 16:13, 19:4, 20:17, 20:22, 21:12, 22:15, 26:20, 29:3, 33:19, 37:8, 44:8, 50:25, 53:19, 53:25, 54:2, 54:18, 54:22, 61:21, 61:25, 63:6, 66:16, 67:19, 70:1, 71:11, 71:19, 74:10, 75:15, 81:10, 85:3, 85:11, 87:24, 90:15, 91:5
**One** [1] - 8:15
**one's** [1] - 75:2
**ones** [1] - 18:4
**ongoing** [1] - 33:18
**open** [5] - 47:22, 48:11, 48:14, 68:5, 92:9
**open-minded** [1] - 47:22
**opening** [1] - 89:15
**operate** [1] - 22:19
**operates** [1] - 25:3
**opinion** [1] - 52:19
**opponent** [1] - 9:14
**opportunity** [1] - 9:3
**opposed** [2] - 9:15, 80:5
**order** [6] - 4:21, 17:15,

19:25, 70:16, 86:14, 90:23
**originally** [1] - 71:22
**Oswald** [1] - 60:1
**otherwise** [1] - 56:17
**ought** [2] - 41:13, 41:17
**ourselves** [1] - 73:1
**outcome** [5] - 17:11, 48:1, 59:2, 69:10, 92:2
**outgrown** [2] - 83:5, 83:9
**outside** [5] - 4:6, 68:5, 68:8, 92:9, 92:12
**outwardly** [1] - 76:18
**overcome** [1] - 55:15
**overseas** [2] - 23:20, 23:21
**OWI** [2] - 10:24, 11:14
**own** [2] - 54:21, 86:1
**owns** [1] - 25:2

## P

**paid** [2] - 23:5, 53:18
**paintings** [1] - 86:17
**panel** [6] - 8:10, 8:21, 9:12, 40:12, 48:18, 69:21
**paper** [1] - 26:1
**pardon** [1] - 36:25
**parent** [1] - 32:5
**parents** [1] - 72:21
**part** [2] - 7:6, 8:7
**particular** [7] - 7:12, 17:20, 18:3, 18:5, 45:11, 49:1, 53:20
**particularly** [1] - 23:1
**parties** [16] - 10:8, 11:5, 13:13, 17:1, 18:9, 18:22, 21:12, 21:17, 26:5, 49:5, 67:12, 67:19, 67:24, 82:10, 82:12, 89:14
**parties'** [2] - 4:2, 4:12
**partner** [1] - 91:5
**party** [2] - 24:21, 78:1
**pass** [10] - 59:7, 67:12, 67:25, 69:20, 70:4, 75:9, 78:16, 78:23, 80:14, 81:9
**passed** [1] - 83:16
**passing** [2] - 73:19, 82:12
**past** [3] - 6:3, 33:14, 33:18
**Pat** [3] - 27:6, 29:22, 29:23
**Patrice** [1] - 15:19
**patriotism** [1] - 23:22
**pay** [3] - 23:3, 52:20, 91:21
**paying** [3] - 16:15, 38:9, 52:21
**peers** [1] - 16:17
**people** [37] - 3:4, 3:6, 3:7, 10:4, 15:4, 15:10, 16:4, 16:25, 17:1, 17:7, 19:2, 19:8, 19:10, 19:22, 20:19, 23:12, 23:13, 27:15, 30:21, 31:6, 36:5, 37:9, 52:11, 53:7, 58:18, 59:21, 61:17,

66:5, 68:1, 86:2, 86:7, 86:10, 86:12, 88:8
**people's** [1] - 58:16
**percentage** [1] - 86:15
**peremptory** [5] - 5:17, 19:7, 19:16, 70:17, 82:11
**perfect** [1] - 79:5
**perhaps** [1] - 42:6
**period** [6] - 44:16, 82:15, 85:12, 85:15, 86:4
**permanently** [1] - 84:22
**permits** [1] - 25:5
**person** [33] - 11:25, 17:24, 18:1, 24:2, 24:4, 33:5, 35:5, 36:17, 41:12, 41:21, 43:18, 43:21, 49:22, 50:3, 50:21, 58:20, 58:23, 59:24, 63:16, 64:5, 64:22, 72:9, 72:11, 72:13, 74:15, 74:16, 77:19, 78:9, 78:11, 78:15, 88:7
**personal** [1] - 64:15
**personally** [4] - 2:7, 6:16, 45:16, 88:6
**Peter** [1] - 26:18
**pick** [5] - 51:4, 62:20, 73:5, 80:11, 80:12
**picking** [1] - 16:21, 51:22
**place** [2] - 20:21, 88:22
**placed** [1] - 20:9
**places** [2] - 23:2, 89:24
**plan** [4] - 5:23, 6:13, 83:12, 84:21
**platform** [1] - 65:9
**play** [5] - 72:24, 73:3, 75:25, 76:2, 80:10
**played** [1] - 67:22
**playing** [2] - 76:3, 81:13
**pleaded** [1] - 25:15
**pleasant** [1] - 74:12
**Pluribus** [1] - 85:24
**plus** [1] - 19:3
**point** [13] - 8:9, 8:17, 24:4, 24:24, 29:2, 29:9, 32:13, 44:24, 49:9, 59:18, 82:9, 82:10, 84:12
**police** [4] - 31:11, 31:12, 43:19, 54:1
**Police** [2] - 53:23, 53:24
**polite** [1] - 73:19
**political** [4] - 6:19, 62:17, 63:4, 63:7
**politician** [2] - 61:23, 62:2
**politicians** [4] - 61:16, 61:17, 61:21, 62:7
**pool** [2] - 7:7, 82:22
**popular** [2] - 63:21, 74:9
**portion** [1] - 82:6
**position** [1] - 29:9
**possibility** [5] - 55:24, 56:7, 57:24, 58:6, 59:12
**possible** [6] - 57:25, 58:2, 59:11, 59:25, 76:15, 78:6
**post** [1] - 86:22

**postman** [1] - 53:17
**potential** [2] - 7:9, 20:7
**practice** [3] - 26:11, 27:1, 30:10
**preconceptions** [1] - 66:9
**preferable** [1] - 78:15
**preparation** [1] - 2:4
**prepared** [1] - 69:15
**preponderance** [3] - 40:21, 40:23, 41:11
**preseat** [1] - 3:4
**preseated** [3] - 11:12, 12:9, 13:3
**presence** [8] - 3:19, 3:24, 4:1, 4:6, 68:5, 68:8, 92:9, 92:12
**present** [2] - 2:7, 89:15
**presented** [2] - 39:13, 94:4
**preside** [4] - 2:13, 2:17, 2:24, 13:13
**President** [1] - 26:18
**presiding** [2] - 13:9, 13:11
**press** [1] - 64:21
**presumed** [2] - 25:16, 42:12, 42:24, 43:5, 55:14
**presumption** [6] - 6:11, 42:14, 42:23, 43:1, 43:5, 43:12, 44:10, 55:9, 55:16, 79:22, 79:24
**pretty** [7] - 21:15, 39:14, 52:19, 61:19, 68:16, 75:24, 79:9
**previously** [5] - 6:7, 34:15, 34:22, 40:6, 52:18
**princes** [1] - 75:17
**principles** [1] - 40:16
**private** [2] - 83:6, 83:8
**probation** [1] - 85:10
**probe** [1] - 48:21
**problem** [3] - 19:13, 55:3, 69:3
**problems** [1] - 10:20, 61:11
**proceed** [2] - 2:10, 3:20
**Proceedings** [1] - 92:22
**process** [21] - 3:7, 3:12, 10:6, 13:19, 14:6, 15:11, 16:21, 17:17, 18:6, 18:13, 18:17, 19:5, 19:12, 19:24, 20:2, 20:18, 39:11, 51:2, 57:10, 82:10, 89:10
**product** [3] - 16:7, 69:9, 69:10
**productive** [1] - 90:19
**professional** [1] - 66:4
**profusely** [1] - 44:21
**prohibits** [1] - 82:18
**promise** [1] - 75:23
**promptly** [1] - 13:1
**proof** [9] - 6:10, 40:20, 55:9, 55:15, 57:14, 69:12, 69:17, 79:25
**prosecution** [2] - 76:10,

80:4
**prosecutor** [6] - 31:22, 72:5, 74:2, 77:1, 80:1
**prospective** [10] - 4:10, 4:13, 10:20, 13:3, 19:8, 19:19, 20:9, 20:14, 68:6, 88:15
**prove** [13] - 41:10, 42:15, 56:2, 56:5, 56:8, 56:10, 56:15, 57:15, 58:22, 59:15, 60:24, 61:2, 61:3
**proved** [1] - 60:17
**proven** [1] - 59:14
**proves** [1] - 43:8
**provided** [2] - 69:14, 83:17
**providing** [1] - 89:12
**proving** [1] - 40:18
**Public** [1] - 2:8
**public** [3] - 44:20, 86:15, 86:16
**publicity** [1] - 8:21
**Puerto** [1] - 14:13
**pulling** [1] - 20:19
**punishment** [2] - 59:2, 82:18
**purpose** [2] - 86:8, 87:24
**purposes** [2] - 2:11
**pursuant** [1] - 6:12
**pushed** [2] - 83:13, 83:14
**put** [9] - 32:12, 34:19, 46:16, 67:2, 68:24, 73:21, 83:15, 89:16

## Q

**qualify** [1] - 82:19
**quarrel** [1] - 35:6
**quarter** [1] - 84:20
**questioning** [10] - 3:5, 8:8, 17:18, 19:12, 21:3, 25:21, 68:14, 68:17, 68:19, 71:14
**questionnaires** [5] - 18:8, 18:10, 18:14, 53:3, 71:19
**questions** [36] - 5:12, 5:19, 7:1, 7:3, 8:15, 9:1, 9:11, 9:22, 13:21, 15:11, 18:7, 18:18, 18:21, 18:23, 18:25, 19:1, 20:3, 20:16, 20:23, 20:24, 21:5, 32:9, 45:18, 45:21, 48:21, 49:10, 59:9, 70:9, 72:6, 77:13, 82:1, 82:2, 82:8, 89:10
**quick** [2] - 65:25, 78:5
**Quick** [1] - 30:14
**quote** [5] - 72:8, 72:13, 72:15, 72:16, 72:17
**quoted** [1] - 72:10

# R

**raise** [38] - 15:12, 20:6, 24:1, 24:7, 26:3, 27:15, 30:17, 31:7, 31:12, 32:7, 32:17, 33:11, 34:16, 40:10, 41:14, 45:12, 45:17, 45:19, 47:10, 47:19, 48:19, 49:7, 55:10, 65:22, 72:7, 72:14, 72:16, 74:18, 74:20, 74:22, 75:22, 75:23, 75:24, 76:1, 76:3, 76:23, 77:8, 77:11
**raised** [3] - 24:12, 65:25, 73:5
**raises** [2] - 8:5, 24:14
**ran** [2] - 29:6, 53:18
**randomly** [1] - 20:19
**Rapids** [4] - 14:20, 26:14, 26:20, 26:25
**rare** [2] - 84:5, 87:25
**rather** [5] - 3:23, 23:2, 70:4, 78:9, 78:15
**ratings** [1] - 61:18
**Ravi** [1] - 27:6
**reach** [9] - 22:5, 22:13, 35:9, 35:24, 37:23, 39:3, 44:4, 44:22, 67:20
**reaction** [1] - 42:21
**read** [14] - 7:8, 7:20, 8:22, 10:2, 10:9, 19:21, 24:23, 25:23, 27:15, 30:19, 72:7, 87:7, 87:9, 91:8
**Reade** [12] - 2:19, 13:10, 14:20, 14:21, 15:18, 15:19, 21:19, 27:6, 33:2, 41:3, 48:7, 92:20
**reads** [3] - 53:4, 53:6, 87:8
**ready** [2] - 71:14, 92:3
**real** [5] - 61:15, 64:21, 65:25, 75:4, 75:14
**realize** [1] - 7:15
**really** [12] - 31:22, 52:19, 58:22, 59:21, 69:9, 69:11, 73:1, 73:2, 79:11, 79:14, 79:20, 88:1
**rearranged** [1] - 89:1
**rears** [1] - 14:4
**reason** [6] - 19:14, 20:18, 49:1, 75:1, 79:4, 88:8
**reasonable** [27] - 40:19, 40:25, 41:4, 41:8, 41:11, 41:18, 42:16, 43:9, 55:16, 55:20, 56:11, 56:14, 57:14, 57:15, 57:16, 57:19, 57:20, 58:3, 58:23, 59:11, 59:17, 60:6, 60:7, 60:16, 68:18, 69:4, 69:17
**reasons** [4] - 44:11, 44:24, 66:4, 68:24
**receive** [1] - 25:6
**received** [4] - 4:20, 74:23, 75:2, 75:3
**receiving** [1] - 83:4

**recess** [2] - 13:2, 71:9
**recipient** [2] - 47:12, 47:19
**recipient's** [1] - 25:9
**recognize** [2] - 68:12, 68:19
**record** [3] - 68:8, 92:12, 92:14
**recovery** [2] - 7:14, 7:22
**referee** [1] - 80:24
**referees** [2] - 81:6, 81:9
**refers** [1] - 77:3
**reflect** [2] - 68:8, 92:12
**regarding** [4] - 4:9, 7:7, 10:20, 41:4
**regardless** [1] - 63:4
**rehabilitate** [1] - 68:25
**rehabilitated** [1] - 68:14
**Reinert** [3] - 27:7, 29:22, 29:24
**Reinwart** [2] - 10:12, 31:3
**related** [5] - 28:2, 40:7, 60:22, 62:16, 74:4
**relation** [1] - 67:10
**relationship** [4] - 30:3, 30:24, 32:14, 46:12
**reliable** [1] - 8:23
**relies** [1] - 23:9
**remain** [4] - 9:6, 43:19, 43:22, 44:10
**remarkable** [1] - 16:7
**remember** [5] - 23:8, 35:18, 46:25, 51:3, 74:8
**removing** [1] - 19:5
**renew** [1] - 5:12
**replace** [1] - 88:1
**reporter** [2] - 15:6, 15:20
**REPORTER** [1] - 65:2
**reporters** [1] - 91:11
**represented** [4] - 2:5, 2:7, 26:7, 30:7
**Republican** [1] - 46:3
**request** [2] - 3:15, 7:10
**require** [4] - 55:5, 55:25, 61:2, 70:21
**required** [1] - 61:10
**requires** [4] - 48:2, 70:17, 84:19, 86:15
**research** [2] - 91:22, 91:24
**resident** [1] - 14:23
**resist** [1] - 68:22
**resolve** [2] - 77:16, 78:13
**respect** [2] - 9:10, 68:16
**respectful** [1] - 49:17
**response** [1] - 21:4
**responses** [1] - 18:20
**rest** [5] - 8:10, 36:5, 62:7, 66:14, 69:21
**restaurants** [1] - 16:2
**restored** [1] - 87:1
**result** [1] - 72:20
**resummon** [1] - 8:10

**retired** [1] - 23:12
**returned** [2] - 41:25, 42:1
**Rhonda** [2] - 10:11, 31:1
**Rich** [1] - 27:3
**Rico** [1] - 14:13
**rid** [1] - 19:14
**right-hand** [1] - 29:18
**rights** [5] - 23:17, 62:25, 63:3, 77:6, 77:9
**river** [1] - 14:16, 83:2
**robbery** [2] - 38:22, 38:24
**Rohwedder** [4] - 37:13, 45:20, 49:22, 51:24
**roll** [2] - 76:18
**room** [12] - 11:24, 16:1, 21:2, 43:7, 44:4, 50:8, 57:3, 78:14, 89:7, 89:8, 90:16, 92:7
**roughly** [1] - 14:17
**row** [2] - 34:20, 38:14
**rows** [2] - 49:25, 90:6
**rule** [2] - 4:14, 29:7
**rules** [1] - 78:3
**run** [6] - 29:8, 53:9, 62:8, 62:12, 63:11, 72:21
**run-ins** [1] - 53:9
**Russell** [2] - 10:13, 31:4

# S

**safe** [1] - 5:2
**Sally** [1] - 87:13
**San** [1] - 25:2
**sang** [1] - 82:19
**Sarah** [2] - 10:11, 31:1
**Saturday** [2] - 67:22, 80:11
**save** [1] - 11:4
**saw** [3] - 15:23, 45:9, 67:18
**sayings** [1] - 70:16
**schedule** [2] - 73:3, 73:14
**Schenkelberg** [4] - 29:20, 29:21, 33:22, 39:16
**school** [3] - 44:7, 51:3, 71:23
**Schunk** [1] - 27:7
**Scott** [3] - 10:12, 26:15, 31:2
**sculptor** [1] - 85:24
**sculpture** [2] - 85:22, 86:17
**Sean** [1] - 27:1
**seated** [6] - 20:12, 68:7, 87:21, 88:17, 89:1, 92:11
**seating** [1] - 20:1
**second** [5] - 13:15, 34:20, 44:19, 48:13, 88:22
**section** [4] - 16:18, 23:10, 23:11, 23:14
**security** [3] - 3:13, 15:22, 31:11
**see** [40] - 12:8, 12:25,

14:3, 15:23, 17:17, 24:5, 24:7, 26:4, 27:18, 30:18, 31:8, 33:11, 35:7, 37:12, 40:5, 40:14, 41:14, 41:22, 43:16, 45:13, 47:20, 49:8, 51:23, 52:23, 53:22, 54:20, 55:21, 61:16, 62:19, 67:12, 70:10, 73:4, 74:16, 74:23, 75:1, 75:8, 76:23, 92:19, 92:20
**seeing** [4] - 15:5, 66:23, 80:1, 80:6
**selected** [6] - 85:5, 86:3, 87:16, 87:23, 88:5, 88:13
**selection** [24] - 2:4, 2:11, 2:13, 2:18, 2:24, 3:1, 3:3, 3:7, 4:3, 13:9, 13:14, 13:19, 13:25, 14:6, 15:11, 19:12, 19:24, 24:10, 44:9, 71:17, 82:7, 87:25, 92:13
**self** [2] - 23:4, 65:24
**self-employed** [1] - 23:4
**self-styled** [1] - 65:24
**Senate** [1] - 26:19
**Senator** [18] - 6:13, 6:15, 6:16, 6:21, 7:19, 9:12, 25:12, 45:16, 45:17, 46:11, 46:12, 46:17, 46:20, 46:22, 47:7, 47:13, 61:15, 74:2
**senator** [1] - 74:4
**send** [2] - 25:6, 25:8, 53:5
**sender** [2] - 74:23, 75:19
**sending** [1] - 25:10
**Senior** [1] - 15:1
**SenJoniErnst** [1] - 25:13
**sense** [8] - 41:5, 41:8, 42:21, 51:11, 51:12, 77:9, 77:12, 89:2
**sent** [3] - 6:14, 22:2, 45:15
**sentiments** [1] - 47:10
**separate** [3] - 25:14, 86:2, 86:7
**serious** [5] - 6:3, 33:14, 53:16, 74:18, 77:10
**seriously** [1] - 83:2
**serve** [24] - 11:4, 11:20, 12:13, 19:22, 22:15, 22:17, 23:7, 23:12, 23:15, 24:6, 24:16, 24:18, 31:6, 36:23, 37:1, 38:3, 39:6, 45:2, 58:9, 85:18, 86:4, 86:11, 87:24, 88:13
**served** [11] - 6:7, 23:20, 34:16, 34:22, 36:6, 36:13, 37:14, 38:14, 40:4, 40:9, 88:2
**service** [6] - 6:6, 49:15, 85:24, 86:1, 86:6, 88:3
**serving** [6] - 16:13, 22:20, 23:10, 23:19, 23:21, 31:17
**session** [1] - 44:9
**set** [5] - 19:11, 19:25, 61:20, 66:8, 78:1
**seven** [3] - 72:3, 74:5,

74:6

**seven-year-old** [1] - 74:6
**several** [1] - 85:17
**severe** [3] - 22:21, 23:25, 24:6
**shadow** [1] - 55:24
**shaking** [1] - 62:19
**shape** [1] - 86:8
**share** [1] - 66:5
**Shawn** [1] - 27:11
**sheet** [1] - 82:12
**Shileny** [1] - 27:7
**shining** [1] - 61:7
**shiny** [1] - 79:8
**shook** [1] - 62:20
**shopping** [1] - 72:20
**short** [6] - 14:1, 22:17, 25:18, 25:23, 44:16, 85:11
**shorten** [1] - 4:22
**shortest** [1] - 22:15
**show** [7] - 8:3, 18:19, 24:5, 78:2, 88:20, 89:7, 89:9
**shows** [1] - 43:19
**shut** [1] - 78:5
**shuts** [1] - 21:24
**sic** [1] - 12:15
**sick** [1] - 19:4
**side** [4] - 9:16, 55:22, 63:6, 70:25
**sidebar** [8] - 4:7, 4:9, 7:11, 8:5, 8:11, 8:25, 9:1
**sides** [6] - 7:13, 39:12, 48:15, 48:16, 51:18, 52:4
**significant** [1] - 37:8
**significantly** [1] - 16:22
**silent** [4] - 9:6, 43:19, 43:22, 44:11
**silhouette** [1] - 86:12
**silhouettes** [1] - 86:9
**similar** [3] - 7:17, 75:3, 89:8
**simply** [9] - 32:23, 41:24, 42:3, 42:4, 58:21, 59:3, 70:4, 70:8, 70:23
**sincere** [1] - 75:7
**sing** [2] - 74:11, 82:16
**Sioux** [4] - 14:24, 15:2, 26:21, 27:9
**sister** [1] - 32:5
**sit** [12] - 4:5, 14:2, 14:3, 17:1, 17:24, 50:2, 55:10, 70:4, 70:9, 88:20, 90:11, 90:23
**sites** [1] - 46:3
**sits** [2] - 42:13, 42:25
**sitting** [9] - 15:21, 20:16, 24:2, 24:4, 49:21, 50:20, 85:5, 90:20, 91:16
**situation** [2] - 35:8, 64:3
**six** [1] - 84:9
**sixth** [1] - 84:13
**skin** [1] - 60:2

**slightly** [6] - 21:14, 21:15, 40:22, 62:15, 75:22
**small** [2] - 72:19, 74:8
**snowed** [1] - 54:19
**social** [6] - 6:18, 25:1, 25:3, 65:9, 65:18, 73:15
**social-networking** [2] - 25:1, 25:3
**sole** [1] - 72:15
**someone** [8] - 55:25, 64:10, 65:20, 72:22, 73:6, 73:14, 73:16, 77:17
**someplace** [1] - 28:19
**sometime** [2] - 72:23, 73:15
**sometimes** [12] - 14:1, 14:18, 18:20, 18:23, 18:24, 21:13, 22:10, 22:11, 35:18, 40:24, 72:20, 82:14
**song** [5] - 74:10, 74:13, 74:15, 74:16, 74:17
**soon** [1] - 21:18
**sorry** [8] - 12:7, 38:23, 39:19, 45:18, 45:23, 49:24, 65:2, 84:9
**sort** [7] - 60:21, 70:5, 73:14, 76:17, 76:25, 77:1, 79:5
**sound** [1] - 74:12
**sounds** [1] - 35:15
**South** [1] - 26:23
**south** [1] - 84:18
**Southern** [1] - 7:18
**Soviet** [1] - 83:12
**space** [3] - 84:11, 85:2, 85:4
**spaces** [1] - 83:6
**speaking** [3] - 44:20, 44:21, 73:15
**special** [2] - 26:15, 80:4
**specific** [1] - 6:25
**spectrum** [1] - 63:7
**speculate** [3] - 45:9, 45:10, 60:2
**speculation** [1] - 60:4
**speech** [1] - 44:17
**speed** [1] - 18:12
**spend** [1] - 23:16
**spouse** [1] - 73:13
**Spring** [1] - 38:18
**square** [1] - 83:19
**staff** [1] - 62:2
**stage** [1] - 11:7
**stand** [5] - 20:6, 20:14, 52:11, 70:18, 87:9
**standard** [6] - 40:19, 41:9, 41:14, 57:1, 60:10, 69:6
**standards** [2] - 40:25, 41:1
**start** [15] - 8:16, 13:17, 14:7, 15:11, 15:19, 18:18, 21:18, 21:20, 22:3, 44:14, 44:21, 69:23, 71:17, 89:4, 89:12

**started** [3] - 12:1, 16:24, 44:20
**state** [10] - 14:9, 14:10, 14:15, 36:20, 38:25, 65:1, 65:5, 79:23, 80:1, 80:5
**statement** [4] - 24:24, 25:17, 25:24, 34:7
**statements** [2] - 68:15, 89:15
**States** [23] - 2:2, 2:5, 2:6, 13:4, 13:6, 13:8, 14:12, 15:3, 16:11, 16:14, 24:9, 24:20, 24:22, 26:6, 26:7, 26:14, 26:17, 43:18, 49:14, 68:10, 74:1, 82:17, 88:10
**status** [1] - 74:3
**stays** [3] - 42:14, 43:1, 43:6
**steel** [2] - 83:23, 84:1
**Steenholdt** [1] - 27:11
**Stephanie** [1] - 27:8
**stick** [1] - 87:5
**sticker** [1] - 23:23
**still** [4] - 4:17, 56:7, 56:8, 58:5
**stolen** [2] - 33:23, 34:2
**stop** [1] - 51:22
**Strand** [1] - 14:25
**Street** [2] - 84:17, 84:22
**street** [1] - 16:9
**strike** [8] - 4:4, 12:15, 19:8, 19:9, 19:18, 68:11, 68:23, 69:2
**strikes** [5] - 5:17, 19:7, 19:16, 70:17, 82:11, 82:14
**striking** [2] - 4:10, 11:6
**strong** [3] - 46:21, 47:9, 79:22
**struck** [1] - 70:5
**students** [1] - 44:11
**stuff** [2] - 24:14, 54:24
**styled** [1] - 65:24
**subject** [1] - 74:24
**subjects** [3] - 75:22, 78:20, 80:8
**submitted** [1] - 10:8
**substance** [1] - 11:15
**substantive** [2] - 77:4
**substantively** [1] - 79:21
**substitute** [1] - 12:1
**substituting** [1] - 11:6
**suddenly** [1] - 44:22
**sued** [1] - 17:23
**suing** [1] - 35:4
**summary** [1] - 25:18
**sun** [1] - 61:7
**supervisor** [3] - 46:2, 78:1, 78:8
**support** [1] - 86:14
**supported** [2] - 6:20, 9:12
**supposed** [2] - 4:17, 90:23

**suspicious** [1] - 42:6
**sustain** [1] - 84:21
**sustains** [1] - 82:1
**sweating** [2] - 44:21, 44:23
**system** [13] - 3:6, 13:18, 14:8, 14:9, 16:7, 17:15, 19:11, 23:9, 23:11, 40:20, 42:4, 89:25

## T

**table** [3] - 26:10, 27:4, 30:9
**tables** [2] - 85:6
**tax** [1] - 6:4
**taxes** [1] - 16:15
**teach** [1] - 44:7
**teacher** [3] - 28:19, 29:12, 29:25
**team** [2] - 81:1, 81:19
**technician** [1] - 76:13
**Telecom** [1] - 85:1
**temporarily** [1] - 84:23
**temporary** [1] - 85:18
**tend** [2] - 3:12, 8:20
**terms** [2] - 69:7
**terribly** [1] - 91:13
**territories** [1] - 14:12
**test** [1] - 57:23
**testified** [1] - 40:6
**testify** [13] - 17:3, 30:21, 32:19, 34:4, 43:24, 43:25, 44:1, 44:6, 44:12, 44:25, 45:6, 45:10
**testimony** [8] - 6:2, 32:21, 33:6, 33:7, 33:9, 52:6, 52:12, 61:6
**tether** [1] - 73:12
**text** [1] - 6:17
**THE** [289] - 2:1, 2:16, 2:22, 3:25, 4:23, 5:3, 5:5, 5:16, 5:22, 7:3, 7:24, 8:2, 8:14, 9:5, 9:17, 9:20, 9:23, 9:25, 10:18, 11:2, 11:5, 11:10, 11:18, 11:22, 12:4, 12:7, 12:11, 12:14, 12:18, 12:22, 12:24, 13:4, 20:6, 20:11, 20:12, 27:13, 27:20, 27:21, 27:23, 28:1, 28:3, 28:5, 28:10, 28:11, 28:13, 28:14, 28:15, 28:18, 28:20, 28:21, 28:25, 29:1, 29:5, 29:6, 29:10, 29:11, 29:15, 29:17, 29:20, 29:21, 29:22, 29:23, 29:25, 30:2, 30:5, 30:6, 30:15, 31:14, 31:15, 31:20, 31:21, 31:25, 32:2, 33:20, 33:22, 33:23, 34:1, 34:3, 34:4, 34:6, 34:9, 34:12, 34:13, 34:23, 34:24, 34:25, 35:1, 35:3, 35:4, 35:6, 35:7, 35:8, 35:9, 35:11,
**Susan** [1] - 87:12

35:12, 35:13, 35:14, 35:21,
35:23, 35:25, 36:1, 36:3,
36:4, 36:8, 36:9, 36:12,
36:13, 36:15, 36:20, 36:22,
36:23, 36:25, 37:1, 37:3,
37:4, 37:8, 37:12, 37:15,
37:16, 37:17, 37:19, 37:21,
37:23, 37:25, 38:1, 38:2,
38:3, 38:5, 38:6, 38:9,
38:12, 38:16, 38:17, 38:18,
38:19, 38:20, 38:21, 38:22,
38:23, 38:24, 38:25, 39:2,
39:3, 39:5, 39:6, 39:8,
39:9, 39:12, 39:15, 39:19,
39:20, 39:21, 39:23, 39:25,
40:1, 40:2, 40:3, 45:24,
45:25, 46:2, 46:4, 46:5,
46:7, 46:18, 46:19, 46:24,
47:1, 47:4, 47:5, 49:23,
50:5, 50:9, 50:16, 51:7,
51:12, 51:17, 51:21, 52:2,
52:10, 52:18, 52:25, 54:9,
54:13, 56:2, 56:3, 56:5,
56:13, 56:18, 56:23, 57:5,
57:12, 58:11, 58:14, 58:15,
58:17, 58:25, 59:1, 59:6,
59:7, 59:13, 59:17, 59:19,
59:20, 60:4, 60:5, 60:7,
60:9, 60:11, 60:12, 60:15,
60:18, 60:19, 60:20, 62:10,
62:14, 62:22, 62:25, 63:1,
63:3, 63:10, 63:20, 63:22,
64:1, 64:6, 64:8, 64:14,
64:24, 65:2, 65:4, 65:8,
65:11, 65:15, 66:3, 66:13,
67:1, 68:7, 68:21, 69:1,
69:22, 70:2, 70:7, 70:13,
70:21, 70:23, 71:4, 71:7,
71:10, 73:18, 73:23, 75:12,
75:15, 75:20, 77:23, 77:25,
78:11, 78:17, 78:25, 79:2,
79:9, 79:13, 79:16, 80:15,
80:17, 80:20, 81:2, 81:7,
81:14, 81:20, 82:5, 87:3,
87:4, 87:10, 87:15, 87:18,
87:20, 88:17, 90:2, 90:3,
90:4, 90:8, 90:9, 90:10,
90:12, 90:13, 90:15, 90:17,
92:11, 92:17, 92:19

**Thede** [4] - 28:12, 28:13,
66:2, 66:12

**themselves** [2] - 53:8,
63:17

**they've** [5] - 7:7, 7:20,
19:13, 25:24, 47:23

**thinking** [2] - 21:3, 29:8

**thinks** [3] - 47:12, 74:18,
75:4

**third** [4] - 10:24, 11:14,
48:13, 77:2

**thoughts** [3] - 11:3, 11:19,
52:1

**thousandth** [1] - 74:14

**threat** [2] - 63:15, 64:15

**threatened** [4] - 6:22,
62:3, 63:18, 64:11

**threatening** [4] - 6:15,
7:19, 25:11, 64:3

**threats** [3] - 46:10, 63:13,
74:1

**three** [5] - 5:17, 5:18,
21:9, 21:10, 22:16, 25:11,
25:14, 30:13, 32:12, 60:25,
61:1, 72:2, 90:6

**three-and-a-half** [1] -
21:10

**Thursday** [1] - 22:6

**Tim** [5] - 2:6, 26:7, 26:13,
27:10, 49:12

**timing** [1] - 22:18

**Tina** [2] - 10:13, 31:4

**tired** [1] - 74:15

**today** [9] - 4:24, 13:16,
13:23, 14:6, 15:5, 18:9,
42:13, 63:21, 91:1

**together** [4] - 52:12,
72:23, 73:2, 86:5

**token** [2] - 9:13, 81:12

**Tom** [2] - 10:12, 31:2

**tomorrow** [16] - 5:7,
15:19, 21:18, 21:21, 27:4,
41:3, 49:19, 64:13, 89:3,
89:4, 89:11, 89:20, 90:21,
91:25, 92:20

**tone** [3] - 52:25, 73:17,
73:18

**Tony** [2] - 27:3, 27:23

**took** [2] - 71:11, 86:25

**top** [2] - 79:10, 83:15,
85:23

**topics** [1] - 5:23

**touched** [1] - 76:25

**tough** [2] - 22:23, 75:24

**toward** [1] - 86:16

**town** [1] - 84:18

**traded** [1] - 86:24

**trailer** [1] - 85:13

**trans** [2] - 77:4

**trans-substantive** [2] -
77:4

**trappings** [1] - 80:3

**treat** [3] - 6:1, 62:6, 77:9

**Tremmel** [1] - 27:7

**trial** [5] - 5:6, 10:6, 13:11,
14:1, 19:5, 21:7, 21:8,
21:12, 21:18, 21:19, 22:16,
22:17, 22:18, 27:5, 30:23,
31:7, 33:24, 33:25, 40:6,
42:15, 43:2, 43:13, 43:21,
43:23, 48:16, 55:15, 67:17,
67:18, 70:16, 71:11, 76:6,
76:11, 88:21, 89:4

**trials** [5] - 15:25, 16:23,
21:10, 22:15, 91:10

**tried** [1] - 8:23

**tries** [1] - 73:14

**trouble** [1] - 81:2

**troubles** [1] - 53:9

**true** [3] - 2:20, 46:15,
46:16

**trustworthy** [1] - 91:13

**truth** [1] - 35:21

**try** [13] - 4:18, 13:14,
48:23, 49:17, 67:7, 73:16,
78:5, 80:15, 82:15, 82:20,
89:23, 91:23

**trying** [14] - 2:19, 13:12,
17:18, 33:20, 44:4, 48:21,
48:22, 58:8, 58:19, 58:21,
69:3, 73:19, 76:7, 78:13

**turn** [4] - 3:9, 18:21, 49:9,
84:12

**TV** [2] - 26:2, 41:6

**Tvedt** [1] - 27:8

**Tweet** [1] - 25:9

**Tweeter** [1] - 67:8

**Tweets** [6] - 6:17, 25:7,
25:8, 25:14, 46:11

**Twitter** [18] - 25:1, 25:5,
25:7, 25:8, 25:9, 25:11,
25:13, 65:17, 65:18, 65:22,
65:23, 65:24, 66:2, 66:3,
66:8, 66:10, 67:8, 91:24

**two** [16] - 3:11, 8:13, 8:14,
10:8, 10:22, 11:14, 14:19,
14:23, 26:19, 34:25, 52:18,
69:2, 72:2, 72:19, 88:23,
90:6

**type** [3] - 40:9, 64:3, 64:15

**typical** [1] - 22:16

## U

**U.S** [4] - 3:15, 14:12, 74:4,
85:10

**uh-oh** [1] - 81:14

**ultimately** [7] - 16:5, 17:4,
48:6, 48:10, 86:3, 89:17,
92:3

**unable** [2] - 22:5, 61:20

**unbiased** [1] - 92:2

**uncomfortable** [2] -
49:21, 65:20

**under** [6] - 20:4, 20:9,
22:19, 22:20, 68:14, 84:4

**unemployed** [1] - 23:13

**unfriendly** [1] - 67:25

**United** [23] - 2:2, 2:5, 2:6,
13:4, 13:6, 13:8, 14:12,
15:3, 16:11, 16:14, 24:9,
24:20, 24:22, 26:6, 26:7,
26:14, 26:17, 43:18, 49:14,
68:10, 74:1, 82:17, 88:10

**unless** [3] - 41:20, 42:15,
43:6

**unusual** [1] - 82:18

**up** [65] - 3:19, 4:6, 8:5,
9:1, 10:6, 11:24, 14:14,
14:16, 17:3, 18:12, 18:20,
19:11, 19:15, 19:25, 20:14,
20:16, 20:20, 20:24, 21:4,

21:19, 22:1, 22:12, 24:10,
25:6, 27:13, 27:17, 29:1,
29:18, 31:5, 31:7, 32:8,
32:9, 34:14, 34:17, 44:11,
44:20, 45:18, 45:21, 47:23,
48:12, 48:18, 49:25, 52:7,
52:17, 54:19, 54:23, 64:2,
64:25, 65:4, 67:7, 69:23,
72:4, 76:17, 79:20, 83:1,
83:10, 84:8, 84:13, 88:1,
88:8, 88:19, 89:5, 89:22,
89:25, 91:1

**upstream** [1] - 86:20

**USDA** [1] - 33:16

**users** [3] - 25:5, 25:8

**uses** [1] - 87:1

## V

**valuable** [1] - 88:3

**value** [1] - 76:21

**values** [1] - 18:3

**various** [1] - 83:6

**VAVRICEK** [62] - 4:20,
4:25, 5:15, 5:20, 9:10,
9:22, 10:16, 11:1, 11:8,
11:17, 12:3, 12:5, 12:10,
12:17, 12:21, 26:12, 49:11,
49:24, 50:6, 50:12, 50:18,
51:10, 51:13, 51:20, 51:22,
52:5, 52:14, 52:21, 53:2,
54:10, 54:17, 56:9, 56:16,
56:20, 56:24, 57:8, 60:21,
62:11, 62:15, 62:23, 63:5,
63:12, 63:19, 63:21, 63:23,
64:4, 64:7, 64:9, 64:19,
65:6, 65:9, 65:12, 65:16,
66:7, 66:14, 68:10, 69:20,
70:15, 70:22, 71:2, 87:17,
92:16

**Vavricek** [23] - 2:6, 4:19,
9:8, 9:21, 10:25, 11:16,
12:16, 12:20, 26:8, 26:9,
26:13, 27:14, 27:15, 28:15,
28:23, 29:1, 49:10, 49:13,
60:20, 68:9, 69:19, 87:15,
92:14

**vavricek** [1] - 57:12

**verbs** [1] - 17:16

**verdict** [8] - 22:1, 22:5,
22:13, 35:9, 35:12, 35:24,
37:24, 39:4

**versus** [7] - 2:2, 6:22,
13:7, 24:21, 47:15, 50:17,
59:11

**vested** [1] - 48:1

**victim's** [3] - 76:11, 76:14,
76:17

**videotape** [1] - 55:7

**view** [1] - 55:23

**views** [4] - 18:3, 18:12,
63:4, 63:8

**violation** [1] - 11:15

**Virgin** [1] - 14:13
**visited** [1] - 46:3
**voir** [14] - 3:8, 3:10, 4:3, 4:5, 5:23, 9:7, 9:9, 17:16, 17:17, 69:9, 69:10, 69:24, 70:19, 88:12
**volunteer** [3] - 50:25, 51:24, 77:18
**volunteering** [2] - 77:21, 77:24
**volunteers** [5] - 51:3, 73:5, 73:7, 77:19, 86:11
**vote** [2] - 57:18, 57:20
**voting** [1] - 16:15

## W

**wait** [2] - 47:22, 56:3
**wake** [1] - 54:23
**walk** [1] - 79:18
**wants** [5] - 9:9, 29:2, 53:14, 66:18, 89:17
**Warren** [2] - 10:22, 12:1
**watch** [1] - 54:20
**watched** [3] - 41:6, 72:7
**watching** [2] - 80:23, 81:11
**Waterloo** [3] - 53:23, 53:24, 54:1
**ways** [1] - 68:13
**Weber** [2] - 10:11, 31:1
**website** [1] - 25:3
**Wednesday** [3] - 5:9, 5:11, 22:5
**week** [2] - 7:6, 23:1
**weekend** [1] - 7:16
**weeks** [1] - 14:1
**Wehde** [1] - 27:11
**Weiss** [2] - 77:22, 87:10
**welcome** [2] - 13:4, 73:11
**whatsoever** [7] - 17:8, 41:18, 41:21, 47:17, 56:11, 57:2, 58:6
**white** [1] - 54:24
**whoa** [1] - 72:9
**whole** [4] - 8:22, 16:7, 83:7, 85:4
**wife** [4] - 46:24, 71:25, 72:18, 72:25
**wild** [1] - 61:4
**Wildcats** [2] - 81:13, 81:17
**Williams** [2] - 13:8, 27:8
**willing** [1] - 75:17
**willingness** [1] - 24:18
**Wilson** [4] - 11:11, 11:12, 11:19, 11:23
**wins** [1] - 40:23
**Wisconsin** [1] - 26:24
**wish** [1] - 92:14
**witness** [13] - 6:7, 10:1, 10:2, 10:5, 31:6, 33:4, 40:9, 48:13, 48:14, 52:22, 54:14, 91:17

**witnesses** [4] - 10:5, 16:25, 30:19, 53:25
**women** [1] - 23:19
**wondered** [1] - 53:4
**word** [4] - 15:8, 75:25, 76:2, 76:4
**words** [4] - 57:23, 72:15, 73:21, 73:22
**works** [2] - 30:17, 86:18
**world** [1] - 47:16
**worried** [1] - 44:22
**worse** [1] - 62:7
**worth** [1] - 76:21
**wound** [1] - 76:17
**Wright** [1] - 27:8
**writing** [1] - 44:14
**written** [1] - 2:23
**wrote** [3] - 34:6, 74:15, 74:17

## Y

**year** [6] - 44:8, 49:16, 74:6, 80:22, 83:12, 85:12
**years** [7] - 23:20, 34:25, 37:18, 39:22, 72:3, 85:19, 86:22
**York** [3] - 24:14, 33:24, 34:8
**youngest** [1] - 72:2
**yourself** [5] - 26:10, 30:8, 49:4, 52:3, 61:8
**yourselves** [1] - 72:8
**yup** [2] - 79:13, 87:3
**Yup** [1] - 12:7

## Z

**zealous** [1] - 82:2
**zealously** [1] - 81:23